# **<u>Exhibit A</u>**

01278652-1

STATE OF MICHIGAN
IN THE 55th CIRCUIT COURT FOR THE COUNTY OF GLADWIN

HERON COVE ASSOCIATION, on behalf of its members, and individually by its members: Rhonda Goodwin; Art Goodwin; Timothy Gordert; Elizabeth Gordert; Robert Gradowski; Julie Gradowski; Jeffrey Gray; Anthony Grech; Edeltraud Grech; Jennifer Green; Michael Green; Richard Gregor; Angela Gregor; Michael Griffin; Susan Gritzinger; Anthony Grohman; Jeffrey Gronau; Donna Gronau; Douglas Grossman; Kimberly Grossman; Connie Grove; Katie Grund; Brandon Grund; Richard Grzegorczyk; Lezley Grzegorczyk; Donald & Norma J Trust Gunther; Ron Gustine; Lisa Gustine; Ronald Gutchak; Janet Haberland; Diane Hammond; James Hankerd; Kimberly Hankerd; Jeremie Hanna; Danielle Hanna; James Hardy; Michele Hardy; Tonya Hardy; Bonnie Hargraves; Albert Harrison; Angel Harrison; Harry Hartfield; Nolan Harvey; Kenneth Harville; Joshua Harville; Kelly Hasenfratz; James Hawley; Kim Hawley; Lorraine Hedrich; Briant Heiser; Kevin Hennessy; Sandra Hennessy; Leslie Hess; John Highfield; Jennifer Highfield; David Hilden; Sally Hilden; George Hilliard; Lori Hilliard; Charles Hilliker; Brenda Hilliker; Jay Hocking; Susan Hocking; Mariann Hodge; William Hogrebe; Patricia Hogrebe; Nicholas Holly; Deena Holly; Gary Hommel; Mary Jo Hommel; Michael Hopkins; Charlene Hopkins; Gary Horne; Diane Horne; Behzad Hosseinzadeh; Pamela Hosseinzadeh; Scott Houser; Carrie Hozeska; Jonathan Hozeska ; Michael Huber; Carrie Huckins; Gordon Huckins; Lance Hughes; Russ Humeniak; Jenifer Humeniak; Daniel Ignace; Dana Ignace; Beverly Inman; Daniel Inman; Sheila Inman; Allan Innes; Charles Ireland;

Case No. 24-\_\_012106\_\_\_\_\_-CZ

2024 MAR 22 P 1:33

Geraldine Ireland; John Jakubiec; Nicklas Jerman; D Joan Johns; Dennis Johnson; Roger Johnson; Kim Johnson; Aaron Johnston; Shanda Johnston; Thomas Jones; Jeffrey Kaleto; Ryan Kaleto; Song Cha Kang; John Karpal; Kal Kaufmann; Gina Kaufmann; Donald Kearns; Diane Kearns; Richard Kedziorek; Diane Kedziorek; Kim Keeley; Albert Keen; Roberta Yager Kellan; Daniel Kellan; Melissa Keller; Gary Keller; Joe Kellogg; Stacie Kellogg; Charles Kennedy; Irene Kennedy; Sharon Kennedy; Kathleen Kenworthy; David Kingsbury; Rita Kingsbury; Jeff Kinne; Sandy Kinne; Daniel Kinner; Cheryl Kinner; Fred Kinsey; Lisa Kinsey; Clifford Kintz; Patsy Kintz; Elizabeth Klass; Jeffrey Kline; Ronald Kline; Michelle Kline; Dennis Klott; Deborah Klott; James Knieper; David Knox; Jill Knox; Leonard J Koelzer; Debra Koelzer; Michael Kolanowski; Jason Kozak; Katie Kozak; Kevin Kraft; Dona Kraft; George Kratz; John Kretzschmar; Joseph Krueger; Raymond Krueger; Rodney Kruger; Sharon Kruger; Doug Kruger; Theresa Krys; Patrick Kucher; Monica Kucher; Kenneth Kula; Donna Kula; Derek Kundinger; Angela Kundinger; Arthur Kupiec; Louise Kupiec; Robert LaGraff; Brenda LaGraff; William Lai; Marina Lai; John Lang; Bethany Lang; Richard LaPointe; Christine LaPointe; Alan Larson; Andrea Larson; Ed Laske; Colleen Laske; Martin Lathrop; Michael Lathrop; Tyler Lathrop; Christal Lathrop; Pamela Lawrence; Paul Lay; Sandy Lay; Sharon Leach; Edward Leach; Ed Lee; Kimberly Lee; Henry Leich; Cheryl Leich; Allan Leonard; Larry Lester; Teresa Lester; Frank Levenick; Michelle Levenick; Gerald Licquia; Karen Licquia; William Lindberg; Mark Lindenmuth; Perri Lindenmuth; Jennifer Lints; Timothy Long; Roxanne Long; Douglas Loose; Andrea Lopez; Lost Arrow Resort; Catherine Love; Dave Lovejoy; Rita Lovejoy; Bruce Lovelace;

Karen Lovelace; David Lulewicz; Sheryl Lulewicz; Brad Lyon; Kim Lyon; Dennis Lyons; Kriss Lyons ; Kim Lyons ; Randall Magee; Steven Makowski; Carol Malek; Michael Malek; Mary Maloney; Melessa Mannino; Terry Marick; Brent Marko; David Marr; Denzel Martin; William Mascaro; Kitty Mascaro; Paul Massimino; Alvin Matich; Brian Matthias; Cindy Matthias; Timothy McAteer; Patricia McAteer; Dennis McBride; Patricia McBride; Jason McCallum; Michelle McCallum; John McCann; Mary McCann; William McCrandall; Maretta McCrandall; Joyce McDonald; Floyd McDonald; Renee McDonald; Randall McDonald; Carol McDonald; Kristina McDonald; Shelly McEown; Gerard McGowan; Kelly McGrath; Mac McKellar; Crystal McMahan; Michael Mercier; Tarah Mercier; Harold Jr Mertz; Diane Mertz; Kimberly Meyette; Marilyn Meylan/Trust Meylan; Lynda  Mieske; Michael Mikolajewski; Nicole Mikolajewski; Bruce Miller; Christopher Miller; Christopher Miller; Richard Miller; Mary Miller; Terry Miller; Judy Miller; Carlton Mills; Julie Mills; Janice Mills; Jessica Minard; Darrell Monday; Tamela Monday; Susan Monroe; George Monroe; Kevin Moore; Erik Morgan; Lisa Morrison; James Morse; Elizabeth Morse; Connie Morzinski; Randall Morzinski; Daniel  Mott; Karen Mott; Betty Mullin; Edward Mullin; Scott Murdoch; Alexandra Murphy; Timothy Murphy; Michael Murphy; David J Murray; Fredrick Murray; Rosemarie Murray; Dale Myers; Karen Myers; Robert Neiiendam; Jennifer Neiiendam; Greg Nelson; Annette Nelson; Jared Nickel; Robert Nienhaus; Sheryl Nienhaus; Hunter Norris; Mark Nowacki; Yvette Oard; Danny Okoniewski; Ann Okoniewski; Dione Oliver; Kraig Oliver; James Olson; Alfred Olson; Karen Olson; Debra Olson; Erika  Ostazewski; Aaron Ostazewski; Jeff Otto; Mary Otto;

Carol Ouellette; Daniel Ouillette; Lisa Ouillette; Donald Palmateer; Hazel Parsons; David Partridge; Cindy Partridge; George Patterson; Tammy Patterson; Bryce Paulsen; Joseph Peelish; Kellie Peelish; Teri Peer; Matt Peer; Nancy Peil; Christine Pellar; Matthew Penney; Nancy Penney; Andrew Peters; Douglas Peterson; Christine Peterson; Michael Trust Peterson; Scott Pethers; Mark Pfenninger; Nicholas Phillips; Karena Phillips; Nancy Pietz-Castro; Edward Pinkston; Jeffery Pitts; Judith Pitts; Bruce Plowman; Lisa Plowman; Darin Pope; Rick Porter; Jan Porter; Gail Post-Herold; Janeen Poyner; Danny Poyner; Holli Poyner; Robert Price; Sandra Priemer; Keith Pross; Sheryl Pross; Dennis Radcliffe; Mark L. Ramer; Kevin Ramm; Lynn Marie Rau; Edward Rau; Bradley Rausch; Trisha Rausch; Lorraine Raymond; Dean Reader; Tamara Reader; Tony Reedy; Maureen Reedy; Amy Reginek; Randall Regnier; Patricia Regnier; Timothy Reilly; Diana Reilly; James Reis; Craig Reis; William Reis; Kimberly Reis; Alice Reis; Jeanne Reske; David Retan ; Amy Retan ; Doug Rex; Lori Rex; Kathleen Rhynard ; Lawrence Rice; Petrina Rice; Jay Rickert; Kristine Rickert; Charlotte Riley; Marie Riste; Daniel Ritter; Etoile Ritter; Adam Rivas; William Whitehouse; William Robinson; Cynthia Robinson; Rebecca Robinson; Thomas Rogers; James Rogers; Carl Roll; Colette Roll; Caren Rose; Ashley Rose; Christopher Rose; Neil Ross; Casey Ross; Tina Rossi; Cynthia A Rowley; Greg Ruppel; Christy Ruppel; Kelly Russell; Virginia Russell; Michael Rybak; Christine Rybak; David Rymas; Amy Rymas; Stephanie Sabin; Reza Saffarian; Cheryl Saffarian; Michael Sander; Jo Ann Sander; Deborah Sanders; William Sanders; Sandra Priemer; Peter Saracino; Maura Saracino; William Saros; Laura Saros; Rosemary Savage; Kenneth Savage; John Saxon; Jeffery Schaffer; Larry Schmidt; Ronald

Schmidt; Sharon Schmidt; Pamela Schmidt; Joyce Schofield; Gregory Schowalter; Tamara Schowalter; Gary Schulz; Kristen Schulz; Frank Schumacher; June Schutt; Vicky Kolanowski; Vicki Lyons; Carol Seigla; Janine Makowski; Jamie Mannino; Sharon Gillette; Virginia Loose; Kevin Marek; James McAteer; and Tittabawassee Resort LLC

   Plaintiffs,

v.

GLADWIN COUNTY BOARD OF COMMISSIONERS and FOUR LAKES TASK FORCE

   Defendants.

Hon. _Roy G. Mienk_

2024 MAR 22 P 1:33

---

Michael D. Homier (P60318)
Laura J. Genovich (P72278)
Keith T. Brown (84193)
FOSTER, SWIFT, COLLINS & SMITH, PC
*Attorneys for Appellant*
1700 E. Beltline Ave. NE, Suite 200
Grand Rapids, MI 49525
(616) 726-2200
mhomier@fosterswift.com
lgenovich@fosterswift.com
kbrown@fosterswift.com

---

### Complaint and Jury Demand

*A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint was simultaneously filed in Midland Circuit Court. The action remains pending.*

  Plaintiffs, Heron Cove Association (the "Association"), on behalf of its members, and by its above-named individual members, through their counsel, FOSTER, SWIFT, COLLINS & SMITH, P.C., state as follows:

**PRELIMINARY STATEMENT**

1. This case arises from the February 6, 2024 decision of the Gladwin County Board of Commissioners (the "County") approving the 5-year operation and maintenance special assessment roll and 40-year capital improvement special assessment roll, which are intended to fund a project to restore Wixom Lake, Sanford Lake, Smallwood Lake, and Secord Lake (collectively the "Lakes") following the failure of the Edenville Dam.

**JURISDICTION AND VENUE**

2. Plaintiff Heron Cove Association is a Michigan nonprofit corporation organized "[t]o promote the general welfare of its members, owners of any property along or near Secord, Smallwood, Wixom, and Sanford Lakes, including backlot properties with dedicated access ('Four Lakes'), or any property in or touching the Four Lakes Special Assessment District in or around Gladwin and Midland Counties, Michigan." It is comprised of property owners and those with property interests within the Four Lakes Special Assessment District or adjacent to it. Individual Plaintiffs are members of the Heron Cove Association who own or have interest in property within the Four Lakes Special Assessment District.

3. Defendant Gladwin County Board of Commissioners (the "County") approved the 5-year operation and maintenance special assessment roll (Exhibit A) and 40-year capital improvement special assessment roll (Exhibit B) on February 6, 2024, levying these assessments on properties within the Four Lakes Special Assessment District.

4. Defendant Four Lakes Task Force (the "FLTF") is the County's delegated authority in regard to the Four Lakes Special Assessment District.

5. This Court has jurisdiction over this claim under MCL 600.605.

6. Venue is appropriate under MCL 600.1615.

## FACTUAL ALLEGATIONS

*Historical Background*

7. The Tittabawassee and Tobacco Rivers are at the heart of a 2,471 square mile watershed that impacts all or part of 13 counties in mid-Michigan.

8. These rivers have historically been home to a number of dams that provide hydroelectric power, environmental benefits, and flood control mechanisms to the region.

9. The Secord, Smallwood, Edenville, and Sanford dams (the "Dams") were originally built in 1925 by Frank Isaac Wixom.

10. The original purpose of the dams was to produce hydroelectric power.

11. In the 1940s and 1950s, various entities, including the United States Army Corps of Engineers and the Saginaw Valley Flood Authority, became involved and the Dams found a second purpose: flood control. As of 2018, the Army Corps of Engineers listed the primary purpose of the Edenville Dam as "Flood Control."

12. The "Lakes" (Secord, Smallwood, Sanford, and Wixom) also provided the local economies, including Midland and Gladwin Counties at large, a substantial source of economic productivity, through tourism, sporting, and like industries.

13. At least one large industrial company operating in the area has historically relied on the Dams as part of its practices of releasing industrial byproducts into the watershed.

14. After years of neglect, on May 19, 2020, the Edenville Dam failed and the Sanford Dam overflowed, resulting in flooding that destroyed properties and decimated communities and industries across Midland and Gladwin Counties.

15. Upon information and belief, in the aftermath of the Edenville Dam failure, Midland and Gladwin County lost substantial tax revenue and tourist traffic.

16. Before 2020, the Dams were privately owned and privately operated. Plaintiffs had no part in their construction, operation, or maintenance.

*Efforts Under Part 307*

17. On February 6, 2024, the County approved the "Resolution Approving Four Lakes Special Assessment District 5-Year Operation and Maintenance Project Cost and Operation and Maintenance Assessment Roll, and Capital Improvement Project Cost Special Assessment Roll." The Resolution is attached as Exhibit C.

18. In 2019, under Part 307 of the Natural Resources and Environmental Protection Act, Act 451 of 1994, as amended, MCL 307.30701 *et seq.*, the County by resolution appointed the Four Lakes Task Force ("FLTF") as its delegated authority to cause to be determined the normal lake levels for Wixom Lake, Sanford Lake, Smallwood Lake, and Secord Lake (collectively, the "Lakes"), and to establish the Four Lakes Special Assessment District.

19. The County jointly filed petitions to determine normal lake levels and to establish the Four Lakes Special Assessment District in both Midland County and Gladwin County Circuit Courts.

20. On May 28, 2019, the Honorable Stephen P. Carras entered an order in Midland Circuit Court setting normal lake levels for the Lakes and establishing the boundaries of the Four Lakes Special Assessment District. On July 18, 2019 (following an order from the Supreme Court Administrative Order appointing him to that court), Judge Carras entered that order in Gladwin Circuit Court.

21. Under Part 307, the County was required to hold various public hearings before approving the cost of the improvement and the special assessment roll. MCL 324.30714(2), (3).

22. Under MCL 324.30714(3), a county "shall approve the cost and the special assessment roll by resolution" "[b]efore construction of a project is begun."

23. Construction on the improvements began before the Counties confirmed the special assessment rolls.

24. When Plaintiffs exercised their statutory right to appeal the Assessment, FLTF claimed in a press release that "[t]he process for appeal could take several months. FLTF is not able to issue bonds in June as planned to finance the completion of the Four Lakes dam reconstruction final project phases." FLTF President and Chairperson Dave Kepler said that the appeal impacted FLTF's ability to "complete the project" and that FLTF would need to "ration the work that can take place."

25. The special assessments were adopted, in least in part, because FLTF intends to secure a loan from the United States Army Corps of Engineers, through the "Corps Water Infrastructure Financing Program" ("CWIFP"). The CWIFP provides "investment in infrastructure projects that enhance community resilience to flooding, promote economic prosperity, and improve environmental quality." In the current context, CWIFP loans must be secured by a dedicated revenue source, i.e., a tax dedicated to funding the project.

26. On February 6, 2024, the Counties approved a 5-year operation and maintenance assessment roll and a 40-year capital assessment roll.

27. Upon information and belief, the Dams will not lead to an increase in market value to Plaintiffs' properties.

28. Upon information and belief, the cost of the special assessments is in "substantial excess" of the benefits accrued to the land.

*Disproportionality & Benefit Derived*

29. Defendants claim that the new Dams are "recreational."

30. Upon information and belief, a large amount of the benefit derived (if any exists) from the new Dams is conferred on the public at large in Midland and Gladwin Counties and in "downstream" counties.

31. Upon information and belief, in the years since the lakes retreated, Plaintiffs' property values have increased substantially, under the same or substantially similar market conditions that have increased home and property values across Michigan and across the United States.

32. The special assessments run into the tens of thousands, or even hundreds of thousands of dollars. Some Plaintiffs have been assessed nearly as much as, or more than, the true cash value or state equalized value of their properties.

33. Plaintiffs now highlight just a few of the assessments imposed.

A. Plaintiffs Robert and Karen Price own six parcels that have been specially assessed. The Prices live on a tributary of the Molasses River (not one of the former lakes) in Hay Township, Gladwin County. Previously, the water did not flow to their properties year round. When the Dams were operating, the water, when it was present at all, was not more than two feet deep—not deep enough to provide access to the lakes in a boat. One of the Prices' parcels, Parcel No. 110-230-000-015-00, had a 2023 state equalized value of $19,700, a taxable value of $19,026, and a capital assessment of $22,065.95. In winter 2017 (before the Four Lakes retreated), the parcel had an assessed value of $17,102. In winter 2019, the parcel had a taxable value of $17,000. In winter 2021 (after the Four Lakes retreated), the parcel had a taxable value of $17,542.

B. Plaintiff Carrie Huckins purchased Parcel No. 030-221-000-051-00, in Billings Township, Gladwin County, for $28,000 in 2021. The previous purchaser purchased the parcel for

$29,900 in 2018 (before the Four Lakes retreated). The total capital assessment principal for this parcel is $24,972.85. The state equalized value for this parcel in 2024 is $7,500, and its taxable value is $7,140. The taxable value in the winter of 2021 was $8,575, and the taxable value in the winter of 2019 was $8,300.

   C. Plaintiff Gordon J. Huckins purchased Parcel No. 030-100-000-041-00, in Billings Township, Gladwin County, in 2015 for $58,7000. The total capital assessment principal for this parcel is $27,083.65. The 2024 state equalized value for this parcel is $35,200, and the parcel's 2024 taxable value is $33,600. The taxable value in the winter of 2021 was $36,000, and the taxable value in the winter of 2019 was $36,400.

   D. Plaintiff Renee McDonald owns Parcel No. 030-100-000-012-00 in Billings Township. The parcel contains a 2 bedroom, 1 bath, 1120 square foot home. The parcel is located near the end of a long, shallow canal. During the time period in which the canal has been dry, the state equalized value of the parcel has increased from $43,400 to $56,600. The total capital assessment principal for this parcel is $25,775.54.

   E. Plaintiffs Stacie M. and Joey Kellogg own Parcel No. 150-170-000-004-00 in Tobacco Township, Gladwin County. The total capital assessment principal for this parcel is $31,821.66. The state equalized value for this property increased from $37,800 in 2022 to $46,3000 in 2023, and to $72,000 in 2024, all before the Lakes have returned.

   F. Plaintiffs Ann and Danny Okoniewski own a small, 2 bedroom, 1 bath, 616 square foot house on a 7,405 square foot lot in Billings Township, Parcel No. 030-135-000-002-00. The total capital assessment principal for this parcel is $33,495. The 2024 state equalized value of this parcel is $26,800, and its taxable value is $25,830. Its winter 2021 taxable value was $26,500, and its winter 2019 taxable value was $28,400.

<u>COUNT I: VIOLATION OF MICHIGAN TAKINGS CLAUSE—
INVERSE CONDEMNATION</u>

34.  Plaintiffs repeat and incorporate by reference each preceding paragraph.

35.  "Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law." Const 1963, art 10, §2.

36.  "If private property consisting of an individual's principal residence is taken for public use, the amount of compensation made and determined for that taking shall be not less than 125% of that property's fair market value, in addition to any other reimbursement allowed by law." *Id*.

37.  "Compensation shall be determined in proceedings in a court of record." *Id*.

38.  A special assessment must provide benefit to the private property assessed in the form of increased market value. *Dixon Road Group v City of Novi*, 426 Mich 390, 401; 395 NW2d 211 (1986).

39.  The increased market value of the property after the improvement must be reasonably proportionate to the assessment. *Id*.

40.  When there is a "substantial excess" between the cost of an improvement and the benefits accruing to the land as a result, the assessment is "akin to the taking of property without due process of law," requiring just compensation. See *id.* at 402-403. Such an assessment is invalid. *Id*.

41.  "[I]nverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken. . . even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Mays v Snyder*, 506 Mich 157, 173; 954 NW2d 139 (2020)(cleaned up).

42. A plaintiff alleging inverse condemnation "must establish (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Id*. at 174 (cleaned up).

43. The County and FLTF took direct action against the plaintiffs' properties by approving the special assessments.

44. The amounts of the special assessments are in substantial excess to the benefits accruing to Plaintiffs' properties, in the form of increased market value, as a result of the new Dams.

45. As a result of the special assessments, Plaintiffs may be caught in a catch-22. They may not be able to sell their homes because of the disproportionate special assessments. If they cannot sell but also cannot afford the assessments, their properties will be subject to tax foreclosure and they may lose their properties, all without just compensation paid to Plaintiffs or without the statutory and procedural protections of the eminent domain process.

46. Once taken into the tax foreclosure process, Plaintiffs' homes and properties may be purchased by governmental entities.

47. Through the unlawful special assessments, the County has taken Plaintiffs' property.

48. Plaintiffs are entitled to rescission of the special assessments or just compensation under Michigan's Takings Clause.

49. These actions by governmental defendants violate Plaintiffs' civil rights under 42 USC § 1983. Plaintiffs are entitled to their costs and attorneys' fees under 42 USC § 1988.

### COUNT II: VIOLATION OF THE TAKINGS CLAUSE OF THE UNITED STATE CONSTITUTION- INVERSE CONDEMNATION

50. Plaintiffs repeat and incorporate by reference each preceding paragraph.

51. The Fifth Amendment of the Constitution of the United States provides that private property shall not be taken for public use, without just compensation.  US Const, Am 5.

52. "Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant" without employing eminent domain proceedings.  *Knick v Township of Scott, PA*, 588 US, 139 S Ct 2162, 2168; 204 L Ed 558 (2019) (cleaned up).

53. The County and FLTF took direct action against Plaintiffs' properties by approving the Assessments.

54. The amounts of the special assessments are in substantial excess to the benefits accruing to Plaintiffs' properties, in the form of increased market value, as a result of the new Dams.

55. As a result of the special assessments, Plaintiffs may be caught in a catch-22.  They may not be able to sell their homes because of the disproportionate special assessments.  If they cannot sell but also cannot afford the assessments, their properties will be subject to tax foreclosure and they may lose their properties, all without just compensation paid to Plaintiffs or without the statutory and procedural protections of the eminent domain process.

56. Through the unlawful assessments, the County has taken Plaintiffs' property.

57. Plaintiffs are entitled to rescission of the special assessments or just compensation under the Federal Takings Clause.

58. These actions by governmental defendants violate Plaintiffs' civil rights under 42 USC § 1983.  Plaintiffs are entitled to their costs and attorneys' fees under 42 USC § 1988.

<u>COUNT III: VIOLATION OF PROCEDURAL DUE PROCESS<br>UNDER THE MICHIGAN CONSTITUTION</u>

59. Plaintiffs repeat and incorporate by reference each preceding paragraph.

60. No person may be deprived of life, liberty, or property without due process of law. Const 1963, art 1, §17.

61. A special assessment that does not provide a benefit reasonably proportional to the amount of the assessment is "akin to the taking of property without due process of law." *Dixon Road Group*, 426 Mich at 401.

62. To determine whether a governmental actor has violated a person's rights to procedural due process, Michigan courts employ the three-part test from *Matthews v Elridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976):

63. The private interest affected by the government action is Plaintiffs' ability to remain in their homes and the value of their real property.

64. The risk of erroneous deprivation of those interests through the procedures used is immense. The Counties and the FLTF seek to raise a sum of money from Plaintiffs in order to complete the Dams, regardless of the benefit derived to Plaintiffs' properties and without regard to any collateral damage to those who cannot pay the disproportionate assessments.

65. Additional or substitute procedural safeguards would place minimal additional burden on the Counties and the FLTF. The Counties and the FLTF backed-into assessment values without expert reports and without regard to the benefits accrued to Plaintiffs' properties, in spite of the immense interests at stake—Plaintiffs' constitutional rights to their property and to their homes.

66. These actions by governmental defendants violate Plaintiffs' civil rights under 42 USC § 1983. Plaintiffs are entitled to their costs and attorneys' fees under 42 USC § 1988.

<u>COUNT IV: VIOLATION OF PROCEDURAL DUE PROCESS</u>
<u>UNDER THE UNITED STATES CONSTITUTION</u>

67. Plaintiffs repeat and incorporate by reference each preceding paragraph.

68. No person may be deprived of life, liberty, or property without due process of law. US Const, Am XIV.

69. In apportioning and levying these assessments, the County has taken Plaintiffs' property without due process of law,

70. Courts consider a three-factor test to determine what is required by due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Matthews*, 424 US at 335.]

71. The private interest affected by the government action is Plaintiffs' ability to remain in their homes and the value of their real property.

72. The risk of erroneous deprivation of those interests through the procedures used is immense. The Counties and the FLTF seek to raise a sum of money from Plaintiffs in order to complete the Dams, regardless of the benefit derived to Plaintiffs' properties.

73. Additional or substitute procedural safeguards would place minimal additional burden on the Counties and the FLTF. The Counties and the FLTF backed-into assessment values without expert reports and without regard to the benefits accrued to Plaintiffs' properties, in spite of the immense interests at stake—Plaintiffs' constitutional rights to their property and to their homes.

74. These actions by governmental defendants violate Plaintiffs' civil rights under 42 USC § 1983. Plaintiffs are entitled to their costs and attorneys' fees under 42 USC § 1988.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. That this court amend the assessment of Appellants' properties so that the assessments are proportional to the increase in market value derived from the Dams.

B. That this court order a reapportionment of the special assessment roll so that the assessments are proportional to the increase in market value derived from the Dams.

C. That this court vacate the special assessment rolls.

D. That this court award Plaintiffs just compensation for the taking of their properties.

E. That this court award Plaintiffs' reasonable attorney fees and expert witness fees associated with protecting their interests, including pursuant to statute.

F. Any other relief the Court finds just and equitable.

Respectfully Submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.

Dated: March 20, 2024     By: _____
Michael D. Homier (P60318)
Laura J. Genovich (P72278)
Keith T. Brown (P84193)
FOSTER, SWIFT, COLLINS & SMITH, PC
*Attorneys for Appellant*
1700 E. Beltline Ave. NE, Suite 200
Grand Rapids, MI 49525
(616) 726-2200
mhomier@fosterswift.com
lgenovich@fosterswift.com
kbrown@fosterswift.com

88770:00001:7168463-3
89232:00001:200383566-1

STATE OF MICHIGAN
IN THE 55th CIRCUIT COURT FOR THE COUNTY OF GLADWIN

| | |
|---|---|
| HERON COVE ASSOCIATION, *et al*. | Case No. 24-_____ -CZ |
| Plaintiffs, | Hon. _____ |
| v. | |
| GLADWIN COUNTY BOARD OF COMMISSIONERS and FOUR LAKES TASK FORCE | |
| Defendants. | |

Michael D. Homier (P60318)
Laura J. Genovich (P72278)
Keith T. Brown (84193)
FOSTER, SWIFT, COLLINS & SMITH, PC
*Attorneys for Appellant*
1700 E. Beltline Ave. NE, Suite 200
Grand Rapids, MI 49525
(616) 726-2200
mhomier@fosterswift.com
lgenovich@fosterswift.com
kbrown@fosterswift.com

## **PLAINTIFFS' JURY DEMAND**

Plaintiffs Heron Cove Association, *et al*., by and through their attorneys, Foster Swift Collins & Smith, P.C., hereby demands a jury trial for any and all issues in this cause triable by a jury.

Respectfully Submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.

|  |  |
|---|---|
| Dated: March 20, 2024 | By: */s/ Michael D. Homier*<br>Michael D. Homier (P60318)<br>Laura J. Genovich (P72278)<br>Keith T. Brown (P84193)<br>FOSTER, SWIFT, COLLINS & SMITH, PC<br>*Attorneys for Appellant*<br>1700 E. Beltline Ave. NE, Suite 200<br>Grand Rapids, MI 49525<br>(616) 726-2200<br>mhomier@fosterswift.com<br>lgenovich@fosterswift.com<br>kbrown@fosterswift.com |

89232:00001:200387240-1