# **<u>Exhibit B</u>**

STATE OF MICHIGAN
IN THE 55th CIRCUIT COURT FOR THE COUNTY OF GLADWIN

---

HERON COVE ASSOCIATION, on behalf of its members, and individually by its members: Cynthia Abbs; Brian Abraham; Jayna Abraham; Shannon Adams; Debora Adams; Michael Adams; Jamie Adams; James Adams; Michelynne Addington; Charles Addington; Ric Ader; Sally Ader; Michael Adolph; Alan Adolph; Darlene Adolph; Jayne Allen; Clifford Allen; Paul Allen; Andrew Allen; Pamela Allen; Christine Allen; Julie Allen; Nathan Allen; Elise Allie; Marjorie Allman; Jacob Altenbernt; David Altenbernt; Brittany Altenbernt; Connie Altenbernt; Roger Anteau; Wendy Anteau; Dick Arthur; Doreen Arthur; Dennis Athey; Patricia Athey; Jerry Atkinson; Theresa Atkinson; Brad Auer; Kristy Auer; Jennifer; Estate of Mark Auty; Mark Auty; Kevin Ayers; Madeline Ayers; Terrie Babbitt; Michael Bacher; Melinda Bacher; Kurt Baker; Sandra Baker; Cynthia Balhorn; Joseph Balhorn; Jacqueline Balhorn; Jana Baringer; Richard Barlow; Gail Barron; Duane Barron; Travis Barron; Michael G Bartlett; Raymond Barton; Pamela Barton; Douglas Bashur; Melini Bashur; Ray Bauers; Scott Baumgart; Robert Bazinet; Susan Bazinet; Ruth Ann Bazzani; Michael Bazzle; Amy Bazzle; Robert Jr Beauchamp; Robert Sr Beauchamp; Debra Beauchamp; Mary Beth Bechtel; Michael Beckham; Colette Begole-Roll; Kenneth Bellhorn; John Benci; George Jr. Benci; Sharon Benci; Diane Benci; Tammy Bennet; Robert Bennett; Robert Bennett; Michael Berger; Ashley Berger; Jacqueline Berninger; Alysia Berthiaume; Linda Beverin; Susan Beyer; Gary Bishop; Krystal Bishop; Jason Biskner; Stacey Biskner; Judy Boman; Garry Booth; Holly Booth; Clara Bowman; Ronald Bowman;

Case No. 24-012106-CZ

Hon. ROY G. MIENK

1

Staci Boynton; Brian Braden; Sarah Braden; Lawrence Brady; Carol Brady; Elaine Brancheau; Shawn Brancheau; Kathleen Brewis; Cary Brewis; Scott Brichacek; Rachele Brichacek; Brigitte Briggs; James Brink; Amy Brink; AJ Brock Jr.; Cynthia Brock; Daniel Brodak; James Brosier; Paula Brosier; David Brown; Loren Brunger; Glenda Brunger; Jozef Bulat; Halina Bulat; Robert Bunker; Janice Bunker; Jack Burniac Jr.; Robin Buseck; Andrew Byce; Karen Byce; Virginia Byrd; Jimmy Cain; Cathy Cain; James Caldwell; Patricia Caldwell; Renee Calhoun; Michael Campbell; Melanie Campbell; David Canning; Helen Canning; Robert Capeling; Jennifer Capeling; John Carey; Beverly Carey; Kimberly Carl; Bruce Carter; Sherry Carter; Wayne Caskey; Josette Caskey; Richard Castro; Karen Centofanti; Janis Colton; Timothy Cook; Robert Cowgill; Carol Cowgill; Richard Cox; Carolyn Cox; Robert Cubba; Rita Cubba; Jeffery Dana; Judy Dana; Keith Daniels; Patricia Daniels; Donna Davis; Bradley Davis; Lou Ann Davis; Stacy Davis; Gene Davis; Kim Davis; Patricia DeGasperis; Kristina DeLisle; Kevin DeLisle; Gary Delong; Belinda Delong; Bradley Denington; Dawn Denmark; Rodney Denmark; Jo Ellen DeVuyst; Kendall DeVuyst; Sherry Dick; Martha Dick; Sarah Diffin; Pamela Dinsmore; David Dinsmore; Terril Disch; Terry Donajkowski; Cheryl Donakowski; Deidra Donald; Richard Downing; Susan Downing; Leana Doyle; Alan Doyle; Donald Drayton; Nicholas Drye; Tiffany Drye; Teresa Dufresne; Michael Duncan Jr.; Scott Duncanson; Carey Duncanson; Russell Dupuis; John Duranczyk; Kay Duranczyk; Anthony Duranczyk; Stephanie Dwyer; Thomas Dwyer III; David Ebendick; Rebecca Ebendick; Richard Eckhardt; Sherry Eckhardt; Daniel Eickhoff; Julie Eickhoff; Richard Erickson; Theresa Erickson; Kari Farling; Michelle Farrington;

2

Robert Favreau; Alicia Favreau; Kim Fegreus; Charles Fegreus; Patrick Feld; Terry Feld; George Ferguson; Robert Ferguson; Lynda Ferguson; Sharon Ferguson; Jessica Fesing; Rebecca Field; Jessica Finnerty; Matthew Finnerty; Jeffrey Fletcher; LuAnn Follett; Keith Foren; Charlotte Fosgard; Melvin Fosgard; Dina Francescutti; Melissa Frankel-Wagner; Waltraud Fusco; Philip Fusco; Mark Gahry; Yvonne Gahry; Carl Garbacik; Karen Gawron; Charles Gerrie; Judy Gerrie-Hernandez; Thaddeus Gieraltowski; Mary Ann Gieraltowski; Jeffery Gignac; Barbara Gignac; Sharon Gillette; Jill Glinski; Jerome Glinski; Gary Gnyp; Mary Gnyp; Janet R Estate Goheen; Dale Goheen Jr.; Caroline Goik; Eileen Goldsworthy; Curtis Goll; Martha Goll; Jill R Goodemoot; Rhonda Goodwin; Arthur Goodwin; Timothy Gordert; Elizabeth Gordert; Robert Gradowski; Julie Gradowski; Jeffrey Gray; Anthony Grech III; George Grech; Edeltraud Grech; Jennifer Green; Michael Green; Richard Gregor; Angela Gregor; Michael Griffin; Susan Gritzinger; Anthony Grohman; Jeffrey Gronau; Donna Gronau; Douglas Grossman; Kimberly Grossman; Connie Grove; Katie Grund; Brandon Grund; Richard Grzegorczyk; Lezley Grzegorczyk; Donald & Norma J Trust Gunther; Ronald Gustine; Lisa Gustine; Ronald Gutchak; Janet Haberland; Janeen Hall; Diane Hammond; James Hankerd; Kimberly Hankerd; Jeremie Hanna; Danielle Hanna; James Hardy; Michele Hardy; Tonya Hardy; Bonnie Hargraves; Albert Harrison III; Angel Harrison; Harry Hartfield; Nolan Harvey II; Kenneth Harville; Joshua Harville; Kelly Hasenfratz; James Hawley; Kim Hawley; Lorraine Hedrich; Briant Heiser; David Hellebuyck; Timothy Hemming; Kevin Hennessy; Sandra Hennessy; Leslie Hess; John Highfield; Jennifer Highfield; David Hilden; Sally Hilden; Albert Hill; George Hilliard; Lori

Hilliard; Charles Hilliker; Brenda Hilliker; Jay Hocking; Susan Hocking; Mariann Hodge; William Hogrebe; Patricia Hogrebe; Gary Hommel; Mary Jo Hommel; Ronald Hope; Michael Hopkins; Charlene Hopkins; Gary Horne; Diane Horne; Behzad Hosseinzadeh; Pamela Hosseinzadeh; Scott Houser; Carrie Hozeska; Jonathan Hozeska; Michael Huber; Carrie Huckins; Gordon Huckins; Lance Hughes; Howard Hughes; Russ Humeniak; Jenifer Humeniak; Paul Hutchins; Daniel Ignace; Dana Ignace; Beverly Inman; Daniel Inman; Sheila Inman; Allan Innes; Charles Ireland; Geraldine Ireland; John Jakubiec; Nancy Janeau; Nicklas Jerman; Joan D Johns; Dennis Johnson; Roger Johnson; Kim Johnson; Aaron Johnston; Shanda Johnston; Thomas Jones; Jeffrey Kaleto; Ryan Kaleto; Song Cha Kang; John Kapral; Kal Kaufmann; Gina Kaufmann; Richard Kedziorek; Diane Kedziorek; Kim Keeley; Albert Keen; Roberta Yager Kellan; Daniel Kellan; Melissa Keller; Gary Keller; Joey Kellogg; Stacie Kellogg; Charles Kennedy; Irene Kennedy; Sharon Kennedy; Kathleen Kenworthy; David Kingsbury; Rita Kingsbury; Jeff Kinne; Sandy Kinne; Daniel Kinner; Cheryl Kinner; Fred Kinsey; Lisa Kinsey; Clifford Kintz; Patsy Kintz; Elizabeth Klass; Jeffrey Kline; Ronald Kline; Michelle Kline; Dennis Klott; Deborah Klott; James knieper; James Knieper; David Knox; Jill Knox; Leonard J Koelzer; Debra Koelzer; Michael Kolanowski; Vicky Kolanowski; Vicki Kolanowski; Richard Kovalcik; Laura Kovalcik; Jason Kozak; Katie Kozak; Kevin Kraft; Dona Kraft; Kim Kramer; George Kratz; John Kretzschmar; Joseph Krueger; Raymond Krueger; Rodney Kruger; Sharon Kruger; Doug Kruger; Theresa Krys; Patrick Kucher; Monica Kucher; Kenneth Kula; Donna Kula; Derek Kundinger; Angela Kundinger; Arthur Kupiec; Louise Kupiec; Robert LaGraff; Brenda LaGraff; William

4

Lai; Marina Lai; Rosemary Lancaster; Kenneth Lancaster; John Lang; Bethany Lang; Jacqueline Lapinski-Erdman; Richard LaPointe; Christine LaPointe; Alan Larson; Andrea Larson; Edward Laske; Colleen Laske; Martin Lathrop; Michael Lathrop; Tyler Lathrop; Christal Lathrop; Pamela Lawrence; Paul Lay; Sandy Lay; Sharon Leach; Edward Leach; Ed Lee; Kimberly Lee; Henry Leich; Cheryl Leich; Allan Leonard; Larry Lester; Teresa Lester; Frank Levenick; Michelle Levenick; Gerald Licquia; Karen Licquia; William Lindberg; Mark Lindenmuth; Perri Lindenmuth; Jennifer Lints; Timothy Long; Douglas Loose; Virginia Loose; Andrea Lopez; Catherine Love; David Lovejoy; Rita Lovejoy; Bruce Lovelace; Karen Lovelace; David Lulewicz; Sheryl Lulewicz; Brad Lyon; Kim Lyon; Dennis Lyons; Kriss Lyons; Kim Lyons; Randall Magee; Carol Magee; Steven Makowski; Janine Makowski; Carol Malek; Michael Malek; Mary Maloney; Melessa Mannino; Jamie Mannino; Beth Mansfield; Terry Marick; Kevin Marick; Brent Marko; David Marr; Denzel Martin; Sharon Martin; William Mascaro; Kitty Mascaro; Paul Massimino; Alvin Matich; Brian Matthias; Cynthia Matthias; Timothy McAteer; Patricia McAteer; James McAteer; Dennis McBride Sr.; Patricia McBride; Jason McCallum; Michelle McCallum; John McCann; Mary McCann; William McCrandall; Maretta McCrandall; Joyce McDonald; Floyd McDonald; Renee McDonald; Randall McDonald; Carol McDonald; Kristina McDonald; Shelly McEown; Gerard McGowan Jr.; Kelly McGrath; Mac McKellar; Crystal McMahan; Michael Mercier; Tarah Mercier; Harold Mertz Jr; Diane Mertz; Kimberly Meyette; Marilyn Meylan; Michael Mikolajewski; Nicole Mikolajewski; Bruce Miller; Christopher Miller; Christopher Miller; Richard Miller; Mary Miller; Terry Miller; Judy Miller;

5

Carlton Mills; Julie Mills; Janice Mills; Jessica Minard; Darrell Monday; Tamela Monday; Susan Monroe; George Monroe; Kevin Moore; Erik Morgan; Lisa Morrison; James Morse; Elizabeth Morse; Connie Morzinski; Randall Morzinski; Daniel Mott; Karen Mott; Betty Mullin; Edward Mullin; Scott Murdoch; Alexandra Murphy; Timothy Murphy; Michael Murphy; David J Murray; Fredrick Murray; Rosemarie Murray; Dale Myers; Karen Myers; Robert Neiiendam; Jennifer Neiiendam; Gregory Nelson; Annette Nelson; Dwight Newport; Debra Newport; Jared Nickel; Robert Nienhaus; Sheryl Nienhaus; Hunter Norris; Harry Nowacki; Christa Nowacki; Yvette Tina Oard; Danny Okoniewski; Ann Okoniewski; Dione Oliver; Kraig Oliver; James Olson; Alfred Olson; Karen Olson; Debra Olson; Erika Ostaszewski; Aaron Ostaszewski; Jeff Otto; Mary Otto; Carol Ouellette; Daniel Ouillette; Lisa Ouillette; Donald Palmateer; Hazel Parsons; David Partridge; Cindy Partridge; George Patterson; Tammy Patterson; Bryce Paulsen; Joseph Peelish; Kellie Peelish; Teri Peer; Matthew Peer; Nancy Peil; Christine Pellar; Matthew Penney; Andrew Peters; Douglas Peterson; Christine Peterson; Michael Peterson; Michael Peterson Trust; Scott Pethers; Mark Pfenninger; Nicholas Phillips; Karena Phillips; Nancy Pietz-Castro; Edward Pinkston; Jeffery Pitts; Judith Pitts; Bruce Plowman; Lisa Plowman; Darin Pope; Rick Porter; Jan Porter; Gail Post-Herold; Danny Poyner; Holli Poyner; Robert Price; Sandra Priemer; Keith Pross; Sheryl Pross; Dennis Radcliffe; Mark L. Ramer; Kevin Ramm; Lynn Marie Rau; Edward Rau; Bradley Rausch; Trisha Rausch; Lorraine Raymond; Dean Reader; Tamara Reader; Amy Reginek; Randall Regnier; Patricia Regnier; Timothy Reilly; Diana Reilly; James Reis; William Reis; Craig Reis; Alice Reis; Jeanne Reske; David Retan; Amy Retan; Doug Rex; Lori Rex;

Kathleen Rhynard; Lawrence Rice; Petrina Rice; Jay Rickert; Kristine Rickert; Angelyn Ridenour; Charlotte Riley; Marie Riste; Daniel Ritter; Etoile Ritter; Adam Rivas; William Whitehouse; Corey Robinson; William Robinson; Cynthia Robinson; Rebecca Robinson; Thomas Rogers; James Rogers; Carl Roll; Caren Rose; Ashley Rose; Christopher Rose; Neil Ross; Casey Ross; Tina Rossi; Cynthia A Rowley; Greg Ruppel; Christy Ruppel; Kelly Russell; Virginia Russell; Michael Rybak; Christine Rybak; David Rymas; Amy Rymas; Stephanie Sabin; Reza Saffarian; Cheryl Saffarian; Michael Sander; Jo Ann Sander; Deborah Sanders; William Sanders; Peter Saracino; Maura Saracino; William Saros; Laura Saros; Rosemary Savage; Kenneth Savage; John Saxon; Jeffery Schaffer; Larry Schmidt; Ronald Schmidt; Sharon Schmidt; Pamela Schmidt; Joyce Schofield; Gregory Schowalter; Tamara Schowalter; Gary Schulz; Kristen Schulz; Frank Schumacher; June Schutt; Edward Schutt; Tim Seagraves; Kathy Seagraves; Endre Sefcsik; Robert Seiberling; James Seigla; Carol Seigla; Larry Serrell; Barbara Serrell; Kenneth Sesto; Denise Sesto; Catherine Sesto; James Sesto; Marlene Shebester; Donald Shemanski; Lyle Shiffer; Tory Showek; Lisa Showek; Rodney Shumaker; Jere Sieloff; Kimberly Sieloff; Wendi Sigourney; David Sileo; Deborah Sileo; Robert Sims; Tracy Sims; Dawn Sisk; Ronald Sizeland; Susan Sizeland; Jeff Slick; John Smilnak; Charlene Smith; Travis Smith; Ronald Smith; Gail Smith; George Smith; Laurie Smith; Edward Sowa; James Sparbeck; Jeffrey Sparbeck; Edwin Speckhardt; Monica Speckhardt; Patricia Spencer; Wilmer Spencer; John Spycher; Carol Spycher; Nora Stahl; David Stahl; Dean Stalder; Andrew Stephenson; Marie Stock; Michael Stocker; Denver Stocker; Larry Stoinski; Ruth Stoinski; Ruth Stoinski Trust; Wayne Stover; Linda Stover; Brian Starking; Penny Starking; James

Stradtner; Kelly Stradtner; Ronald II Streeter; Sandra Streeter; Christine Stumpo; Joseph JR Stumpo; Mark Sullivan; Latasha Sullivan; Wendy Sullivan; Todd Sullivan; Rachel Sunde; Norma Suriano; Deborah Suwinski; Lawrence Suwinski; John Sydenstricker; Teresa Sydenstricker; Kim Sylvester; Dennis Szado; Annette Szado; Steven Taylor; David Taylor; Colleen Taylor; Loretta Taylor; John Tedder; Janice Tedder; Patricia Theobald; David Thibodeau; Linda Thibodeau; Jane Thomas; Dave Thomas; Mark R Thomas; Lowell Thomas; Vicki Thomas; Brian Thompson; Carmon Thompson; Thomas R Thomson; Thomas J Thomson; Kelly Thomson; Linda Thomson; Nancy Thorp; Tittabawassee Resort; Lost Arrow Resort; Chad Toms; Janice Torrey; John Tracy; Lorraine Tracy; Gary Trelfa; Diane Trelfa; Scott Trinklein; Lenore Troia; David Trombley; Gordon Troyanek; Robert (Terry) Turner; Joan (Hazel) Turner; Travis Twitchell; Beatrice Tyree; Robert Umphrey; Thomas Urbick; Joanette Urbick; David Valice; Linda Valice; Julie Ann Van Ameyde; James Van Horn; Debrah Van Horn; Marko Vance; Maryann Vance; Albert Vardukyan; William Vasicek; Michael Verellen; Mary Ellen Verellen; Courtney Verellen; Vernon Verkennes; James Vogt; Susan Vogt; Harry Wagner; Kristin Wagner; Cheryl Walding; Joshua Wallace; Andrea Wallace; Michael Walrath; Teresa Walrath; Michael Warner; Kelly Warner; Thomas Warschefsky; Ron Wascher; Mary Wascher; James Wazny; Patrick Weirmier; Pamela Weirmier; Gene West; Wanda West; Kevin Westlake Jr.; Sarah Westlake; Douglas Wheatley; Linda White; Linda White Trust; Joseph White; Mark Whitten; Norman Wieske; Samantha Williams; Timothy Williams; Angela Williams; Reva Williams; Jeffery Williams; Earl Wilson; Richard Wing; Theresa Wing; Fred Wirtz; Barb Wirtz; George Wiskup; Roxanne Witter-Long; Hugh Woodrow;

Robert Woodruff; Cindy Woodruff; LeRoy
Woods; Glenda Woods; Steve Worpell; Terri
Worpell; Daniel Wozniak; Ralph
Wyrybkowski Jr.; Darlene Wyrybkowski;
Ted Yanko; Kenneth Yeager; Cathryn
Yeager; Maureen Yombor-Reedy; Terry
York; Denise York; James Young; Nancy
Zastrow; Steven Zastrow; Lori Zastrow;
Maurice Zemlicka; Michelle Zemlicka;
Casmier Zomerfeld; Andrea Zomerfeld;
Michael Zrepskey; Patrice Zrepskey; Daniel
Zunich; Orlando Zuniga; Margaret Zuniga;
Grazyna Zukowska; Tracy Zwick-Young;
Kevin and Madeline Ayers Trust; J & J &
Balhorn C; Beverin Rev Trust; Elaine
Brancheau Trust; Brigitte Briggs Trust;
Bulat Jozef & Halina Trust; Josette Caskey;
The Cowgill Family Trust; Cubba Robert &
Rita Rev Liv Trust; Dana Jeffrey & Judy
Trust; Richard & Theresa Erickson Trust;
Kim Newcomb; Nathan Allen; Stephen
Fosgard; Goodwin, Arthur L & Rhonda L
Living Trust; Grezegorczyk Trust;
Haberland Family Trust; Janeen Hall;
Hartfield, Harry E Jr Rev Trust;
Hosseinzadeh Dehzad & Pamela Trust;
Inman, Beverly R Trust; Keen Albert &
Dorothy Trust; Kennedy's Space Center
LLC; Kline Revocable Trust; Kupiec Arthur
& Louise Family Trust; Lyon Family Trust;
Martin Denzel & Sharon Trust; Massimino
LLC; Nikki's Property Services LLC;
McGrath Kelly J Trust; McKellar Mac &
Darlene Trust; Miller Bruce & Mary Trust;
Miller Richard & Judy Trust; Morgan Erik
M Trust; Rejoice Management LLC; Mark
Nowacki; Olson Living Trust; Otto, Jeffrey
& Mary Jane Trust; Peterson Michael &
Christine Trust; Pross Keith & Sheryl Jean
Trust; Sesto James R & Denise A Trust;
Spycher Family Living Trust; Stoinski Larry
& Ruth Trust; Thibodeau D L & Beckwith
S & J; Toms Family Trust; White Joseph &
Linda Trust; Wieske Norman A Trust; Wing
Richard & Theresa Rev Trust; Woodruff
Robert & Cindy Trust; Zastrow Nancy L

Living Trust; Zastrow Edward F Living
Trust; Kruger Rodney E & Sharon K Trust;
Lapointe Riachrd & Christine Trust; Loose
Douglas J Rev Living Trust; Meylan Gary L
Trust; Centofanti, K&P & Radcliffe, D Sr;
Thomas Lowell G Trust; and Young James
Trust;

Plaintiffs,

v.

GLADWIN COUNTY BOARD OF
COMMISSIONERS and FOUR LAKES
TASK FORCE,

Defendants.

---

Michael D. Homier (P60318)
Laura J. Genovich (P72278)
Keith T. Brown (84193)
FOSTER, SWIFT, COLLINS & SMITH, PC
*Attorneys for Appellant*
1700 E. Beltline Ave. NE, Suite 200
Grand Rapids, MI 49525
(616) 726-2200
mhomier@fosterswift.com
lgenovich@fosterswift.com
kbrown@fosterswift.com

---

### First Amended Complaint and Jury Demand

*A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint was simultaneously filed in Midland Circuit Court.  The action remains pending.*

Plaintiffs, Heron Cove Association (the "Association"), on behalf of its members, and by its above-named individual members, through their counsel, FOSTER, SWIFT, COLLINS & SMITH, P.C., state as follows:

## PRELIMINARY STATEMENT

1.      This case arises from the February 6, 2024 decision of the Gladwin County Board of Commissioners (the "County") approving the 5-year operation and maintenance special assessment roll and 40-year capital improvement special assessment roll, which are intended to fund a project to restore Wixom Lake, Sanford Lake, Smallwood Lake, and Secord Lake (collectively the "Lakes") following the failure of the Edenville Dam.

## JURISDICTION AND VENUE

2.      Plaintiff Heron Cove Association is a Michigan nonprofit corporation organized "[t]o promote the general welfare of its members, owners of any property along or near Secord, Smallwood, Wixom, and Sanford Lakes, including backlot properties with dedicated access ('Four Lakes'), or any property in or touching the Four Lakes Special Assessment District in or around Gladwin and Midland Counties, Michigan."  It is comprised of property owners and those with property interests within the Four Lakes Special Assessment District or adjacent to it.  Individual plaintiffs are members of the Heron Cove Association who own or have interest in property within the Four Lakes Special Assessment District.

3.      Defendant Gladwin County Board of Commissioners (the "County") approved the 5-year operation and maintenance special assessment roll (**Exhibit A**) and 40-year capital improvement special assessment roll (**Exhibit B**) on February 6, 2024, levying these assessments on properties within the Four Lakes Special Assessment District.

4.      Defendant Four Lakes Task Force (the "FLTF") is the County's delegated authority in regard to the Four Lakes Special Assessment District.

5.      This Court has jurisdiction over this claim under MCL 600.605.

6.      Venue is appropriate under MCL 600.1615.

11

## FACTUAL ALLEGATIONS

*Historical Background*

7.     The Tittabawassee and Tobacco Rivers are at the heart of a 2,471 square mile watershed that impacts all or part of 13 counties in mid-Michigan.

8.     These rivers have historically been home to a number of dams that provide hydroelectric power, environmental benefits, and flood control mechanisms to the region.

9.     The Secord, Smallwood, Edenville, and Sanford dams (the "Dams") were originally built in 1925 by Frank Isaac Wixom.

10.     The original purpose of the dams was to produce hydroelectric power.

11.     In the 1940s and 1950s, various entities, including the United States Army Corps of Engineers and the Saginaw Valley Flood Authority, became involved and the Dams found a second purpose: flood control.  As of 2018, the Army Corps of Engineers listed the primary purpose of the Edenville Dam as "Flood Control."

12.     The "Lakes" (Secord, Smallwood, Sanford, and Wixom) also provided the local economies, including Midland and Gladwin Counties at large, a substantial source of economic productivity, through tourism, sporting, and like industries.

13.

14.     After a 100-to-200-year flooding produced by a 25 to 50-year rainfall and years of neglected or incompetent collective oversight, on May 19, 2020, the Edenville Dam failed and the Sanford Dam overflowed, resulting in flooding that destroyed properties and decimated communities and industries across Midland and Gladwin Counties.

15.     Upon information and belief, in the aftermath of the Edenville Dam failure, Midland and Gladwin County lost substantial tax revenue and tourist traffic.

16.     Before 2020, the Dams were privately owned and privately operated, but under the Federal Energy Regulatory Commission and the Michigan Department of Environment, Great Lakes, and Energy regulations.  Plaintiffs had no part in the Dams' construction, operation, or maintenance.

*Efforts Under Part 307*

17.     On February 6, 2024, the County approved the "Resolution Approving Four Lakes Special Assessment District 5-Year Operation and Maintenance Project Cost and Operation and Maintenance Assessment Roll, and Capital Improvement Project Cost Special Assessment Roll." The Resolution is attached as **Exhibit C**.

18.     In 2019, under Part 307 of the Natural Resources and Environmental Protection Act, Act 451 of 1994, as amended, MCL 307.30701 *et seq*., the County by resolution appointed the Four Lakes Task Force ("FLTF") as its delegated authority to cause to be determined the normal lake levels for Wixom Lake, Sanford Lake, Smallwood Lake, and Secord Lake (collectively, the "Lakes"), and to establish the Four Lakes Special Assessment District.

19.     The County, together with Gladwin County, jointly filed petitions to determine normal lake levels and to establish the Four Lakes Special Assessment District in both Midland County and Gladwin County Circuit Courts.

20.     On May 28, 2019, the Honorable Stephen P. Carras entered an order in Midland Circuit Court setting normal lake levels for the Lakes and establishing the boundaries of the Four Lakes Special Assessment District.  On July 18, 2019 (following an order from the Supreme Court Administrative Order appointing him to that court), Judge Carras entered that order in Gladwin Circuit Court.

21.     FLTF then developed plans to finance and reconstruct the Dams, including levying operation and maintenance special assessments and a capital special assessment.

22.     According to FLTF's capital assessment methodology, "[t]he counties determined that all costs associated with the maintenance of the legal lake levels for the Four Lakes should be financed by special assessments to the properties within the SAD.  While there can be other sources, such as government, private and public funding, the Four Lakes SAD is considered the primary source of funding to maintain the lakes and lake level structures (i.e., dams)."  (**Exhibit D**: Four Lakes Special Assessment District Assessment Methodology-Revised January 2024, 1.)

23.     The "Capital Assessment amount is based on the total restoration project cost less the grants that have been received."  (**Exhibit E**: January 4, 2024 Capital Assessment Memo, 3.)

24.     "The computation of cost is based off bid projects at Secord, Smallwood, and Sanford.  The Edenville estimate is now based on 100% design and has been updated to reflect the pricing received for the other three projects." (***Id***.)

25.     FLTF raised at least $220 million in grants for the Project from the State of Michigan and federal and private sources, $200 million of which was intended to be used for restoration construction (**Exhibit E**, 11.)

26.     But FLTF spent $20 million of that money for interim restoration and recovery efforts, so it has $180 million in State of Michigan dollars remaining for restoration construction. (***Id***.)

27.     In 2021, FLTF released a planning estimate of $250 million.  (***Id*. at 12**.)

28.     So, the cost to be passed on to the SAD, in 2021, was $70 million.

29.     But then the cost of the Dams ballooned.  Now the total cost is $399,700,000. (**Exhibit B**, 1.)

30.     The cost to the SAD, therefore, increased to approximately $217 million—a more than three-fold increase, after the boundaries of the SAD were confirmed.

31.     Under Part 307, the County was required to hold various public hearings before approving the cost of the improvement and the special assessment roll.  MCL 324.30714(2),(3).

32.     On January 15, 2024, FLTF held a public hearing regarding the capital special assessment roll and the 2025-2029 operations and maintenance special assessment roll.  (**Exhibit F**: January 15, 2024 Minutes, 1-3; **Exhibit G**: January 15, 2024 Hearing Transcript.)

33.     Following that public hearing, FLTF released a revised methodology for determining the apportionment of the special assessments (**Exhibit D**.)

34.     Under MCL 324.30714(3), a county "shall approve the cost and the special assessment roll by resolution" "[b]efore construction of a project is begun."

35.     Construction of the Dams began sometime in 2022. On its website, FLTF has posted summaries and photos of the progress of construction at the Secord and Smallwood Dams in the "16 months" prior to February 2024.[1]  The January 4, 2024 FLTF memo states that "design engineering and permitting are complete" and that the Secord, Smallwood, and Sanford "dams are under construction."  "Edenville" had "begun construction on pull-ahead projects."  (**Exhibit E**, 3.)

36.     According to the County and FLTF, construction bids for the Edenville Dam were submitted in January 2024, before confirmation of the rolls, and were valid for 60 days.

37.     When Plaintiffs exercised their statutory right to appeal the Assessment, FLTF claimed in a press release that "[t]he process for appeal could take several months.  FLTF is not able to issue bonds in June as planned to finance the completion of the Four Lakes dam

---

[1] Four Lakes Task Force, February 14, 2024, "State of Construction on Northern Dams," https://www.four-lakes-taskforce-mi.com/updates/photos-show-progress-on-secord-and-smallwood.

reconstruction final project phases." FLTF President and Chairperson Dave Kepler said that the appeal impacted FLTF's ability to "complete the project" and that FLTF would need to "ration the work that can take place." (**Exhibit H**.)

38.     The special assessments were adopted, in least in part, because FLTF intends to secure a loan from the United States Army Corps of Engineers, through the "Corps Water Infrastructure Financing Program" ("CWIFP"). The CWIFP provides "investment in infrastructure projects that enhance community resilience to flooding, promote economic prosperity, and improve environmental quality." CWIFP loans must be secured by a dedicated source of repayment. The County and FLTF seeks to use the capital assessment as the dedicated source of repayment.

*Disproportionality & Benefit Derived*

39.     The methodology states that FLTF endeavored to create a "fair" distribution of the assessments (**Exhibit D**, 10).

40.     But, despite the previous claimed economic loss to the County, FLTF and the County decided that the relevant townships, villages, cities, and counties at-large would not be assessed under the capital assessment (**Exhibit E**, 1.)

41.     Instead, the remaining $217 million needed to construct the Dams as planned would be assessed only on private property owners in the SAD. (See **Exhibit B**.)

42.     According to FLTF's methodology, the parcels in the SAD were assigned a "derived benefit factor," which was used to suggest the amount of benefit derived to each parcel *compared to other parcels in the district*. (**Exhibit D**, 3.)

43.     The methodology treats property owners who live upstream of all four dams the same as property owners who live downstream of all four dams.

44.     The methodology does not account for the fact that the cost of each individual dam is different, that differing numbers of parcels lie around each of the former lakes, or that a property owner north of the northernmost dam does not likely benefit at all from reconstruction of the southernmost dam, which in many cases is tens of miles away.

45.     The Secord Dam is roughly 25 miles, as the crow flies, from the Sanford Dam.

46.     Yet Defendants assume that parcels at both ends of the SAD are benefitted equally by, and equally responsible for, the entire four-dam project.

47.     Further, the methodology does not account for differences in the quality of "frontage." A parcel is assessed the same under a "frontage factor" regardless of whether the parcel is located on one of the former lakes or whether it is located on the Molasses River, a tributary of the Tittabawassee River, which is not deep enough to accommodate a boat in some places.  Indeed, FLTF's interactive map includes language for some parcels stating that "[t]his is the minimum front lot assessment."

48.     Upon information and belief, the County nor FLTF conducted any evaluation of the proportion of the overall benefit conferred to the region to that of Plaintiffs' properties within the SAD.

49.     On February 6, 2024, the Counties approved a 5-year operation and maintenance assessment roll and a 40-year capital assessment roll.

50.     Upon information and belief, the Dams will not lead to an acceptable proportional increase in the market value to Plaintiffs' properties.

51.     Upon information and belief, the cost of the special assessments is in "substantial excess" of the benefits accrued to the land.

52.     Defendants claim that the new Dams are "recreational."

53.     Upon information and belief, a large amount of the benefit derived (if any exists) from the new Dams is conferred on the public at large in Midland and Gladwin Counties and in "downstream" counties. As economic engines, the Four Lakes affect more than just the properties with waterfront or deeded private access.

54.     According to FLTF's website,

A.  "The economic impact of the lakes reaches far beyond the shorelines to impact greater Midland and Gladwin counties, Saginaw County and further downstream in the Saginaw Bay watershed."

B.  "The Gladwin County population increased by nearly 40,000 people during the summer months making these lakes a large economic driver."

C.  "Local restaurants, marinas, hotels, shopping centers and other businesses depend on the strong economy that has existed in this region for decades because of the thriving lakes."

D.  "These lakes bring thousands of people to their waters every year for recreation and are some of the best fisheries in the state."

55. By its own words, FLTF acknowledges that the Four Lakes provide a significant number of jobs to the region, presumably to community members who do not own parcels with private access to the water and who remain untouched by any special assessment.

56. But even though the Four Lakes, and therefore the Dams, greatly benefit these properties and municipalities, they are not assessed.

57. Instead, the unfunded cost of the Dams is arbitrarily hoisted onto *only* Plaintiffs' properties.

58. In other words, FLTF completely ignored the enormous public benefits when imposing the special assessments.

18

Case 1:24-cv-11473-MFL-PTM   ECF No. 1-2, PageID.43   Filed 06/04/24   Page 20 of 26

59.     Upon information and belief, in the years since the lakes retreated, Plaintiffs' property values have increased substantially, under the same or substantially similar market conditions that have increased home and property values across Michigan and across the United States.

60.     The special assessments run into the tens of thousands, or even hundreds of thousands of dollars.  Some Plaintiffs have been assessed nearly as much as, or more than, the true cash value or state equalized value of their properties.

<u>COUNT I: VIOLATION OF MICHIGAN TAKINGS CLAUSE—<br>INVERSE CONDEMNATION</u>

61.     Plaintiffs repeat and incorporate by reference each preceding paragraph.

62.     "Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed be law."  Const 1963, art 10, §2.

63.     "If private property consisting of an individual's principal residence is taken for public use, the amount of compensation made and determined for that taking shall be not less than 125% of that property's fair market value, in addition to any other reimbursement allowed by law." *Id*.

64.     "Compensation shall be determined in proceedings in a court of record." *Id*.

65.     A special assessment must provide benefit to the private property assessed in the form of increased market value. *Dixon Road Group v City of Novi*, 426 Mich 390, 401; 395 NW2d 211 (1986).

66.     The increased market value of the property after the improvement must be reasonably proportionate to the assessment. *Id*.

67.     When there is a "substantial excess" between the cost of an improvement and the benefits accruing to the land as a result, the assessment is "akin to the taking of property without

due process of law," requiring just compensation.  See *id.* at 402-403.  Such an assessment is invalid.  *Id*.

68.    "Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.  *Mays v Snyder*, 323 Mich 79; 916 NW2d 227 (2018) (cleaned up).

69.    "A plaintiff alleging a de facto taking or inverse condemnation must establish (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Id*. at 80 (cleaned up).

70.    The County and FLTF took direct action against the plaintiffs' properties by approving the special assessments.

71.    The special assessments do not benefit Plaintiffs' properties in the form of increased market value and instead decrease the net value because the special assessments run with the land.

72.    The cost of the Dams is in substantial excess to the benefits accruing to the land as a result thereof.

73.    The SAD itself is arbitrary and capricious, as the entire unfunded cost of the Dams is hoisted only onto a small portion of properties throughout Midland and Gladwin Counties that are benefitted by the Four Lakes.

74.    The methodology used to apportion the special assessment is arbitrary and capricious and contrary to law.

75. The methodology does not consider any increase in market value Plaintiff's properties will experience with the Project, and merely seeks to be "fair" to properties that fall within the arbitrarily drawn SAD, as compared to other properties in the SAD.

76. Plaintiffs may not be able to sell their homes because of the disproportionate special assessments.

77. Plaintiffs may lose their homes to foreclosure because of the disproportionate special assessments.

78. Once taken into the tax foreclosure process, Plaintiffs' homes and properties may be sold at auction by governmental entities, all without just compensation paid to Plaintiffs and without the statutory and procedural protections of the eminent domain process.

79. Through the unlawful special assessments, the County has taken Plaintiffs' property.

80. Plaintiffs are entitled to rescission of the special assessments or just compensation under Michigan's Takings Clause.

81. These actions by governmental defendants violate Plaintiffs' civil rights under 42 USC § 1983. Plaintiffs are entitled to their costs and attorneys' fees under 42 USC § 1988.

<u>COUNT II: VIOLATION OF THE TAKINGS CLAUSE OF THE UNITED STATES CONSTITUTION- INVERSE CONDEMNATION</u>

82. Plaintiffs repeat and incorporate by reference each preceding paragraph.

83. The Fifth Amendment of the Constitution of the United States provides that private property shall not be taken for public use, without just compensation. US Const, Am 5.

84. "Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant" without

employing eminent domain proceedings.  *Knick v Township of Scott, PA*, 588 US, 139 S Ct 2162, 2168; 204 L Ed 558 (2019) (cleaned up).

85.     The County and FLTF took direct action against Plaintiffs' properties by approving the special assessments.

86.     The special assessments do not benefit Plaintiffs' properties in the form of increased market value and instead decrease the net value because the special assessments run with the land.

87.     The cost of the Dams is in substantial excess to the benefits accruing to the land as a result thereof.

88.     Plaintiffs may not be able to sell their homes because of the disproportionate assessments.

89.     Plaintiffs may lose their homes to foreclosure because of the disproportionate assessments.

90.     Once taken into the tax foreclosure process, Plaintiffs' homes and properties may be sold at auction by governmental entities, all without just compensation paid to Plaintiffs and without the statutory and procedural protections of the eminent domain process.

91.     Through the unlawful assessments, the County has taken Plaintiffs' property.

92.     Plaintiffs are entitled to rescission of the special assessments or just compensation under the Federal Takings Clause.

93.     These actions by governmental defendants violate Plaintiffs' civil rights under 42 USC § 1983.  Plaintiffs are entitled to their costs and attorneys' fees under 42 USC § 1988.

## COUNT III: VIOLATION OF PROCEDURAL DUE PROCESS
## UNDER THE MICHIGAN CONSTITUTION

94.     Plaintiffs repeat and incorporate by reference each preceding paragraph.

95.     No person may be deprived of life, liberty, or property without due process of law. Const 1963, art 1, §17.

96.     A special assessment that does not provide a benefit reasonably proportional to the amount of the assessment is "akin to the taking of property without due process of law." *Dixon Road Group*, 426 Mich at 401.

97.     To determine whether a governmental actor has violated a person's rights to procedural due process, Michigan courts employ the three-part test from *Matthews v Elridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976):

98.     The private interest affected by the government action is Plaintiffs' ability to remain in their homes and the value of their real and personal property.

99.     The risk of erroneous deprivation of those interests through the procedures used is immense.  The County and the FLTF seek to compel Plaintiffs to pay a sum of money in order to complete the Dams, regardless of the benefit derived to Plaintiffs' properties and if it is not paid, to seize and auction the real property assessed.

100.    Additional or substitute procedural safeguards, including obtaining expert reports on the benefits derived from the Dams, would place minimal additional burden on the County and the FLTF.

101.    These actions by governmental defendants violate Plaintiffs' civil rights under 42 USC § 1983.  Plaintiffs are entitled to their costs and attorneys' fees under 42 USC § 1988.

<u>COUNT IV: VIOLATION OF PROCEDURAL DUE PROCESS<br>UNDER THE UNITED STATES CONSTITUTION</u>

102.    Plaintiffs repeat and incorporate by reference each preceding paragraph.

103.    No person may be deprived of life, liberty, or property without due process of law. US Const, Am XIV.

23

104. In apportioning and levying these assessments, the County has taken Plaintiffs' property without due process of law,

105. Courts consider a three-factor test to determine what is required by due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Matthews*, 424 US at 335.]

106. The private interest affected by the government action is Plaintiffs' ability to remain in their homes and the value of their real and personal property.

107. The risk of erroneous deprivation of those interests through the procedures used is immense. The County and the FLTF seek to compel Plaintiffs to pay a sum of money in order to complete the Dams, regardless of the benefit derived to Plaintiffs' properties and if it is not paid, to seize and auction the real property assessed.

108. Additional or substitute procedural safeguards, including obtaining expert reports on the benefits derived from the Dams, would place minimal additional burden on the County and the FLTF.

109. These actions by governmental defendants violate Plaintiffs' civil rights under 42 USC § 1983. Plaintiffs are entitled to their costs and attorneys' fees under 42 USC § 1988.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request as follows:

A. That this court amend the assessment of Appellants' properties so that the assessments are proportional to the increase in market value derived from the Dams.

B.    That this court order a reapportionment of the special assessment roll so that the assessments are proportional to the increase in market value derived from the Dams.

C.    That this court vacate the special assessment rolls.

D.    That this court award Plaintiffs just compensation for the taking of their properties.

E.    That this court award Plaintiffs' reasonable attorney fees and expert witness fees associated with protecting their interests.

F.    Any other relief the Court finds just and equitable.

Respectfully Submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.

Dated: May 2, 2024          By: _____

Michael D. Homier (P60318)
Laura J. Genovich (P72278)
Keith T. Brown (P84193)
FOSTER, SWIFT, COLLINS & SMITH, PC
*Attorneys for Appellant*
1700 E. Beltline Ave. NE, Suite 200
Grand Rapids, MI 49525
(616) 726-2200
mhomier@fosterswift.com
lgenovich@fosterswift.com
kbrown@fosterswift.com

88770:00001:7168463-3
89232:00001:200396233-1