UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

HERON COVE ASSOCIATION, et al.

      Plaintiffs,

v.

GLADWIN COUNTY BOARD OF
COMMISSIONERS and FOUR
LAKES TASK FORCE,

      Defendants.

Case No.:  24-cv-11473
Hon. Thomas L. Ludington
Mag. Judge Patricia T. Morris

---

| | |
|---|---|
| MICHAEL D. HOMIER (P60318)<br>LAURA J. GENOVICH (P72278)<br>KEITH T. BROWN (84193)<br>Foster, Swift, Collins & Smith, PC<br>Attorney for Plaintiffs<br>1700 E. Beltline Ave., NE, Ste. 200<br>Grand Rapids, MI 49525<br>(616) 726-2200<br>mhomier@fosterswift.com<br>lgenovich@fosterswift.com<br>kbrown@fosterswift.com | TIMOTHY S. FERRAND (P39583)<br>Cummings, McClorey, Davis & Acho, P.L.C.<br>Attorney for Gladwin County Board of<br>Commissioners<br>19176 Hall Road, Suite 205<br>Clinton Township, MI  48038<br>(586) 228-5600<br>tferrand@cmda-law.com<br>tlange@cmda-law.com<br><br>JOSEPH W. COLAIANNE (P47404)<br>ZACHARY C. LARSEN (P72189)<br>Clark Hill PLC<br>Attorney for Four Lakes Task Force<br>215 S. Washington Square, Suite 200<br>Lansing, MI 48933<br>(517) 318-3029<br>jcolaianne@clarkhill.com<br>zlarsen@clarkhill.com |

---

## DEFENDANT GLADWIN COUNTY BOARD OF COMMISSIONERS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)

Defendant GLADWIN COUNTY BOARD OF COMMISSIONERS, by and

through its attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, PLC, hereby

{02081349-1 }

moves this Court for dismissal of Plaintiffs' Complaint against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Defendant relies on the law and argument in the attached brief in support of this motion.

Defendant sought concurrence in the relief requested herein from Plaintiff. Concurrence was denied.

WHEREFORE, for all these reasons and for those in the attached brief, Defendant GLADWIN COUNTY BOARD OF COMMISSIONERS respectfully requests this Honorable Court enter an Order dismissing Plaintiffs' Complaint against it with prejudice.

Respectfully Submitted,

***Cummings, McClorey, Davis & Acho, PLC***

By:  /s/ TIMOTHY S. FERRAND
 TIMOTHY S. FERRAND (P39583)
 Attorney for Gladwin County Board of
 Commissioners
 19176 Hall Road, Suite 205
 Clinton Township, MI 48038
Dated: July 9, 2024  (586) 228-5600

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

HERON COVE ASSOCIATION, et al.

      Plaintiffs,

v.

GLADWIN COUNTY BOARD OF
COMMISSIONERS and FOUR
LAKES TASK FORCE,

      Defendants.

Case No.:  24-cv-11473
Hon. Thomas L. Ludington
Mag. Judge Patricia T. Morris

---

| | |
|---|---|
| MICHAEL D. HOMIER (P60318)<br>LAURA J. GENOVICH (P72278)<br>KEITH T. BROWN (84193)<br>Foster, Swift, Collins & Smith, PC<br>Attorney for Plaintiffs<br>1700 E. Beltline Ave., NE, Ste. 200<br>Grand Rapids, MI 49525<br>(616) 726-2200<br>mhomier@fosterswift.com<br>lgenovich@fosterswift.com<br>kbrown@fosterswift.com | TIMOTHY S. FERRAND (P39583)<br>Cummings, McClorey, Davis & Acho, P.L.C.<br>Attorney for Gladwin County Board of<br>Commissioners<br>19176 Hall Road, Suite 205<br>Clinton Township, MI  48038<br>(586) 228-5600<br>tferrand@cmda-law.com<br>tlange@cmda-law.com<br><br>JOSEPH W. COLAIANNE (P47404)<br>ZACHARY C. LARSEN (P72189)<br>Clark Hill PLC<br>Attorney for Four Lakes Task Force<br>215 S. Washington Square, Suite 200<br>Lansing, MI 48933<br>(517) 318-3029<br>jcolaianne@clarkhill.com<br>zlarsen@clarkhill.com |

---

## BRIEF REGARDING DEFENDANT GLADWIN COUNTY BOARD OF COMMISSIONERS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)

{02081349-1 }

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.......................................................................... ii

STATEMENT OF MATERIALS FACTS ...................................................1

I.  Parties and Claims ...................................................................................1

II.  The Factual Allegations in Plaintiff's Complaint..................................1

III.  The State Court Claim of Appeal .........................................................4

LAW AND ARGUMENT ..............................................................................8

I.  Legal Standard .........................................................................................8

II.  Certain Individual Plaintiffs Lack Standing to Bring These Claims ...................9

III.  The Gladwin County Board is Not a Separate Entity Subject to Suit .............12

IV.  Plaintiffs' Claims Are Precluded by the State Court Judgment ........................12

a.  The Same Parties/Privies Were Involved in Both Actions..................................14

b.  The Prior State Court Case Resulted in a Judgment on the Merits ....................15

c.  The Prior State Action Resolved These Issues/This Claim.................................18

d.  Plaintiffs Has a Full and Fair Opportunity to Litigate This Issue in the State Court........................................................................................................................19

V.  Plaintiffs Have Failed to Plead a Valid Inverse Condemnation/Taking Claim (Counts I and II)..........................................................................................................20

VI.  Plaintiffs Have Failed to Plead Valid Procedural Due Process Claims (Counts III and IV) ...................................................................................................................26

RELIEF REQUESTED.................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386, 396 (2004) ........................13

*Ahearn v. Bloomfiled Charter Twp.*, 597 N.W.2d 858, 861 (Mich. Ct. App. 1999) .....................................................................................................................................23

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................................................................................................................9

*Bates v. Twp. of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006)............................13

*Beck v. FCA US LLC*, 273 F.Supp.3d 735, 744 (E.D. Mich. 2017).........................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57, 570 (2007) ..............................9

*Bergeron v. Busch*, 579 N.W.2d 124, 126 (Mich. Ct. App. 1998) ..........................19

*Bevan v. Brandon Twp.*, 475 N.W.2d 37, 46 (Mich. 1991)....................................24

*Bevan*, 475 N.W.2d at 46 ........................................................................................24

*Braun*, 519 F.3d at 574 ...........................................................................................28

*Bredesen*, 556 F.3d at 456-57..................................................................................22

*Chakan v. Detroit,* 998 F.Supp. 779, 783 (E.D. Mich. 1998) ................................18

*Chappel Dam*, 762 N.W.2d at 197-98......................................................................29

*City of Troy Bldg. Inspector v. Hershberger*, 183 N.W.2d 430, 432-33 (Mich. Ct. App. 1970) ...........................................................................................................17

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ......................................10

*Coniglio v. Wyoming Valley Fire Ins. Co.*, 59 N.W.2d 74, 78 (Mich. 1953) ...........19

*Coniglio,* 59 N.W.2d at 78 .......................................................................................19

*D.A.B.E., Inc. v. City of Toledo,* 393 F.3d 692, 696 n.1 (6th Cir. 2005) ................25

*Daily Servs.*, 756 F.3d at 904 ........................................................................... 27, 29

*Daily Servs., LLC v. Valentino*, 756 F.3d 983, 904 (6th Cir. 2014) ........................26

*Dixon Rd. Group v. City of Novi*, 395 N.W.2d 211 (1986) ........................................5

*Dixon Road Group v. City of Novi*, 395 N.W.2d 211 (Mich. 1986).........................28

*Dixon*, 395 N.W.2d at 216-17 ..................................................................................28

*Dorman v. Twp. of Clinton*, 714 N.W.2d 350, 358 (Mich. Ct. App. 2006).............25

*Dubuc v. Green Oak Twp.*, 312 F.3d 736, 747 (6th Cir. 2002) ...............................18

*Electro-Tech, Inc. v. H.F. Campbell Co.*, 445 N.W.2d 61, 76 (Mich. 1989)...........21

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)...........12

*Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021) ........................................10

*Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ..........................................................27

*Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)...........................................26

*Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002) .........................................14

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equipment*, 48 F.4th 656, 663 (6th Cir. 2022) ........................................................8

*Houdini Properties, LLC v. Romulus*, 743 N.W.2d 198 (2008) ..............................17

*In re Chappel Dam*, 762 N.W.2d 192, 197-98 (Mich. Ct. App. 2009) ...................16

*Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004)....27

*K & K Const. v. Dept. of Natural Resources*, 575 N.W.2d 531, 535 (Mich. 1998).21

*K & K Const.,* 575 N.W.2d at 535 ..........................................................................22

*K & K Const.*, 705 N.W.2d at 368 ..........................................................................22

*K & K Const.*, 705 N.W.2d at 384 ..........................................................................23

*Kadzban v. City of Grandville*, 502 N.W.2d 299 (1993)............................................5

*Kadzban*, 442 Mich at 502 ........................................................................................6

*Kadzban*, 502 N.W.2d at 302-03 ............................................................................29

*Kaplan v. Univ. of Louisville*, 10 F.4th 569, 578 (6th Cir. 2021) ...........................27

*Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 485–86 (1987) ..22

*Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481-82 (1982)................................13

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016 (1992) ...............24

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S.Ct. 1589, 1597 (2020)..........................................................................................................18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ................................10

*Lujan*, 504 U.S. at 560 ............................................................................................10

*Lujan*, 504 U.S. at 561 ............................................................................................10

*Martinez v. California*, 444 U.S. 277, 284 n.7 (1980) ............................................19

*Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)....................................................27

*McCarthy v. City of Cleveland*, 626 F.3d 280, 284 (6th Cir. 2010) ........................20

*Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 847 (Mich. 2004) .......................20

*Peason v. City of Grand Blanc*, 961 F.2d 1211, 1222 (6th Cir. 1992) ....................28

*Penn Central Transp. Co.*, 438 U.S. at 130 ............................................................25

*Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978)..........21

*Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)........................................................................................21

*Penn Central*, 438 U.S. at 124 ...............................................................................22

*Penn Central*, 438 U.S. at 131 ...............................................................................24

*People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990)........................................14

*Peterman v. Dept. of Natural Resources,* 521 N.W.2d 499, 506 (Mich. 1994).......21

*Peterson Novelties*, 672 N.W.2d at 358 .................................................................19

*Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 13, 672 N.W.2d 351 (2003)..............................................................................................................15

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-06 (1984)................................25

*Scott v. City of Detroit*, No. 20-11572, 2021 WL 323756, at *2 (E.D. Mich. Feb. 1, 2021) .................................................................................................................9

*Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) ...................................................13

*Solis v. Global Acceptance Credit Co., L.P.*, 601 Fed. Appx. 767, 771 (11th Cir. 2015) ...............................................................................................................9

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) .....................................................10

*Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008).........................8

*Swartz Ambulance Serv., Inc. v. Genesee County*, 666 F.Supp.2d 721, 726 (E.D. Mich. 2009).....................................................................................................12

*Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009).........21

*TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021).......................................9

*W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 Fed. Appx. 484, 492-93 (6th Cir. 2017) .................................................................................20

*Zelasko v. Charter Twp. of Bloomfield*, __ N.W.3d __, 2023 WL 3665863, at *8 (Mich. Ct. App. May 25, 2023) ..........................................................................18

*Zelasko*, 2023 WL 3665863, at *8 ............................................................................17

## Other Authorities

28 U.S.C. § 1738.........................................................................................................12

## Rules

MCR 2.203..................................................................................................................19

## Constitutional Provisions

Article X, Section 2 of the Michigan Constitution of 1963......................................20

## STATEMENT OF MATERIAL FACTS

### I.      Parties and Claims

This case arises out of a special assessment to fund the acquisition, remediation, repair, and reconstruction of the Secord, Smallwood, Wixom, and Sanford Lakes dams (the "Four Lakes") following the failure of the Edenville and Sanford Dams in May of 2020. Plaintiffs are Heron Cove Association ("HCA") -- a nonprofit corporation comprised of "property owners and interest holders" within or adjacent to the Four Lakes Special Assessment District ("SAD") -- and individual members of HCA. (**ECF No. 1-2**, PageID.35) Defendants are the Gladwin County Board of Commissioners and the Four Lakes Task Force ("FLTF"), the County's designated authority under Part 307 of Michigan's Natural Resources and Environmental Protection Act, MCL 307.30701 *et seq.*

Plaintiffs filed this four-count Complaint alleging that the special assessment has resulted in an Inverse Condemnation under the Michigan Constitution (Count I) a Taking under the Federal Constitution (Count II), and a violation of Procedural Due Process under the State and Federal Constitution (Counts III and IV).  (**Id.**, PageID.43-48) Plaintiff's seek amendment and reapportionment of the special assessment rolls.  (**Id.**, PageID.49)

### II.     The Factual Allegations in Plaintiffs' Complaint

Plaintiffs assert that in 2019, Midland and Gladwin Counties appointed FLTF

as their delegated authority under Part 307 of the Michigan Natural Resources and Environmental Protection Act.  (**ECF No. 1-2**, PageID.37) The Counties filed a joint petition in the Midland County Circuit Court to establish normal lake levels for the Four Lakes and the Four Lakes Special Assessment District. (**Id.**)

After the legal lake levels and SAD were established by the Circuit Court, FLTF developed plans to finance and reconstruct the dams, including levying special assessments.  (**Id.**, PageID.38) While there would be other sources of funding for the reconstruction Project, the SAD would be the primary source of funding to maintain the lake levels and the dams.  (**Id.**)  FLTF originally estimated the entire Project would cost $250 million.  (**Id.**) $180 million would be paid from grants obtained from other sources, and $70 million would be passed on to the SAD.  (**Id.**) It was later determined the Project's cost would be $399,700,000, passing $217 million on to the SAD.  (**Id.**, PageID.38-39)

Construction on the Dams began in 2022.  (**Id.**, PageID.39) On January 15, 2024, FLTF held a public hearing regarding assessment rolls, as required under Part 307.  (**Id.**, PageID.39) Following that hearing, FLTF revised the apportionment methodology commensurate with public comments.  (**Id.**) On February 6, 2024, Gladwin County approved the special assessment rolls.  (**Id.**, PageID.37)

To apportion the assessments, each parcel within the SAD was assigned a "derived benefit factor" corresponding to the amount of benefit derived to each

parcel compared to other parcels in the district.  (**Id.**, PageID.40) Plaintiffs contend that assessment methodology does not consider the different cost of each dam, the different number of parcels around each lake, and that property owners north of the dams do not benefit from reconstruction of the southernmost dam.  (**Id.**, PageID.41) Plaintiffs also claim that the methodology does not account for differences in the quality of frontage upon each lake.  (**Id.**)

Plaintiffs speculate that repairing the dams will not lead to a proportional increase in the market value to their properties, that the special assessment exceeds the benefits accrued to the land, and that the dams' benefits will accrue to the public at large, who will not be assessed.  (**Id.**, PageID.41-42) Plaintiffs also claim that the assessment for each property is greater than the increased value of each property and, in total, is greater than the value of their properties.  (**Id.**, PageID.43)

Plaintiffs allege that an inverse condemnation/taking has occurred because the cost of the dams exceeds the benefits accruing to the land as a result the acquisition and repair project, resulting in decreased net market values for their properties.  (**Id.**, PageID.45-46) They speculate that they <u>may</u> not be able to sell their homes or <u>may</u> lose them to foreclosure.  (**Id.**)

Plaintiffs allege that their due process rights have been violated because the special assessment may not provide a benefit reasonably proportional to the amount of the assessment.   (**Id.**, PageID.47-48) They claim that additional procedural

safeguards such as obtaining expert reports confirming the benefits derived from the dams are required to protect their property rights.  (**Id.**)

### III.    *The State Court Claim of Appeal*

On February 20, 2024, Plaintiffs appealed the decisions of the Midland and Gladwin County Boards approving the special assessment to the Midland County Circuit Court.  (**Ex. A**, Amended Claim of Appeal)

Plaintiffs argued that the Counties' levying and apportionment of the special assessment rolls was not authorized by law and the assessment was not supported by competent, material, and substantial evidence.  (**Id.** at ¶ 13) Specifically, Plaintiffs argued that (1) the Counties began construction on the improvement before they approved the cost and the special assessment role by resolution (**Id.** at ¶ 14); (2) Plaintiffs' properties derived little to no special benefit or gain in market value from the assessment beyond that provided to the community as a whole (**Id.** at ¶ 15); and, importantly, (3) **The amount of the assessment imposed was grossly disproportionate to the increase in market value to the properties and constitutes a taking of property without due process of law and an unconstitutional taking of property without just compensation** (**Id.** at ¶ 16). Plaintiffs asked the State Court to vacate and order a reapportionment of the special assessment rolls.  (**Id.** at ¶ 17)

The State Court considered the evidence and testimony, including the

methodology used to establish the assessment, the procedure followed to consider and approve the assessment, and the applicable law governing Procedural Due Process and Takings/Inverse Condemnation, and rendered an Opinion and Order dismissing the appeal and denying the relief sought by Plaintiffs. (**Ex. B**, 6/20/24 Opinion and Order). The State Court held, *inter alia,* that (1) the special assessments are supported by competent, material, and credible evidence; (2) Plaintiffs were afforded all process permitted under law; (3) and, the assessment was reasonably proportionate to the increased value of the property. (**Id.** at 5-13)

The State Court decision establishes that Plaintiffs were afforded due process under the Inland Lake Level Act. (**Id.** at 6) Defendants followed the procedures outlined in the Act, and held public webinars, created virtual property maps, and provided more notice than required. (**Id.** at 6-7) Further, a public hearing was conducted and attended by hundreds of property owners. (**Id.**) Property owners were provided the opportunity to address the assessment in relation to their properties, and to object to the rolls verbally or in writing. (**Id.**) As such, proper process was afforded. (**Id.** at 7)

The State Court also established that competent, material, and substantial evidence supported the assessment, which was proportional to the increased value of each property. (**Id.** at 7) Citing *Kadzban v. City of Grandville*, 502 N.W.2d 299 (1993) and *Dixon Rd. Group v. City of Novi*, 395 N.W.2d 211 (1986), the State Court

explained that under Michigan law, "a special assessment will be declared invalid only when the party challenging the assessment demonstrates 'that there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements." (**Id.** at 9)

The State Court found that there was no evidence of an unreasonable disproportionality between the amounts assessed and the value and benefit derived. (**Id.**) Plaintiffs compared the state equalized values of 12 of the 800 properties, before and after the assessment. (**Id.**) The State Court rejected this comparison as irrelevant, inconclusive, and unpersuasive. (**Id.** at 9-10) The State Court wrote:

> However, a close examination of these select properties by [Plaintiffs] does not adequately support the asserted argument of disproportionality even assuming the SEVs provided are reflective of the true fair market value of those identified properties. …Any increase in value may be attributable to the restoration of the dam's project beginning or simply fluctuations in the real estate market, but it certainly does not show a "substantial or unreasonable disproportionality" between the market value of the property before the restoration of the dams and the value of the property based upon completion of the project for raising the water level of the lakes.
>
> \*     \*     \*
>
> …There is a dearth of credible evidence provided within the numerous objections filed with the FLTF how the methodology is disproportionate to the benefit derived from the restoration of the water level for the four lakes affected.  "[T]he question whether and how much the value of land has increased as the result of certain improvements is factual, to be determined on the basis of evidence presented by the parties." *Kadzban*, 442 Mich at 502.  Appellants have failed to present such evidence either in the hearings before [Defendants] or to this Court on appeal to overcome the rebuttable presumption for a valid special assessment apportionment.

(**Id.** at 9-10)

The State Court noted that the assessment methodology "takes into account several factors geared toward gauging the benefit each property will derive from the restoration of the lakes, such as the amount of frontage on the lakefront and the lake view." (**Id.** at 12)

> These factors are undoubtedly criteria buyers of lakefront property would take into consideration when purchasing such property and assessing the value for the purchase price. It is common sense to know a lake front property with a lake view would have a higher value than property that had been lake front property previously, but now has extensive bottom lands to traverse to reach any flowing water, nor the previous level of lake view. [Defendants] articulated a legitimate basis for the methodology to apportion the amount of the improvements needed to restore the level of the lakes and [Plaintiffs] have failed to overcome the presumption of validity.
>
> Additionally, a number of alterations and adjustments were made to property owners' assessments prior to and at the public hearing on January 15, 2024, based on information furnished by the property owners, as conceded by [Plaintiffs] in their brief. These modifications of the assessments permitted by [Defendants] provided a basis for proportionality to be evaluated in determining the extent of benefit derived by each parcel of land from the restoration of the water level of the lakes.

(**Ex. B** at 12-13)

Finally, the State Court rejected Plaintiffs' assertion that due process required a "trial-type hearing." (**Id.** at 11-12) What was required was that the assessment be reasonably proportional to the benefit derived, Plaintiffs be provided with notice and an opportunity to object, and that Plaintiffs could appeal to the State Court. (**Id.** at

12) All of this occurred. (**Id.**)

The State Court decision establishes that Plaintiffs have been afforded due process and the assessments are substantially and reasonably proportional to the value and/or benefits accrued. (**Id.** at 5-13) The State Court upheld the assessment and assessment process. (**Id.**)

**LAW AND ARGUMENT**

## I.    *Legal Standard*

"A motion that alleges lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *Beck v. FCA US LLC*, 273 F.Supp.3d 735, 744 (E.D. Mich. 2017) (citing *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008)). The plaintiff bears the burden of proving subject-matter jurisdiction. *Id.*

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Rule 12(b)(6). "Rule 12(b)(6) motions are decided under the *Iqbal-Twombly* standard. In order to survive dismissal, the complaint must meet the pleading requirements set forth in Federal Rule of Civil Procedure 8(a)(2)." *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equipment*, 48 F.4th 656, 663 (6th Cir. 2022).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

> inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57, 570 (2007)) (internal citations omitted).

"[A] complaint is also subject to dismissal under Rule 12(b)(6) 'when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy.'" *Scott v. City of Detroit*, No. 20-11572, 2021 WL 323756, at *2 (E.D. Mich. Feb. 1, 2021) (**Ex. C**). "The preclusive effect of res judicata is one such affirmative defense that is frequently considered on a motion to dismiss under Rule 12(b)(6). *Id.* (citing *Solis v. Global Acceptance Credit Co., L.P.*, 601 Fed. Appx. 767, 771 (11th Cir. 2015) (*res judicata* "may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint.") "In evaluating a res judicata defense presented by way of a Rule 12(b)(6) motion, a court may take judicial notice of its own records and the records of other courts." *Id.*

## II.   *Certain Individual Plaintiffs Lack Standing to Bring These Claims*

Under Article III of the Constitution, plaintiffs must have a "personal stake" in the case to have standing. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021). To establish standing, the plaintiff must show "(i) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was

likely caused by the defendant; and (iii) that the injury would be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). These elements are "an indispensable part of the plaintiff's case," and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

To establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' and is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560). To be concrete, the injury must exist. *Id.* at 340. To be particularized, the injury "must affect the plaintiff in a personal and individual way, not in a general manner that affects the entire citizenry." *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021). To be actual and imminent, the injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Heron Cove Association does not own property within the SAD and is not subject to an assessment. It has no property right or interest at stake and has not suffered any injury (actual or imminent). Heron Cove lacks standing to challenge the assessment, or the procedure followed to establish the assessment.

Individual Plaintiffs Kevin and Madeline Ayers, David and Robin Ebendick,

Deidra Donald, Caroline Goik, Arthur L. and Rhonda L. Goodwin Trust, Katie and Brandon Grund, Kelly Hasenfratz, George and Lori Hilliard, Irvin and Rosemarie Potts, Nancy Janeau, Kim Keeley, Keith Foren, Jeffrey and Sandy Kinne, Pamela Lawrence, Timothy Long and Roxann Witter-Long, Lisa Morrison, Christine Pellar, Shannon and Jamie Adams, John Smilnak, Sylvia Gilvids, and Robert and Joan Turner do not own property within the SAD. (**Ex. E**, Table of Properties Not in SAD) They have no property right or interest at stake. They are not subject to an assessment. They lack standing to challenge the assessment or the procedure followed to create the assessment.

Plaintiffs Ric and Sally Ader, Michael and Darlene Adolph, Mary Bechtel, Scott and Rachele Brichacek, Bruce and Sherry Carter, Richard Castro, Carolyn Cox and Briant Heiser, Richard Cox, Thaddeus and Mary Ann Gieraltowski, Jill and Jerome Glinski, Gail Post-Herold, Michael Lathrop, Patricia and James McAteer, Floyd McDonald, Randall McDonald, Christopher and Terry Miller, Edward and Betty Mullin, Frederick and Rosemarie Murray, Daniel and Lisa Ouillette, Andrew Peters, Nancy Pietz-Castro, Edward Pinkston, William and Laura Saros, Jeffrey Schaffer, Ronald and Pamela Schmidt, Robert Seiberling, Kenneth and Catherine Sesto, Brenda Lee Stickney, Cheryl Walding, Thomas Warschefsky, Richard and Teresa Wing Revocable Trust, and Casmier and Andrea Zomerfeld own properties within the SAD that were assessed $0. (**Ex. F**, Table of Properties Assessed at $0)

These Plaintiffs have no injury to themselves or their property rights or interests. They lack standing to challenge the assessments to others' properties or the procedure followed to create the assessments.

These Plaintiffs have not suffered concrete, particularized, actual or imminent injury to person or property. They have no property right or interest affected by the assessment. They lack standing to participate in this litigation.

### III.    The Gladwin County Board is Not a Separate Entity Subject to Suit

Plaintiffs have named the "Gladwin County Board of Commissioners" as a Defendant in this action.  The County Board of Commissioners is "simply the legislative body of the County." *See Swartz Ambulance Serv., Inc. v. Genesee County*, 666 F.Supp.2d 721, 726 (E.D. Mich. 2009). It is not a legal entity separate from the County.  *See id.* The only legally cognizable entity is the County. As such, Plaintiffs' claims against the Board of Commissioners should be dismissed.

### IV.    Plaintiffs' Claims Are Precluded by the State Court Judgment

"The Full Faith and Credit Act, 28 U.S.C. § 1738, originally enacted in 1790, ch. 11, 1 Stat. 122, requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).  "[28 U.S.C. § 1738] does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments.  Rather, it goes beyond the common law and commands a

federal court to accept the rules chosen by the State from which the judgment is taken." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481-82 (1982).

The Midland County Circuit Court has already considered and rejected Plaintiffs' claims of a procedural due process violation and taking/inverse condemnation. (**Ex. B** at 5-7) Plaintiffs' challenge to the assessment as substantially and unreasonably disproportionate to the value/benefits accrued was also fully argued and rejected by the State Court. (**Id.** at 7-13) Indeed, the State Court decided that the assessment was both proportionate and supported by competent evidence (i.e., was not arbitrary and capricious). (**Id.**)

"The Michigan Supreme Court 'has taken a broad approach to the doctrine of res judicata,' determining that it 'bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'" *Bates v. Twp. of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006) (quoting *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004)).

Likewise, "[c]ollateral estoppel…prevents a party from relitigating issues of fact or law which were necessarily decided by a previous final judgment." *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). "Under Michigan law, collateral estoppel applies when 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated

and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002) (citing *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990)).

Res judicata applies to bar Plaintiffs' procedural due process and taking/inverse condemnation claims. Additionally, Plaintiffs are collaterally estopped from arguing that the amounts assessed were substantially and unreasonably disproportionate the value and/or benefits accrued.

### a.   *The Same Parties/Privies Were Involved in Both Actions*

The Plaintiffs in both this action and the underlying state court action was Heron Cove Association and its individual members (including most of the named property owners in this litigation). (**ECF No. 1-2**, PageID.34-35; **Ex. A**) The Defendants in both actions are the Midland and Gladwin County Board of Commissioners and the Four Lakes Task Force. (**ECF No. 1-2**; **Ex. A**)[1] The same parties were therefore involved in both actions.

To the extent certain individual plaintiffs in this action were not involved in the first action, they were in privity with the plaintiffs in the first action. "In order to find privity between a party and a nonparty, Michigan courts 'require both a

---

[1] Plaintiffs filed a separate, substantively identical action against the Midland County Board of Commissioners and the Four Lakes Task Force, 24-cv-11458-TLL-PTM.

substantial identity of interests and a working or functional relationship…in which the interests of the non-party are presented and protected by the party in the litigation.'" *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 359 (2003). Here, the interests asserted by the plaintiffs in the State Court action and this action are identical.  Furthermore, HCA asserted in both the State Court appeal and in this case that it has associational standing to represent the interests of all of the property owners in the SAD, including all plaintiffs in both actions.  The State Court agreed. (**Ex. B** at 3-5) As such, the interests of all plaintiffs in this action were presented and protected in the State Court action.

### b.  *The Prior State Court Case Resulted in a Judgment on the Merits*

In the underlying state court action, Plaintiffs argued that "the special assessments levied on their properties equate to a taking by the government and the procedures followed by [Defendants] were insufficient to safeguard [Plaintiffs'] due process rights."  (**Ex. B** at 5; **Ex. A** at ¶ 16) Specifically, Plaintiffs claimed their due process rights were violated because the public hearings were improperly noticed and conducted.  (**Ex. B** at 5-7) Plaintiffs also argued that a taking/inverse condemnation had occurred, and their due process rights were violated, because there was "an unreasonable disproportionality between the amounts of their assessments in comparison to the benefit derived."  (**Id.** at 9; **Ex. A** at ¶ 16)

The State Court rejected all arguments.  First, as to the public hearing process,

the State Court explained that "[t]he ILLA 'guarantees notice and an opportunity to be heard before the determination of a special assessment roll" and "a sufficient hearing is one that (1) allows the circuit court to ensure that the county has considered the varying public interests in reaching its policy decision and (2) protects the public against arbitrary governmental action.'" (**Id.** at 6-7) (citing *In re Chappel Dam*, 762 N.W.2d 192, 197-98 (Mich. Ct. App. 2009)).

The State Court found that "[Plaintiffs] were afforded all the protections within the ILLA and affirmed by the Court of Appeals in *Chappel Dam*." (**Id.**) Defendants not only followed the procedures as outlined in the Act but went beyond them. (**Id.** at 6-7) A public hearing was held and attended by hundreds of people. (**Id.**) Property owners were able to discuss their properties and the assessment, and to object to the rolls either verbally or in writing. (**Id.**) Finally, Plaintiffs appealed to the Circuit Court. (**Ex. A**) As such, there had been no violation of procedural due process. (**Ex. B** at 7)

Plaintiffs make the same arguments of disproportionality between the assessments and the benefit as they made in the State Court. The State Court rejected these arguments, finding no evidence of disproportionality. (**Id.** at 9) The State Court ruling establishes that Defendants "articulated a legitimate basis for the methodology to apportion the amount of the improvements needed to restore the level of the lakes," including "several factors geared toward gauging the benefit each property

will derive from the restoration of the lakes, such as the amount of frontage on the lakefront and the lake view."   (**Id.** at 12) Further, Defendants made several adjustments to the assessments both prior to and at the public hearing based on information furnished by the property owners, which "provided a basis for proportionality to be evaluated in determining the extent of the benefit derived by each parcel of land from the restoration of the water level of the lakes."  (**Id.** at 13)

The State Court rendered its opinion as part of the administrative appeal brought pursuant to MCR 7.123. (**Ex. A**)[2] The Court considered evidence, testimony, and the record on which the legislative decision was based, and held the special assessments are supported by competent, material, and credible evidence. The Court held that there was no violation of Plaintiffs' due process rights, and Plaintiffs had not articulated unreasonable disproportionality.  (**Ex. B** at 5-13) Its order is final and resolves the last pending claim.  (**Id.** at 13)

Unless and until reversed, modified, or vacated on appeal, this judgment must be given preclusive effect.  *City of Troy Bldg. Inspector v. Hershberger*, 183 N.W.2d 430, 432-33 (Mich. Ct. App. 1970).  *See also Chakan v. Detroit,* 998 F.Supp. 779,

---

[2] MCR 7.123 expressly contemplates an appellate court deciding the constitutionality of an administrative decision.  MCR 7.123(G)(2).  The restriction preventing the circuit court from addressing taking and substantive due process arguments on administrative appeal in *Houdini Properties, LLC v. Romulus*, 743 N.W.2d 198 (2008) applies only to appeals from zoning ordinance determinations under MCR 7.122.  It also does not apply to procedural due process claims or collateral estoppel. *Zelasko*, 2023 WL 3665863, at *8.

783 (E.D. Mich. 1998).   The underlying administrative decision cannot be collaterally attacked in this Court. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. 405, 416 (2020)  (Where a party "seeks to avoid the effect of a prior judgment by bringing a suit to undo it…[and] a different outcome in the second action 'would nullify the initial judgment or would impair rights established in the initial action,' preclusion principles would be at play.")  *See also Zelasko v. Charter Twp. of Bloomfield*, __ N.W.3d __, 2023 WL 3665863, at *8 (Mich. Ct. App. May 25, 2023) (**Ex. D**) (an original action simply challenging an administrative order outside the appeal process is an impermissible collateral attack).

### c.      *The Prior State Action Resolved These Issues/This Claim*

Plaintiffs argue that a taking/inverse condemnation occurred, and their due process rights were violated, because the special assessment may not "provide a benefit reasonably proportional to the amount of the assessment."  (**ECF No. 1-2**, PageID.43, 47) The same argument was raised and rejected by the State Court.  (**Ex. B** at ¶ 16) Plaintiffs are precluded from relitigating these claims here.

Further, if Plaintiffs' arguments were distinct from those made in the State Court (and they are not), preclusion would still apply.  Michigan courts apply a broad application of res judicata and claim preclusion, barring not only claims which were brought and adjudicated previously, but also those which could have been brought, but were not. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 747 (6th Cir. 2002)

(collecting cases).  *See also* MCR 2.203; *Peterson Novelties*, 672 N.W.2d at 358; *Coniglio v. Wyoming Valley Fire Ins. Co.*, 59 N.W.2d 74, 78 (Mich. 1953) (Michigan strictly enforces the "rule of justice" against splitting causes of action in order to prevent vexation and expense to a defendant); *Bergeron v. Busch*, 579 N.W.2d 124, 126 (Mich. Ct. App. 1998) ("Michigan has adopted a broad application of *res judicata* that bars claims arising out of the same transaction that plaintiff could have brought but did not.") Additionally, state courts can exercise concurrent jurisdiction over § 1983 claims.  *Martinez v. California*, 444 U.S. 277, 284 n.7 (1980).  Plaintiffs could and should have brought their federal due process and federal taking claims in the original state court action.

Plaintiffs litigated their due process and taking claims in the State Court.  The State Court rejected both claims.  Plaintiffs could have (and were obligated to) raise all other claims including their Federal due process and taking claims and supporting theories. Plaintiffs cannot now bring the same claims under a different theory. Michigan law specifically precludes "dividing a single or indivisible cause of action into several parts or claims and bringing several actions thereon."  *Coniglio,* 59 N.W.2d at 78.  ("It is a rule of justice that one shall present his whole cause of action in one suit.")

### d.    *Plaintiffs Had a Full and Fair Opportunity to Litigate This Issue in the State Court*

Litigants have a full and fair opportunity to litigate an issue in a prior

proceeding where they were represented by counsel, allowed to present evidence, and permitted to actively participate in the action. *See W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 Fed. Appx. 484, 492-93 (6th Cir. 2017); *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 847 (Mich. 2004). Plaintiffs were represented by counsel. They presented documentary and testimonial evidence to the court. They were permitted to actively participate and argue these claims. Plaintiffs had a full and fair opportunity to litigate all claims that the assessments were disproportionate and that they were denied due process.

## V.   *Plaintiffs Have Failed to Plead a Valid Inverse Condemnation/Taking Claim (Counts I and II)*

In Counts I and II, Plaintiffs claim Defendants' special assessment has resulted in a taking of their property without just compensation in violation of Article X, Section 2 of the Michigan Constitution of 1963 and the Fifth Amendment of the Federal Constitution. (**ECF No. 1-2**, PageID.43-46)

Under the Fifth Amendment, "[a] taking may assume one of two forms: *per se*, also known as a physical taking, or regulatory." *McCarthy v. City of Cleveland*, 626 F.3d 280, 284 (6th Cir. 2010). "The Supreme Court uses two tests to evaluate whether a regulatory taking has occurred. Where a governmental action deprives property owners of 'all economically beneficial uses' of their property, it is a categorical regulatory taking…In all other cases – that is, where the property is not rendered valueless – the Court uses the balancing test of *Penn Central*

*Transportation Co. v. City of New York*, 438 U.S. 104 (1978)." *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009).

Likewise, under the Michigan Constitution, "a taking for purposes of inverse condemnation means that governmental action has permanently deprived the property owner of any possession or use of the property." *Electro-Tech, Inc. v. H.F. Campbell Co.*, 445 N.W.2d 61, 76 (Mich. 1989). An "inverse condemnation may occur…where the effect of a governmental regulation is 'to prevent the use of much of [the] plaintiff's property…for any profitable purpose.'" *Peterman v. Dept. of Natural Resources,* 521 N.W.2d 499, 506 (Mich. 1994). Put another way, "the government may effectively 'take' a person's property by overburdening that property with regulations." *K & K Const. v. Dept. of Natural Resources*, 575 N.W.2d 531, 535 (Mich. 1998). This type of taking "is further subdivided into two situations: (a) a 'categorical' taking, where the owner is deprived of 'all economically beneficial or productive use of land;' or (b) a taking recognized based on the application of the traditional 'balancing test' established in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978)." *Id.*

Plaintiffs assert the latter situation. (**ECF No. 1-2**, PageID.43-46) They do not allege their properties have been rendered valueless by the special assessment. (**Id.**) They assert that the special assessment will decrease the market value of their properties because it is in excess to the benefits accruing to the land. (**Id.**) As such,

whether a taking has occurred requires an analysis of the *Penn Central* factors: "(1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations." *K & K Const.,* 575 N.W.2d at 535; *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 485–86 (1987)).

> Stated another way, if the land-use regulation, like traditional zoning…regulations: (1) is comprehensive and universal so that the private property owner is relatively equally benefitted and burdened by the challenged regulation as other similarly situated property owners, and (2) if the owner purchased with knowledge of the regulatory scheme so that it is fair to conclude that the cost to the owner factored in the effect of the regulations on the return on investment, and (3) if, despite the regulation, the owner can make valuable use of his or her land, then compensation is not required under *Penn Central.*

*K & K Const. Inc. v. DEQ*, 705 N.W.2d 523, 528 (Mich. Ct. App. 2005). *See also Bredesen*, 556 F.3d at 456-57.

Under the first factor, "[a] 'taking' may be more readily found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124. Plaintiffs' properties have not been physically invaded nor appropriated for a governmental purpose. Instead, a special assessment (fee) has been assessed to them. Therefore, "[t]he relevant inquiries are whether the governmental regulation singles plaintiffs out to bear the burden for the public good

and whether the regulatory act being challenged here is a comprehensive, broadly based regulatory scheme that burdens and benefits all citizens relatively equally." *K & K Const.*, 705 N.W.2d at 384. *See also Bredesen*, 556 F.3d at 457.

Special assessments for public improvements are validly assessed when a benefit is conferred upon the assessed property over and above that conferred upon the community itself. *Ahearn v. Bloomfiled Charter Twp.*, 597 N.W.2d 858, 861 (Mich. Ct. App. 1999). "In order for an improvement to be deemed to have conferred a 'special benefit,' it must cause an increase in the market value of the land specially assessed." *Id.* Here, the dams are being restored and the lake leveling equipment is being acquired for the benefit of the property owners around and near the lakes. The properties assessed are those with lake frontage and lake views. The apportionment is designed to benefit similarly situated properties equally. The methodology employs five factors (applied to each property) to assure relative consistency. (**Ex. B** at 12)

The State Court has already established that Plaintiffs' properties will derive special benefit from the restoration of the lakes because they will be lakefront and lake-view properties. "It is common sense to know a lake front property with a lake view would have a higher value than property that had been lake front property previously," or has never been and will never be lake-front or lake view. (See **id.**) The assessment is applied to these property owners consistently.

Plaintiffs' assertion that other (non-lakefront and non-lakeview) properties should be included in the assessment is irrelevant. The question is whether the assessment treats all similarly situated properties consistently, not whether other dissimilar properties should be included. Plaintiffs have not been singled out. Their properties are treated the same as all other lakefront and lake view properties that directly benefit from the action taken.

Under the second factor, the regulation's economic effect, "a property owner must prove that the value of his land has been destroyed by the regulation or that he is precluded from using the land...for any purposes to which it is reasonably adapted." *Bevan v. Brandon Twp.*, 475 N.W.2d 37, 46 (Mich. 1991). *See also Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016 (1992) ("[T]he Fifth Amendment is violated when land-use regulation 'does not substantially advance legitimate state interests or denies an owner economically viable use of his lands.") "[A] mere diminution in property value which results from regulation does not amount to a taking." *Bevan*, 475 N.W.2d at 46 (citing *Penn Central*, 438 U.S. at 131). *See also Bredesen*, 556 F.3d at 456.

Plaintiffs' property values have not been destroyed and their properties' uses have not been reduced. Their lands remain, their homes remain, they have full ingress and egress, and eventually, they will have lake-front or lake-view property again. Plaintiffs are not precluded from using their properties for residential use and

development.  Indeed, their properties have significant value.  Plaintiffs simply *speculate* their properties' net worth *may* decline, or they *may* not be able to sell their homes, or they *may* lose their homes to foreclosure.  (**ECF No. 1-1**, PageID.44-45) Unsupported speculation about mere diminution in value is insufficient to support a valid inverse condemnation/taking claim as a matter of law.  *D.A.B.E., Inc. v. City of Toledo,* 393 F.3d 692, 696 n.1 (6th Cir. 2005); *Dorman v. Twp. of Clinton*, 714 N.W.2d 350, 358 (Mich. Ct. App. 2006).

Finally, the special assessment does not interfere with Plaintiffs' distinct, reasonable investment-backed expectations.  A reasonable investment-backed expectation "must be more than a 'unilateral expectation or abstract need.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-06 (1984).  Plaintiffs cannot establish a taking claim "simply by showing that they have been denied the ability to exploit a property interest that they heretofore believed was available...." *Penn Central Transp. Co.*, 438 U.S. at 130.

Plaintiffs acquired lakefront and lakeview properties for all the reasons associated therewith (recreation, nature, solitude and beauty). The assessment is being applied to restore the benefits associated with lakefront living to/for these properties. As observed by the State Court, the improvement will render these properties more valuable, saleable, and useable. Regardless, waterfront and water view owners acquire properties knowing that the lake may need to be maintained for

their benefit. They cannot argue an assessment associated therewith and designed for their benefit interferes with their property rights or interests. The expectation (if any) was always that there would be four lakes, dams controlling the lakes, and properties assessed to maintain those lakes. The fact that the assessment increased commensurate with actual costs does not frustrate reasonable expectations or constitute a taking as a matter of law.

## VI.   *Plaintiffs Have Failed to Plead Valid Procedural Due Process Claims (Counts III and IV)[3]*

"To establish a procedural due process claim, a plaintiff must show that (1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 983, 904 (6th Cir. 2014). "[A] party may maintain a procedural due process § 1983 case in federal court if he alleges and proves that there was a constitutional violation under color of law and: 1) The state did not have a remedy; or 2) The state had a remedy but it was deemed inadequate; or 3) The state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or misapplied its remedy." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). "If satisfactory state procedures are

---

[3] Michigan's Due Process Clause is analyzed concurrently with the federal Due Process Clause. *Saxon v. Dept. of Social Servs.*, 479 N.W.2d 361, 366 (Mich. Ct. App. 1991). *See also English v. Blue Cross Blue Shield of Mich.*, 688 N.W.2d 523, 530-34 (Mich. Ct. App. 2004).

provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004).

"Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Daily Servs.*, 756 F.3d at 904. However, "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Accordingly, "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional of substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. "[W]here a State must act quickly, or where it would be impracticable to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 578 (6th Cir. 2021) (quoting *Gilbert v. Homar*, 520 U.S. 924, 930 (1997)).

As the State Court has already determined, Plaintiffs were afforded all process and protections due under state law.  (**Id.** at 6) Defendants not only followed the

procedures as outlined in the Inland Lake Level Act but went beyond them. Plaintiffs received actual notice. (**Id.** at 6-7) A public hearing was held, at which property owners were given an opportunity to discuss their properties and the assessment, and to object to the rolls. (**Id.**) Plaintiffs were then able to appeal the assessments to the state circuit court. (**Ex. A**; **Ex. B**) There has been no violation of Plaintiffs' procedural due process rights in the manner the hearing was noticed or conducted. (**Id.** at 7)[4]

Furthermore, there is no law, state or federal, that requires "a rigid dollar-for-dollar balance between the amount of the special assessment and the amount of the benefit" to satisfy due process. *See Dixon*, 395 N.W.2d at 216-17; *Kadzban*, 502

---

[4] Plaintiffs' entire argument is built upon a statement by the Michigan Supreme Court in *Dixon Road Group v. City of Novi*, 395 N.W.2d 211 (Mich. 1986): "While we certainly do not believe that we should require a rigid dollar-for-dollar balance between the amount of the special assessment and the amount of the benefit, a failure by this Court to require a reasonable relationship between the two would be akin to the taking of property without due process of law." *Id.* at 216-17.

This is clearly a substantive, not procedural, due process argument – an arbitrary and/or capricious deprivation of property. Plaintiffs have not asserted a substantive due process claim, but if they had, it would also be precluded for the reasons argued above. The State Court has already determined the assessment was not disproportionate to the benefit received. It would also fail as a matter of law. Courts may only interfere in local regulatory decisions where they have "no foundation in reason and [are] a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety, or the public welfare." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008). The decision may not be set aside if there is "some factual basis" for it. *Peason v. City of Grand Blanc*, 961 F.2d 1211, 1222 (6th Cir. 1992). There is simply nothing pled rising to the level of a substantive due process violation.

N.W.2d at 302-03.   Nor is there any requirement that Defendants undertake expensive and time-consuming expert reviews of each individual property beyond the analyses they have already done.   What is required is that there be substantial and reasonable proportionality between the amount assessed and the value which accrues to the land as the result of the improvements, *see id.,* and that the property owner be provided with notice and an opportunity to be heard before the assessment is levied.   *Daily Servs.*, 756 F.3d at 904; *In re Chappel Dam*, 762 N.W.2d at 197-98. Plaintiffs have received all of this.   They have no valid due process claim.

## RELIEF REQUESTED

WHEREFORE, for all these reasons, Defendant GLADWIN COUNTY BOARD OF COMMISSIONERS respectfully requests this Honorable Court enter an Order dismissing Plaintiffs' Complaint against it with prejudice.

Respectfully Submitted,

***Cummings, McClorey, Davis & Acho, PLC***

By:   /s/ TIMOTHY S. FERRAND
TIMOTHY S. FERRAND (P39583)
Attorney for Gladwin County Board of
Commissioners
19176 Hall Road, Suite 205
Clinton Township, MI 48038
Dated: July 9, 2024            (586) 228-5600

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  none.

***Cummings, McClorey, Davis & Acho, PLC***

By:   <u>/s/ Timothy S. Ferrand   </u>