# **<u>Exhibit C</u>**

01278652-1

Case 1:24-cv-11473-MFL-PTM ECF No. 9-4, PageID.171 Filed 07/09/24 Page 2 of 8

Scott v. City of Detroit, Not Reported in Fed. Supp. (2021)
2021 WL 323756

2021 WL 323756
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan, Southern Division.

Kristal SCOTT, Plaintiff,
v.
CITY OF DETROIT, et al., Defendants.

Case No. 20-11572
|
Signed 02/01/2021

**Attorneys and Law Firms**

Andrew John Laurila, Rasor Law Firm, Royal Oak, MI, for Plaintiff.

Letitia C. Jones, Detroit City Law Department, Detroit, MI, for Defendants.

**OPINION & ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Dkts. 5, 14)**

MARK A. GOLDSMITH, United States District Judge

**\*1** This matter is before the Court on Defendants City of Detroit, Police Chief James Craig, and Mayor Michael Duggan's motions to dismiss (Dkts. 5, 14). Both motions have been fully briefed. Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). As explained fully below, the Court grants Defendants' motions on res judicata grounds.

**I. BACKGROUND**

Plaintiff Kristal Scott initially brought this action against the City of Detroit (the "City"), alleging employment discrimination on the basis of her disability. Compl. (Dkt. 1). In lieu of filing an answer to the complaint, the City filed a motion to dismiss. 1st Mot. (Dkt. 5). Scott subsequently filed an amended complaint, which added an equal protection claim against new parties Police Chief James Craig and Mayor Michael Duggan in their individual capacities. Am. Compl. (Dkt. 6). In response to the amended complaint, Defendants filed a second motion to dismiss. 2d Mot. (Dkt. 14).

Scott alleges that she was employed as a police officer by the Detroit Police Department ("DPD") beginning in 2004. Am. Compl. ¶ 13. In 2013, she sustained an injury that affected her ability to run and walk, resulting in her assignment to a restricted-duty position at the gun desk. Id. ¶¶ 14-15. In approximately 2014, during the course of the City's bankruptcy proceedings, the City and Duggan allegedly sought to reduce the City's budget by cutting costs within various departments, including the DPD. Id. ¶¶ 20-21. In furtherance of this effort, Craig allegedly implemented a policy mandating that the DPD forcibly retire officers permanently assigned to restricted-duty positions and hire as many full-duty officers as possible. Id. ¶¶ 22-26. This policy was allegedly motivated by Craig's desire to replace officers in restricted-duty positions with civilians, who are less expensive to employ. Id. ¶ 31. Consequently, Scott alleges that the City Board of Trustees approved the DPD's application to place her on duty disability retirement, effective September 7, 2017. Id. ¶ 18. Scott appealed this decision, which was affirmed on May 1, 2018. Id. ¶ 19.

In Count I of the amended complaint, Scott advances against the City claims of disability discrimination and failure to accommodate under the Rehabilitation Act, 29 U.S.C. § 794, et seq. Count II alleges that by implementing discriminatory policies that led to Scott's forced retirement, Craig and Duggan violated the Equal Protection Clause of the Fourteenth Amendment, contending that she was treated adversely as compared to similarly situated employees without disabilities. Am. Compl. ¶¶ 20-26, 75-76, 78, 79.

This is not Scott's first lawsuit regarding her forced retirement. On May 31, 2018, Scott filed suit in Wayne County Circuit Court, alleging that the City violated Michigan's Persons With Disabilities Civil Rights Act ("PWDCRA") by forcing her to retire and by failing to provide a reasonable accommodation for her disability. State-Court Compl., Ex. D to 2d Mot., ¶¶ 32-35, 57-58 (Dkt. 14-5). On February 11, 2019, the state court issued an order granting the City's motion for summary disposition, which resolved all pending claims and closed the case. 2/11/19 Order, Ex. A to 2d Mot. (Dkt. 14-2). That court subsequently denied Scott's motion for reconsideration. 3/26/19 Order, Ex. B to 2d Mot. (Dkt. 14-3). In an opinion issued on May 14, 2020, the Michigan Court of Appeals affirmed the circuit court's order dismissing the action. Scott v. City of Detroit, No. 348516, 2020 WL 2505385 (Mich. Ct. App. May 14,

Case 1:24-cv-11473-MFL-PTM ECF No. 9-4, PageID.172 Filed 07/09/24 Page 3 of 8

Scott v. City of Detroit, Not Reported in Fed. Supp. (2021)
2021 WL 323756

2020).[1]

**\*2** Defendants now seek dismissal of the present action, arguing that the doctrine of res judicata precludes Scott from pursuing claims arising from the same transaction that also gave rise to the state-court litigation. 2d Mot. at 2.[2]

## II. STANDARD OF REVIEW

While motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) typically test whether a complaint alleges sufficient facts to state a plausible claim for relief, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), a complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy," 5B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 1357 (3d ed. 1998). For this to occur, "the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion." Id. The preclusive effect of res judicata is one such affirmative defense that is frequently considered on a motion to dismiss under Rule 12(b)(6). See Solis v. Global Acceptance Credit Co., L.P., 601 F. App'x 767, 771 (11th Cir. 2015) ("Although res judicata is not a defense under Rule 12(b)(6), and generally should be raised as an affirmative defense under Rule 8(c), ... it may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint."). In evaluating a res judicata defense presented by way of a Rule 12(b)(6) motion, a court may take judicial notice of its own records and the records of other courts. Id.

## III. DISCUSSION

Res judicata is a legal doctrine intended to promote judicial efficiency and comity between state and federal courts by precluding the re-litigation of claims. Smith v. Ameritech, 130 F. Supp. 2d 876, 880 (E.D. Mich. 2000). In determining whether a state-court judgment has a preclusive effect on a subsequent federal action, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts "to give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Young v. Twp. of Green Oak, 471 F.3d 674, 680 (6th Cir. 2006) (internal quotation marks and citation omitted).

Michigan employs a broad view of res judicata, and courts hold that the doctrine bars a successive action if " '(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.' " Id. (quoting Adair v. Michigan, 680 N.W.2d 386, 396 (Mich. 2004)). The burden of proving the applicability of res judicata is on the party asserting it. Abbott v. Michigan, 474 F.3d 324, 331 (6th Cir. 2007) (citing Baraga Cty. v. State Tax Comm'n, 645 N.W.2d 13, 16 (Mich. 2002)).

Defendants argue that res judicata bars the present action, as the prior state-court litigation was decided on the merits in favor of the City and involved a claim arising from Scott's forced retirement, the same transaction at issue here. 2d Mot. at 4-6. Scott, by contrast, maintains that res judicata does not apply because the present claims do not involve the same facts and evidence relevant to the PWDCRA claim advanced in state court. Resp. to 2d Mot. at 6, 15-17 (Dkt. 15). Additionally, Scott contends that res judicata does not apply to the equal protection claim because Craig and Duggan are not in privity with the City. Id. at 16-17. The Court evaluates in turn the application of res judicata to the Rehabilitation Act claims and to the equal protection claim.

### A. Rehabilitation Act Claims

**\*3** With respect to Scott's Rehabilitation Act claims asserted against the City, there is no dispute that Defendants have established the first two elements of res judicata. First, the Rehabilitation Act claims involve the same parties that were involved in the state-court action—namely, Scott and the City. Second, the state-court action was decided on the merits, as the state trial court granted the City's motion for summary disposition and closed the case, and thereafter denied Scott's motion for reconsideration. See 2/11/19 Order; 3/26/19 Order. The Michigan Court of Appeals affirmed this judgment on the merits. Scott, 2020 WL 2505385, at \*6.

The parties' disagreement centers on the last res judicata element—whether the matter in the present action was, or could have been, resolved in the state-court action. Defendants maintain that this element is satisfied because the present suit arises from the same transaction as the state-court action—Scott's forced retirement. 2d Mot. at 6-7. Scott maintains that this element is not satisfied

Case 1:24-cv-11473-MFL-PTM ECF No. 9-4, PageID.173 Filed 07/09/24 Page 4 of 8

**Scott v. City of Detroit, Not Reported in Fed. Supp. (2021)**
2021 WL 323756

because the Rehabilitation Act claims at issue here do not involve the same facts and evidence relevant to the previously litigated PWDCRA claim. Resp. to 2d Mot. at 6. Defendants have the better part of the argument.

Under Michigan law, "[r]es judicata bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." Buck v. Thomas M. Cooley Law Sch., 597 F.3d 812, 817 (6th Cir. 2010) (internal quotation marks and citation omitted). This "transactional test" provides that "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give[s] rise to the assertion of relief." Adair, 680 N.W.2d at 397 (internal quotation marks omitted). That is, a claim arises from the same transaction "regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff ... and regardless of the variations in the evidence needed to support the theories or rights." Id. at 398 (internal quotation marks omitted). Courts thus employ a pragmatic approach by "considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit...." Id. (internal quotation marks omitted) (emphasis and alteration in original).

The Sixth Circuit's decision in Buck v. Thomas M. Cooley Law School is illustrative. There, the plaintiff initially brought suit in state court against her law school, alleging, among other things, a failure to accommodate her learning disability in violation of the PWDCRA. 597 F.3d at 814. The case was ultimately dismissed with prejudice after the Michigan Court of Appeals remanded with instructions to grant the law school summary disposition on all claims. Id. at 816. The plaintiff subsequently filed a federal action against the law school, alleging violations of the Americans with Disabilities Act and the PWDCRA based on the same set of facts. Id. The Sixth Circuit affirmed the district court's dismissal of the action, finding that the allegations giving rise to the federal action were "part of the same transaction—alleged misconduct and discriminatory animus by defendant towards [the plaintiff] as a law student—as the allegations giving rise to her first lawsuit." Id. at 817. Although the federal action involved additional facts that had not occurred at the time that the plaintiff had filed her state-court complaint, the Sixth Circuit noted that she had a duty to supplement her state-court complaint with allegations that developed during the pendency of that action. Id.

*4 Similarly, the allegations giving rise to Scott's Rehabilitation Act claims are part of the same transaction that gave rise to the state-court action. Specifically, the Rehabilitation Act claims and the claims asserted in the state-court action pertain to Scott's forced retirement in 2017 from her restricted-duty position, and her replacement with an allegedly less qualified civilian employee. Am. Compl. ¶¶ 14-15, 18, 33-34; State-Court Compl. ¶¶ 19-20, 32-37. In both actions, Scott alleges that the City discriminated against her based on her disability and denied her a reasonable accommodation. Am. Compl. ¶¶ 57-61; State-Court Compl. ¶¶ 29, 56-59. In fact, many of the factual allegations raised with respect to the Rehabilitation Act claims are identical to those pleaded in the state-court action. Compare Am. Compl. ¶ 15 with State-Court Compl. ¶ 35. Because the Rehabilitation Act claims arise from the same set of operative facts as the state-court litigation, Scott could have—and should have—advanced them in the state-law action.[3]

Scott contends that res judicata is inapplicable because the Rehabilitation Act claims do not involve the same facts and evidence relevant to the PWDCRA claim, arguing that there are differing legal standards governing disability discrimination claims under the two statutes. Resp. to 2d Mot. at 7-14. This argument is unavailing. Michigan recognizes two alternate approaches to determining whether the final element of res judicata is met: the "transactional test" discussed above and the "same evidence test" referenced by Scott, which asks whether the same evidence or set of facts are essential for the claims asserted in the two actions. SHR Ltd. P'Ship v. SWEPI, LP, 173 F. App'x 433, 434 (6th Cir. 2006); Adair, 680 N.W.2d at 397-398. Satisfying either test is sufficient to establish the final element of res judicata. See Adair, 680 N.W.2d at 398. (holding that res judicata applied where the transactional test was met and noting that the court did not need to consider the plaintiffs' arguments relative to the same evidence test). Because the Court has determined that Defendants have satisfied the same transaction test, whether the same evidence test is met is irrelevant.

Having established all necessary elements, Defendants have shown that res judicata bars Scott's Rehabilitation Act claims.

### B. Equal Protection Claim

Next, the Court turns to Scott's equal protection claim asserted against Craig and Duggan in their individual capacities. As determined above, there is no dispute that the state-court action was decided on the merits. However, the parties disagree as to the final two factors:

Case 1:24-cv-11473-MFL-PTM ECF No. 9-4, PageID.174 Filed 07/09/24 Page 5 of 8

Scott v. City of Detroit, Not Reported in Fed. Supp. (2021)
2021 WL 323756

(i) whether Craig and Duggan are in privity with the City and (ii) whether the equal protection claim could have been resolved in the state-court action.

**1. Privity**

For res judicata to apply, Michigan law does not require that the parties in both actions be absolutely identical. Rather, "[t]he parties to the second action need be only substantially identical to the parties in the first action, in that the rule applies to both parties and their privies." Peterson Novelties, Inc. v. City of Berkley, 672 N.W.2d 351, 359 (Mich. Ct. App. 2003). Under Michigan law, "a privy includes a person so identified in interest with another that he represents the same legal right, such as a principal to an agent, a master to a servant, or an indemnitor to an indemnitee." Id. Privity does not require a perfect identity of interests—it is sufficient if there exists "[1] a substantial identity of interests and [2] a working functional relationship in which [3] the interests of the nonparty are presented and protected by the party in the litigation." Bates v. Twp. of Van Buren, 459 F.3d 731, 734 (6th Cir. 2006) (internal quotation marks omitted).

**\*5** In the context of public employment, while it is well established that "[a] government official sued in his or her official capacity is considered to be in privity with the government," Pittman v. Mich. Corr. Org., 123 F. App'x 637, 640 (6th Cir. 1998) (internal quotation marks omitted), the parties dispute whether a government official sued in his individual capacity is in privity with his governmental employer.[4] The Sixth Circuit has resolved this question in the affirmative, holding that privity is established under the three-part test "when the previous governmental-unit Defendant ... and the present-case [individually named defendants] have an employer-employee relationship, regardless of whether the claims in the first suit were brought against the Defendants in the same capacity as the claims in the second." McCoy v. Michigan, 369 F. App'x 646, 650 (6th Cir. 2010).[5] In McCoy, the plaintiff filed an employment discrimination suit in state court against the Michigan Department of Corrections ("MDOC"), based on his discharge and later reinstatement in 1997. Id. at 648. The plaintiff subsequently brought a federal action against the State of Michigan, MDOC, and several MDOC officials in both their individual and official capacities, alleging employment discrimination stemming from his termination in 2004. Id. Emphasizing that res judicata was being asserted defensively, the Sixth Circuit found that privity existed between MDOC and the individual defendants sued in their personal capacities, but ultimately determined that res judicata did not apply because the two claims did not arise from the same transaction. Id. at 650-651.[6]

Courts within this district have adhered to McCoy in concluding that government officials are in privity with their governmental employer, even when sued in their individual capacities. See, e.g., Hemelberg v. City of Fraser, No. 18-CV-12196, 2019 WL 247228, at \*4-5 (E.D. Mich. Jan. 17, 2019) (finding that city council members and a city manager sued under § 1983 in their individual capacities for allegedly retaliating against the plaintiff by removing him from office were in privity with the city, which had been sued in a prior state-court action regarding the plaintiff's removal from office); Berkshire v. Klimowicz, No. 13–11599, 2014 WL 1032048, at \*7 (E.D. Mich. Mar. 17, 2014) (finding that MDOC employees sued in their individual capacities under § 1983 for alleged due process and Eighth Amendment violations were in privity with MDOC, a party to a state-court administrative appeal of a misconduct hearing involving the same issues); O'Leary v. Charter Twp. of Flint, No. 09–13075, 2010 WL 2870400, at \*8 (E.D. Mich. July 21, 2010) (finding that a Flint Township department head sued in her individual capacity under 42 U.S.C. §§ 1981 and 1983 for alleged discrimination and retaliation was in privity with Flint Township, a party to a discrimination suit in state court on the same theory). Michigan courts have likewise held that privity exists between a government official and his governmental employer. See Motuelle, 2004 WL 1254304, at \*4 n.3 (holding that government employees were in privity with their employer with respect to claims arising from the employees' conduct in performance of their duties); Peterson, 672 N.W.2d at 359 n.10 (holding that a detective employed by the City of Berkley was in privity as an agent of the City).

**\*6** Here, Craig, as the City of Detroit's Chief of Police, is employed by and, therefore, is in privity with the City. See Am. Compl. ¶ 4 (alleging that Craig "is Defendant City of Detroit's Chief of Police, was acting under the color of state law and in the course and scope of his employment with Detroit...."). Likewise, Duggan, as the City of Detroit's Mayor, is employed by the City and is also in privity with the City. See id. ¶ 5 (alleging that Duggan "is Defendant City of Detroit's Mayor, was acting under the color of state law and in the course and scope of his employment with Detroit...."). Under McCoy, Craig and Duggan are entitled to invoke the doctrine of res judicata to preclude the re-litigation of claims that were, or could have been, raised against the City in the state-court action.

Case 1:24-cv-11473-MFL-PTM   ECF No. 9-4, PageID.175   Filed 07/09/24   Page 6 of 8

**Scott v. City of Detroit, Not Reported in Fed. Supp. (2021)**
2021 WL 323756

This conclusion is further bolstered by the fact that the present claim against Craig and Duggan involves substantially the same legal interests and concerns represented by the City in the state-court action. Specifically, Scott's state-court PWDCRA claim was premised on the City's implementation of allegedly discriminatory policies that resulted in Scott's forced retirement based on her disability. State-Court Compl. ¶¶ 32-34, 57-64. Scott's allegations underlying her equal protection claim against Craig and Duggan are virtually indistinguishable. Scott alleges that Craig and Duggan, in an effort to cut the DPD's budget, were responsible for implementing discriminatory policies that resulted in the forcible retirement of officers, including Scott, on the basis of disability. Am. Compl. ¶¶ 20-26, 75-76, 78. These allegations are predicated solely upon the roles Craig and Duggan played as representatives of and policymakers for the City, and there are no allegations that Craig or Duggan directly participated in the alleged deprivation of Scott's constitutional rights.

Given this complete factual overlap, an equal protection claim asserted against the City would turn on the same evidence and issues as the equal protection claim brought against Craig and Duggan. The evidence supporting the City's liability is, therefore, coextensive with the evidence of Craig's and Duggan's liability, because they are alleged to have been the policymakers driving the City's alleged violation of Scott's rights. Stated differently, the City, Craig, and Duggan effectively represent the same legal interest, given that the City's alleged wrongdoing and Craig's and Duggan's alleged wrongdoing are one and the same. See Fleming v. City of Detroit, No. 04-74081, 2006 WL 2559862, at *7 (E.D. Mich. Sept. 1, 2006) (holding that privity existed between the police chief and the City of Detroit where the claims against the police chief were predicated on his role as a policymaker and involved no allegations of personal involvement). Privity exists under these circumstances, as Craig's and Duggan's legal interests are substantially identical to the City's and were presented and protected by the City in the state-court litigation.

Scott urges the Court to follow the reasoning of Gentry v. Wayne County, No. 10-cv-11714, 2013 WL 12180801 (E.D. Mich. July 2, 2013), in which a government official was found not to be in privity with his governmental employer. See Resp. to 2d Mot. at 18-20. In Gentry, a Wayne County deputy was initially sued in state court on various tort claims, based on his alleged shooting of the plaintiff—claims that were ultimately dismissed on a defense of governmental immunity. 2013 WL 12180801, at *3-4. The plaintiff later brought a Monell claim in federal court against Wayne County and several of its employees, alleging a failure to supervise and adoption of unconstitutional policies or customs. Id. at *4. The court determined that res judicata did not preclude the Monell claim because the deputy was not in privity with the Wayne County defendants. Id. at *7. The court reasoned that the deputy prevailed in the state-court action on a personal defense inapplicable in the federal action, and that he had no need to "present and protect" the Wayne County defendants' interests by litigating the question of whether they independently condoned, ratified, or encouraged the deputy's actions during the shooting. Id. at *7-8.

**\*7** The present case is distinguishable from Gentry, as the issues litigated before the state court are relevant to the equal protection claim asserted against Craig and Duggan. The state court determined that Scott did not meet the statutory definition of a "disability" under the PWDCRA because she was unable to establish that her disability was unrelated to her ability to perform the duties of a police officer. Scott, 2020 WL 2505385, at *6. The finding that Scott was unable to perform the essential functions of a police officer is relevant to the equal protection claims against Craig and Duggan, as this would qualify as a legitimate government interest rationally related to her forced retirement. See S.S. v. E. Ky. Univ., 532 F.3d 445, 457 (6th Cir. 2008) (classifications based on disability violate the Equal Protection Clause if they lack a rational relationship to a legitimate governmental purpose); see also Smith v. Defendant A, No. 08 Civ., 2009 WL 1514590, at *5-6 (S.D.N.Y. May 29, 2009) (holding that a plaintiff's termination from his prison job because of his medical condition did not violate equal protection because "a rational relationship exist[ed] between his inability to perform his job and the termination of his job"). Thus, the state court's reasoning underlying its dismissal of the prior action was broad enough to apply to the equal protection claim brought against Craig and Duggan.

Moreover, Gentry's reasoning, while consistent with other circuits that have held that government employees sued in their individual capacities are not in privity with their governmental employer, does not acknowledge the Sixth Circuit's departure from those cases in McCoy. Although Gentry briefly touched on McCoy in denying a motion for reconsideration, that opinion did not discuss McCoy's holding relative to privity between government employees and their governmental employer. Gentry v. Wayne County, No. 10-cv-11714, 2014 WL 12656726, at *3-4 (E.D. Mich. March 31, 2014). Rather, it took issue with McCoy's statement that privity is not required when res judicata is asserted defensively, noting that, as an unpublished opinion itself premised on an unpublished state-court decision, McCoy is not binding authority. Id.

Case 1:24-cv-11473-MFL-PTM ECF No. 9-4, PageID.176 Filed 07/09/24 Page 7 of 8

Scott v. City of Detroit, Not Reported in Fed. Supp. (2021)
2021 WL 323756

Because Gentry does not discuss or even acknowledge McCoy's holding regarding the existence of privity between a governmental employee sued in his individual capacity and a governmental employer, the Court chooses not to follow it.

Finally, Scott contends that Mitchell v. Chapman, 343 F.3d 811 (6th Cir. 2003), compels a finding that privity does not exist. Resp. to 2d Mot. at 18. Not so. In Mitchell, the Sixth Circuit held that res judicata did not apply where a plaintiff brought a federal action against a governmental agency and its employees in their official capacities and later brought a federal suit asserting the same claims against agency employees in their individual capacities. 343 F.3d at 823. The Sixth Circuit rejected the argument that the agency employees were in privity with the agency, reasoning that "[t]he rule of differing capacities generally operates to allow a subsequent individual capacity suit against a governmental official even where a prior suit alleged an official capacity claim against the same official." Id. However, Mitchell applied principles of federal claim preclusion to exclusively federal claims, whereas the present case is governed by Michigan's res judicata jurisprudence. See Larry v. Powerski, 148 F. Supp. 3d 584, 595 (E.D. Mich. 2015) (holding that Mitchell does not govern the privity analysis in the context of determining the preclusive effect of a prior state-court judgment). Mitchell is not controlling in the present action.

Ultimately, the Sixth Circuit has stated that plaintiffs should not be permitted to continue "repetitive litigation simply by finding some municipal official that has not yet been sued, and trying to blame what he claims was systemic group mistreatment of him on that one person individually." Dubuc v. Green Oak Twp., 312 F.3d 736, 751 (6th Cir. 2002) (applying res judicata to bar claims asserted against government employees sued in their individual capacities, even though they were not parties to earlier suit against government and other employees); Pittman v. Mich. Corr. Org., 123 F. App'x 637, 641 (6th Cir. 2005) (same). That is precisely what Scott attempts to do in the present action. Consequently, Craig and Duggan are in privity with the City for purposes of the res judicata analysis.

### 2. Same Transaction

**\*8** As indicated above, res judicata serves to bar "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." Buck, 597 F.3d at 817 (internal quotation marks omitted). Here, the allegations giving rise to the equal protection claim are part of the same transaction that gave rise to the state-court action. The equal protection claim stems from Scott's allegations that Craig and Duggan's discriminatory policies of forcibly retiring officers on the basis of disability resulted in Scott's own forced retirement in 2017. Am. Compl. ¶¶ 20-26, 75-76, 78. As discussed above, the state-court action likewise arises from Scott's forced retirement in 2017. State-Court Compl. ¶¶ 19-20, 32-37. Because the two cases arise from the same set of operative facts, Scott could have advanced the equal protection claim in the state-court action.

Because Defendants have established each of the res judicata elements with respect to the equal protection claim, that claim must be dismissed.

### IV. CONCLUSION

For the reasons discussed above, the Court grants Defendants' motions to dismiss (Dkts. 5, 14).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 323756

### Footnotes

1     It is unclear whether the DPD was also a party to the state-court action. Although the state-court complaint does not identify the DPD as a party, the circuit court order and the court of appeals opinion identify the DPD as a named defendant in the case captions.

2     Defendants alternately argue that the present action is barred under the doctrine of collateral estoppel. 2d Mot. at 9-14.

**Scott v. City of Detroit, Not Reported in Fed. Supp. (2021)**
2021 WL 323756

However, because the Court finds that the action is barred under res judicata, it need not address the collateral estoppel issue.

3   Apart from the preclusive effect of res judicata, the Michigan Court Rules compel parties to join "every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action...." Mich. Ct. R. 2.203(A). Failure to join a compulsory claim will result in that claim being barred, Lichon v. Morse, 933 N.W.2d 506, 518 (Mich. Ct. App. 2019), and constitutes a ground for dismissal under Michigan Court Rule 2.116(C)(6), Meadowbrook, Inc. v. Miller, No. 247552, 2004 WL 2192616, at *2 (Mich. Ct. App. Sept. 30, 2004).

4   Scott contends that Defendants waived their argument in this regard, as they failed to cite legal authority in support of their position in their opening brief. Resp. to 2d Mot at 17. Scott is correct that arguments made for the first time in a reply brief are typically deemed waived. See Sanborn v. Parker, 629 F.3d 554, 579 (6th Cir. 2010). But Defendants argued in their opening brief that government officials sued in their individual capacities are in privity with the government. 2d Mot. at 8. Although the argument was further developed in the reply, Reply to 2d Mot. at 7-8 (Dkt. 18), it can hardly be characterized as a new argument that should be deemed waived.

5   Although other circuits have concluded otherwise, see, e.g., Harmon v. Dallas Cty., Tex., 927 F.3d 884, 891 (5th Cir. 2019); Conner v. Reinhard, 847 F.2d 384, 395 (7th Cir. 1988), this Court follows the Sixth Circuit's precedent in McCoy.

6   The Sixth Circuit further reasoned that even if privity did not exist between the defendants and MDOC, this fact would not defeat application of res judicata, as the Michigan Court of Appeals has determined that privity is not required when res judicata is raised defensively. See id. at 650 (citing Motuelle v. Ruffini, No. 244557, 2004 WL 1254304, at *4 n.3 (Mich. Ct. App. June 8, 2004)). Because res judicata is being asserted defensively in the present action, a showing of privity is arguably not required.