# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

HERON COVE ASSOCIATION, et al.

      Plaintiffs,                    Case No.: 1:24-cv-11473-TLL-PTM

v                                 HON. THOMAS L. LUDINGTON

GLADWIN COUNTY BOARD OF      Magistrate Judge Patricia T. Morris
COMMISSIONERS, et al.,

      Defendants.

| | |
|---|---|
| Michael D. Homier (P60318) | Timothy S. Ferrand (P39583) |
| Laura J. Genovich (P72278) | Cummings, McClorey, Davis & |
| Keith T. Brown (P84193) | Acho, P.L.C. |
| Foster, Swift, Collins & Smith, PC | *Attorney for Gladwin County Board* |
| *Attorney for Plaintiffs* | *of Commissioners* |
| 1700 E. Beltline Ave., NE, Ste. 200 | 19176 Hall Road, Suite 205 |
| Grand Rapids, MI 49525 | Clinton Township, MI 48038 |
| (616) 726-2200 | (586) 228-5600 |
| mhomier@fosterswift.com | tferrand@cmda-law.com |
| lgenovich@fosterswift.com | tlange@cmda-law.com |
| kbrown@fosterswift.com | |
| | Joseph W. Colaianne (P47404) |
| | Zachary C. Larsen (P72189) |
| | Bethany G. Stawasz (P75578) |
| | Clark Hill PLC |
| | *Attorney for Four Lakes Task Force* |
| | 215 S. Washington Square, Suite 200 |
| | Lansing, MI 48933 |
| | (517) 318-3100 |
| | jcolaianne@clarkhill.com |
| | zlarsen@clarkhill.com |
| | bstawasz@clarkhill.com |

/

# DEFENDANT FOUR LAKES TASK FORCE'S MOTION TO DISMISS
# PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

Defendant Four Lakes Task Force ("FLTF"), through its counsel, Clark Hill PLC, and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), moves the Court for entry of an order dismissing Plaintiffs' First Amended Complaint (ECF No. 1-2, PgID.25 *et seq.*) with prejudice. In support of its motion, FLTF relies on the facts and law set forth in the accompanying brief.

In accordance with Local Rule 7.1(a), counsel for FLTF conferred with Plaintiffs' counsel on July 5, 2024, to explain and request concurrence in the relief sought by this Motion.  Concurrence was not obtained.

Respectfully submitted,

CLARK HILL PLC

*/s/ Joseph W. Colaianne*
Joseph W. Colaianne (P47404)
Zachary C. Larsen (P72189)
Bethany G. Stawasz (P75578)
215 South Washington Square, Ste. 200
Lansing, MI 48933
517-318-3100
jcolaianne@clarkhill.com
zlarsen@clarkhill.com
bstawasz@clarkhill.com
*Attorneys for Defendant*
*Four Lakes Task Force*

Dated: July 9, 2024

2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

HERON COVE ASSOCIATION, et al.

     Plaintiffs,                  Case No.: 1:24-cv-11473-TLL-PTM

v                                HON. THOMAS L. LUDINGTON

GLADWIN COUNTY BOARD OF      Magistrate Judge Patricia T. Morris
COMMISSIONERS, et al.,

     Defendants.

| | |
|---|---|
| MICHAEL D. HOMIER (P60318) | TIMOTHY S. FERRAND (P39583) |
| LAURA J. GENOVICH (P72278) | Cummings, McClorey, Davis & |
| KEITH T. BROWN (84193) | Acho, P.L.C. |
| Foster, Swift, Collins & Smith, PC | *Attorney for Gladwin County Board* |
| *Attorney for Plaintiffs* | *of Commissioners* |
| 1700 E. Beltline Ave., NE, Ste. 200 | 19176 Hall Road, Suite 205 |
| Grand Rapids, MI 49525 | Clinton Township, MI 48038 |
| (616) 726-2200 | (586) 228-5600 |
| mhomier@fosterswift.com | tferrand@cmda-law.com |
| lgenovich@fosterswift.com | tlange@cmda-law.com |
| kbrown@fosterswift.com | |
| | JOSEPH W. COLAIANNE (P47404) |
| | ZACHARY C. LARSEN (P72189) |
| | BETHANY G. STAWASZ (P75578) |
| | Clark Hill PLC |
| | *Attorney for Four Lakes Task Force* |
| | 215 S. Washington Square, Suite 200 |
| | Lansing, MI 48933 |
| | (517) 318-3100 |
| | jcolaianne@clarkhill.com |
| | zlarsen@clarkhill.com |
| | bstawasz@clarkhill.com |

/

## BRIEF IN SUPPORT OF DEFENDANT FOUR LAKES TASK FORCE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

# TABLE OF CONTENTS

Page

Table of Contents .................................................................................. ii

Index of Authorities ............................................................................. iv

Issues Presented ................................................................................... vii

Controlling Authority ........................................................................... viii

Introduction ..........................................................................................1

Statement of Relevant Background Facts ...............................................3

Argument..............................................................................................14

I.      The Court lacks subject matter jurisdiction, and the Complaint therefore
        must be dismissed pursuant to Rule 12(b)(1). ...............................14

        A.      The Complaint is barred by Collateral Estoppel and Res Judicata.....14

                i.      *Applicable Legal Standard* .....................................*14*

                ii.     *Plaintiffs are collaterally estopped from relitigating
                        disproportionality and procedural due process.* .....................*16*

                iii.    *Res Judicata bars Plaintiffs' Complaint.*................................*18*

        B.      Five Plaintiffs lack standing, and their Complaint therefore is not
                justiciable.............................................................................19

                i.      *Applicable Legal Standard* .....................................*19*

                ii.     *Plaintiffs With No Affected Property Interest Lack Standing*...*20*

II.     Plaintiffs' Complaint fails to state a claim and therefore must be
        dismissed pursuant to Rule 12(b)(6)..............................................20

        A.      Applicable Legal Standard................................................20

        B.      Counts I and II for Inverse Condemnation Fail to State a Claim........21

                i.      *Overview of Applicable Substantive Law* ................................*21*

                ii.     *Plaintiffs Do Not allege the Elements of Inverse Condemnation*
                        ..................................................................................*22*

C.      Counts III and IV for Violation of Procedural Due Process Fail to State a Claim ..............................................................................25

        i.      Overview of Applicable Substantive Law .................................25

        ii.     Plaintiffs Do Not Allege a Violation of Procedural Due Process. ......................................................................................25

D.      Plaintiffs Fail to State any Claim Against FLTF ...............................26

Conclusion ...............................................................................................................28

Certificate of Service ..............................................................................................29

# INDEX OF AUTHORITIES

<u>Page</u>

**Cases**

*ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*,
  333 Fed. App'x 994 (6th Cir. 2009) ....................................................................15

*Adair v. State*,
  680 N.W.2d 386 (Mich. 2004) ................................................................... 16, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................20

*Chandler v. Vill. of Chagrin Falls*,
  296 Fed. App'x 463(6th Cir. 2008)...................................................................25

*Commonwealth Edison Co. v. United States*,
  271 F.3d 1327 (Fed. Cir. 2001) ..........................................................................24

*Dixon Rd. Grp. v. City of Novi*,
  395 N.W.2d 211 (Mich. 1986) ............................................................... 12, 23, 24

*Dubuc v. Green Oak Twp.*,
  312 F.3d 736 (6th Cir. 2002) ..............................................................................18

*Forest City Res. Mgt., Inc. v. Beasley*,
  71 F.Supp.3d 715 (E.D. Mich. 2014) .................................................................19

*Gaut v. City of Southfield*,
  192 N.W.2d 123 (Mich. App. 1971) ...................................................................24

*In re Chappel Dam*,
  762 N.W.2d 192 (Mich. App. 2009) ....................................................... 12, 25, 26

*In re Graves*,
  282 Fed. App'x 432 (6th Cir. 2008)...................................................................14

*In re Van Ettan Lake*,
　　386 N.W.2d 572 (Mich. App. 1986) ....................................................4

*Lathfield Inv., LLC v. City of Lathrup Vill.*,
　　Case No. 21-10193, unpub'd (E.D. Mich., Nov. 9, 2023) WL 7418216............22

*Mays v. Snyder*,
　　954 N.W.2d 139 (Mich. 2020) ................................................. 21, 27

*Mecosta County Med. Ctr. v. Met. Group Prop. & Cas. Ins. Co.*,
　　983 N.W.2d 401 (Mich. 2022) ...................................................18

*Midkiff v. Adams County Regional Water Dist.*,
　　409 F.3d 75 (6th Cir. 2005)...................................................25

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
　　895 F.2d 266 (6th Cir. 1990)..................................................15

*Monat v. State Farm Ins. Co.*,
　　677 N.W.2d 843 (Mich. 2004) .................................................15

*Polk Cnty. v. Dodson*,
　　454 U.S. 312 (1991) .........................................................27

*Rush v. Fed. Home Loan Mortg. Corp.*,
　　Case No. 13–11302, unpub'd decision (E.D. Mich., Mar. 17, 2014) 2014
　　WL 1030842..................................................................27

*Safety Specialty Ins. Co. v. Genesee County Bd. of Comm'rs*,
　　53 F.4th 1014 (6th Cir. 2022)............................................. 19, 23

## Statutes

Mich. Comp. Laws Ann. § 211.741(1)...................................................6

Mich. Comp. Laws Ann. § 324.30701...................................................3

Mich. Comp. Laws Ann. § 324.30701(c)...............................................7

Mich. Comp. Laws Ann. § 324.30701(h)...............................................4

Mich. Comp. Laws Ann. § 324.30702..................................................3

Mich. Comp. Laws Ann. § 324.30704 ........................................................................4

Mich. Comp. Laws Ann. § 324.30705 ........................................................................5

Mich. Comp. Laws Ann. § 324.30705(3) ...................................................................5

Mich. Comp. Laws Ann. § 324.30707 ........................................................................3

Mich. Comp. Laws Ann. § 324.30707(5) ...................................................................3

Mich. Comp. Laws Ann. § 324.30711 ........................................................................4

Mich. Comp. Laws Ann. § 324.30711(1) ................................................................5, 9

Mich. Comp. Laws Ann. § 324.30711(2) ...................................................................5

Mich. Comp. Laws Ann. § 324.30712 ........................................................................4

Mich. Comp. Laws Ann. § 324.30714(2) ...................................................................6

Mich. Comp. Laws Ann. § 324.30714(3) ...................................................................6

Mich. Comp. Laws Ann. § 324.30714(4) ...................................................................7

**ISSUES PRESENTED**

1.   Whether the Court should dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), where the Court lacks subject matter jurisdiction pursuant to the doctrines of collateral estoppel and res judicata, and where Plaintiffs lack Article III standing?

2.   Whether the Court should dismiss Plaintiffs' First Amended Complaint against Defendant FLTF pursuant to Federal Rule of Civil Procedure 12(b)(6), where the allegations of Plaintiffs' pleading fail to state any cognizable claim upon which relief may be granted?

# CONTROLLING AUTHORITY

## Cases

*Adair v. State*, 470 Mich. 105; 680 N.W.2d 386 (Mich. 2004)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Monat v. State Farm Ins. Co.*, 469 Mich. 679; 677 N.W.2d 843 (2004)

*Safety Specialty Ins. Co. v. Genesee County Bd. of Comm'rs*, 53 F.4th 1014 (6th Cir. 2022)

## Constitutional Provisions and Rules

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(6)

U.S. Const. art. III, § 2

# INTRODUCTION

This action seeks to derail the construction and repair of four high hazard dams and the restoration of Smallwood, Secord, Wixom, and Sanford Lakes (the "Four Lakes"), which were drained following the highly publicized Edenville and Sanford dam failures in May 2020. Plaintiffs the Heron Cove Association ("HCA"), a non-profit corporation that represents property owners and interests within or adjacent to the Four Lakes Special Assessment District ("FLSAD"), and the individual members thereof identified in the caption of this lawsuit (collectively, "Plaintiffs"). The FLSAD is comprised of 8,170 individual parcels of land within Gladwin and Midland counties. Defendants are the Four Lakes Task Force ("FLTF") and the Gladwin County Board of Commissioners (the "County"). FLTF is a non-profit 501(c)(3) corporation, comprised of representatives (also property owners in the FLSAD) from the Four Lakes system, and was appointed by the Midland and Gladwin County Boards of Commissioners (the "Counties") as their "Delegated Authority" pursuant to Part 307, "Inland Lake Levels," of the Michigan Natural Resources and Environmental Protection Act ("NREPA"). Specifically, FLTF was appointed pursuant to Part 307 to coordinate the restoration and maintenance of normal lake levels and to manage the finance, design and construction of the Four Lakes system (the "Project"). Part 307 provides the statutory process for funding the Project cost, utilizing lake-level special assessments.

1

In February 2024, following notice and extensive hearing pursuant to Part 307, FLTF proposed and the Counties approved a $400 million lake-level project. The project funding includes $181 million from state taxpayer dollars approved by the State of Michigan. But, to fund and finance the remainder ($217,700,000) over the next 40 years, FLTF proposed and the Counties approved (1) an operation and maintenance special-assessment roll, and (2) a capital improvement special-assessment roll imposed on the properties within the SAD and benefitting from the restoration of the lakes. Pursuant to Part 307, these assessment rolls are "final and conclusive" unless an appeal is taken within fifteen days after the county board of commissioners approves the rolls. Plaintiff HCA, through their same counsel here, challenged the validity of the special-assessment rolls in a state court proceeding brought in the Midland County Circuit Court (the "State Court"). Specifically, Plaintiffs asserted the exact same disproportionality and due process arguments that form the basis of their Complaint here in the State Court proceeding. The parties litigated those arguments and, on June 20, 2024, the State Court entered an Opinion and Order rejecting Plaintiffs' arguments in their entirety. A copy is attached as **Exhibit A**.

In the instant action, Plaintiffs seek the proverbial "second bite at the apple," apparently hoping for a better result with this Court. Plaintiffs filed their four-count Complaint alleging Inverse Condemnation under the Michigan Constitution (Count

I), a Taking under the Federal Constitution (Count II), and violation of Procedural Due Process under the State and Federal Constitution (Counts III and IV). Plaintiffs request that this Court, among other things, invalidate the assessments. This Court, however, lacks subject matter jurisdiction pursuant to the doctrines of collateral estoppel and res judicata and must dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). In addition, and as explained *infra*, Plaintiffs' Complaint fails to state a claim in accordance with federal pleading standards. The Complaint, therefore, is also subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF RELEVANT BACKGROUND FACTS

### Overview of Part 307 "Inland Lake Levels" of the NREPA

This case arises out of actions taken by FLTF in its capacity as a "delegated authority" and by the County pursuant to Part 307 of Michigan's NREPA. *See* Mich. Comp. Laws Ann. §§ 324.30701 *et seq.* Thus, a working understanding of Part 307 will assist the Court in addressing this motion.

Part 307 authorizes a county board of commissioners to petition the local circuit court and request that it establish the appropriate (or normal) lake level for inland lakes located within the county. Mich. Comp. Laws Ann. §§ 324.30702, 324.30707. Once the lake level is established, Part 307 also grants the circuit court "continuing jurisdiction." Mich. Comp. Laws Ann. § 324.30707(5). Realizing that

there are costs associated with maintaining the court-ordered lake level, the Legislature sensibly determined that a county can petition the circuit court to establish a lake-level special assessment district for the express purpose of allowing the county to defray administration, design, construction, operation, maintenance, repair, and improvement costs by distributing the costs to those in a judicially-established special assessment district. Mich. Comp. Laws Ann. § 324.30704; Mich. Comp. Laws Ann. § 324.30711; Mich. Comp. Laws Ann. § 324.30712. Those who benefit from the lake—such as the private property owners adjacent (*i.e.*, waterfront) or with deeded access (*i.e.*, backlots), political subdivisions, and state-owned lands—are typically included in the special assessment district and are subject to the lake-level special assessments levied by the delegated authority. Mich. Comp. Laws Ann. § 324.30711.

Part 307 provides for the control and maintenance of inland lake levels for the benefit and welfare of the public, to best preserve the natural resources of the state, and *to best preserve and protect the value of property around a lake*. *See* Mich. Comp. Laws Ann. § 324.30701(h); *see also In re Van Ettan Lake*, 386 N.W.2d 572, 576 (Mich. App. 1986) ("[T]he purpose of the Inland Lake Level Act is to provide for the control and maintenance of inland lake levels for the benefit of the welfare of the public.") (emphasis added). Part 307 "authorizes counties to make policy decisions as to the levels of their inland lakes, and build and finance dams as

4

necessary to maintain the desired lake levels." *Id.* at 525–26. To this end, the lake-level special assessment district is authorized to issue municipal bonds, notes, and lake-level orders in anticipation of special assessments. Mich. Comp. Laws Ann. § 324.30705.

To pay costs associated with a lake-level project, Part 307 requires a "delegated authority" to compute the costs of the lake-level project and prepare a lake-level special-assessment roll. Mich. Comp. Laws Ann. § 324.30711(1); Mich. Comp. Laws Ann. § 324.30712. In levying the lake-level special assessments, the delegated authority prepares a special-assessment roll in accordance with the Michigan Drain Code. Mich. Comp. Laws Ann. § 324.30705(3). The lake-level special-assessment roll is based on the delegated authority's apportionment of all costs required to maintain the court-ordered lake level, and if the revenues raised are insufficient to meet the computation costs as provided in Section 30712, the "special assessment district may be reassessed without hearing using the same apportioned percentage used for the original assessment." Mich. Comp. Laws Ann. § 324.30711(1) and (2). Lake-level special assessments, like drain assessments under the Michigan Drain Code, are based on the delegated authority's methodology that apportions project costs over the benefits derived by the properties, public corporations, and state lands within the lake-level special assessment district. *Id.*

Very importantly, before submitting the special-assessment roll to the county

5

board of commissioners for final approval, there must be a public hearing to discuss the project costs and the special-assessment roll. Mich. Comp. Laws Ann. § 324.30714(2). Part 307 requires mailing of the notice of hearing to each property owner in the special assessment district and the publication of the hearing notice twice in a newspaper that circulates in the special assessment district with the "first publication to be at least 10 days prior to the hearing." *Id.* The notice mailed to each property owner must comply with Michigan Public Act 162 of the Public Acts of 1962. *Id.* Public Act 162, among other things, provides that the hearing notice shall be mailed to the property owner of the property to be assessed (and whose name appears on the tax records) at least 10 days before the hearing and contain a statement that appearance and protest at the hearing is required in order to appeal the amount of the special assessment or the owner may file an objection in writing, "in which case his or her personal appearance shall not be required." Mich. Comp. Laws Ann. § 211.741(1), (2), & (3). Accordingly, before or at the hearing, property owners may review their lake-level assessment, present evidence or other information that may affect the apportionment percentage, or object to the special assessments and the costs of the project.

After the hearing, the costs of the lake-level project and the lake-level special-assessment roll may be approved (or revised) by the delegated authority. Mich. Comp. Laws Ann. § 324.30714(3). The final step in the process requires the costs of

the project and the special-assessment roll to be approved by the county board of commissioners. *Id.* A property owner subject to the assessment may then challenge the special-assessment roll by appealing to the circuit court within fifteen days after approval by the county board. Mich. Comp. Laws Ann. § 324.30714(4); Mich. Comp. Laws Ann. § 324.30701(c).

**Establishment of the Four Lakes Special Assessment District**

In 2018, and in accordance with Part 307, the Counties adopted resolutions, each finding that in "order to protect the public's health, safety and welfare, to best preserve the natural resources of the state, and to preserve and protect the value of property around the lakes," it was necessary to establish the normal (legal) levels for all Four Lakes. **Ex. B**, Gladwin County Resolution, p. 5; **Ex. C**, Midland County Resolution, p. 12. In addition, the resolutions provided that all costs in connection with the maintenance of the normal levels of the Four Lakes "shall be defrayed by special assessments for the benefits derived against privately owned parcels of land, political subdivisions of the state, and state owned lands." *Id.* The FLTF (formerly known as the Sanford Lake Preservation Association) was appointed as the Counties' Part 307 delegated authority and to serve as the agent to oversee the lake-level project, to prepare a special assessment district(s) and special-assessment roll(s), and to "take all other actions as necessary and required by the delegated authority as provided in Part 307." *Id.*; *see also* ECF No. 1-2, PageID.37, ¶ 18.

In 2019, the Counties petitioned the Midland County Circuit Court (the "State Court") to establish normal levels of the Four Lakes and confirm the boundaries of Four Lakes Special Assessment District ("FLSAD"). *Id.*, ¶ 19. On May 28, 2019, after giving notice to all interested parties, receiving testimony and a hearing, and after careful consideration, the State Court entered a Lake Level Order confirming the FLSAD. **Ex. D**, Lake Level Order; *see also* ECF No. 1-2, PageID.37, ¶ 20; **Ex. A**, pp. 1–2. There are 8,170 individual parcels of land contained in the FLSAD. *Id.*

**May 2020 Dam Failures**

On May 19, 2020, following a record rainfall event, an embankment failed on the Edenville Dam. Several hours later, excess water from the Edenville Dam failure caused the Sanford Dam to breach. The upstream dams at Secord and Smallwood lakes were also damaged. And thousands of homes, properties, businesses, and public infrastructure were damaged or destroyed by this catastrophic flood event. The region was declared a national disaster. *Id.*, p. 1; *see also* ECF No. 1-2, PageID.36, ¶ 14.

In the days and years after the disaster, massive recovery efforts were undertaken. FLTF was appointed by the Counties as the lead local agency to coordinate these efforts. The vast majority of the "clean-up" work was accomplished through private donations and state and federal grant money with no cost to property owners in the FLSAD. But all four dams must be rebuilt and permitted per various

state-law requirements. **Ex. A**, pp. 1-2; *see also* ECF No. 1-2, PageID.38, ¶ 21.

**Development of Special Assessment Apportionment Methodology**

In accordance with Part 307, the Counties determined that all costs associated with the administration, construction, operation, maintenance, repair, and improvement of the legal or normal levels of the Four Lakes shall be defrayed by special assessments to the properties in the FLSAD. Accordingly, the delegated authority (here, FLTF) is required to distribute or "apportion" project costs to "privately owned parcels of land, political subdivisions of the state, and state owned lands." Mich. Comp. Laws Ann. § 324.30711(1). The costs to be apportioned include those associated with the reconstruction of the dams and the Four Lakes system (the "Lake Level Capital Project") and the operation and maintenance costs required to maintain normal lake levels pursuant to the Lake Level Order ("O&M"). **Ex. A**, p. 2; *see also* ECF No. 1-2, PageID.38, ¶ 21.

Beginning in 2021 and continuing through 2023, FLTF worked with a special assessment work group, led by its consulting engineers, Spicer Group, to develop an appropriate methodology for apportioning project costs for both the Lake Level Capital Project and O&M costs. **Ex. A**, p. 2; *see also* ECF No. 1-2, PageID.38, ¶ 21. FLTF shared a proposed apportionment methodology with the public in an informational webinar on December 6, 2021, which included an opportunity for public comment. In 2023, the special assessment methodology was revised,

reflecting changes based on an increase in the estimated cost of the Lake Level Capital Project and differences found in various property conditions. **Ex. A**, p. 2; *see also* ECF No. 1-2, PageID.38, ¶ 29.

**Notice and the Special Assessment Hearing**

FLTF scheduled (and ultimately held) a hearing in connection with the O&M and Lake Level Capital Project special-assessment rolls for January 15, 2024. *See* **Ex. E**, Notice of Hearing; **Ex. A**, p. 2. *See also* ECF No. 1-2, PageID.39, ¶ 32. Prior to that date, on December 6, 2023, FLTF held a webinar to inform property owners within the FLSAD of the updated project costs and estimated special assessment amounts for both the Lake Level Capital Project and O&M costs. **Ex. A**, p. 2. Also at that time, FLTF created a "virtual map," which was posted online and illustrated the estimated assessment to each individual parcel in the FLSAD. *Id.* In addition, throughout December 2023 and through January 15, 2024, FLTF conducted numerous "one-on-one" virtual meetings with landowners to review apportionment benefit factors affecting their specific properties. *Id.* None of these "informational" steps were required by Part 307. Yet each were conducted by FLTF to the benefit of property owners in the FLSAD.

On January 15, 2024, FLTF held the statutorily required public hearing in connection with the lake-level special-assessment rolls. **Ex. A**, p. 2; *see also* ECF No. 1-2, PageID.39, ¶ 32. A notice of hearing was prepared in accordance with the requirements of Part 307. **Ex. A**, p. 2–3; *see also* **Ex. E**. The notice was mailed to

each property owner and published twice in both the *Midland Daily News* and *Gladwin County Record*. **Ex. A**, pp. 2–3. The notice was also posted on the Counties' and FLTF's websites. *Id.* Property owners were permitted to submit written objections prior to the meeting and/or object during the meeting. *Id.*, p. 3. In all, over 600 objections were made and addressed. *Id.* Following the January 15 special-assessment hearing, FLTF revised the special-assessment rolls based on the objections and comments received, then transmitted the special-assessment rolls to the Counties. *Id.*; *see also* ECF No. 1-2, PageID.39, ¶¶ 31-33. On February 6, 2024, in a joint meeting of the Counties' respective boards of commissioners, the Counties approved the Lake Level Capital Project and O&M special-assessment rolls. **Ex. A**, p. 3.

**State Court Appeal Proceeding**

On February 20, 2024, and pursuant to Part 307, Plaintiffs,[1] through their counsel, appealed to the State Court. In their Claim of Appeal, Plaintiffs asserted that the Counties' approval of the special-assessment rolls should be invalidated as unconstitutional takings of private property and were violative of procedural due process. **Ex. G**, Amended Claim of Appeal, ¶¶ 13-16. Plaintiffs briefed these issues

---

[1] Many, but not all, of the individual Plaintiffs listed in the caption of the Complaint joined in the challenges asserted in the State Court appeal proceeding. The lead Plaintiff in this case, HCA, also led that challenge to the special assessments and has alleged in both the State Court proceeding and the instant Complaint that it represents the interests of property owners in the FLSAD. *See* ECF No. 1-2, PageID.35, ¶ 2; *see also* **Ex. A**, p. 3–4 (holding that HCA has standing to represent the interests of its members in the FLSAD).

on March 26, 2024. **Ex. H,** Pls' Brief on Appeal. Importantly, Plaintiffs argued in their briefing that "[t]he special assessments are a taking without due process of law." *Id*. Among other things, Plaintiffs acknowledged that "in ordinary circumstances, the procedures set forth in the ILLA . . . may be sufficient to comply with . . . constitutional standards." *Id.*, p. 19. Nevertheless, and contrary to the administrative process approved in *In re Chappel Dam*, 762 N.W.2d 192 (Mich. App. 2009), Plaintiffs argued that, in this case, "a more detailed process" should have been required and that "[t]he notice and public hearings provided to [Plaintiffs] under the ILLA are not constitutionally sufficient as applied here." *Id.*, pp. 20–22. Plaintiffs further argued that the special assessments are disproportionate to the respective values of the properties within the FLSAD and therefore constitute an unconstitutional taking of Plaintiffs' private property, citing *Dixon Road Group v. City of Novi*, 395 N.W.2d 211 (Mich. 1986). *Id.* at pp. 22–23. On these grounds, Plaintiffs asked the State Court to invalidate the special-assessment rolls. *Id.* at p. 24.

FLTF and the Counties argued in response that the procedure employed in developing and approving the special-assessment rolls not only met but far exceeded the statutory requirements under Part 307 and more than satisfied procedural due process. **Ex. I**, Response Brief. FLTF also argued that the special assessments are not disproportionate to the respective values of the properties. *Id.*, pp. 42–50.

After oral argument, the State Court issued its ruling on June 20, 2024, rejecting both arguments advanced by Plaintiffs on their merits and upholding the validity of the special assessments. **Ex. A**. After carefully analyzing the steps taken by FLTF and the Counties—including the notice given to Plaintiffs and the several opportunities to be heard—the State Court held, among other things, that "there has not been any violation of [Plaintiffs'] due-process rights in the manner the public hearing was noticed by [FLTF and the Counties], nor in the manner the public hearings were conducted." *Id.*, p. 7. The State Court further rejected Plaintiffs' disproportionality/takings argument, holding that "[Plaintiffs] have failed to demonstrate an unreasonable disproportionality between the amounts of their assessments in comparison to the benefit derived to overcome the rebuttable presumption in favor of validity." *Id.*, p. 9. Accordingly, the State Court rejected Plaintiffs' challenge to the special-assessment rolls in its entirety. *Id.*, p. 13. Notably, the State Court's expressly held that its Opinion was "a final order that resolves the last pending claim and closes the case." *Id.*, p. 13.

**Procedural History of this Proceeding**

In the meantime, on or about March 20, 2024, Plaintiff HCA, on its behalf and on behalf of purported property owners with property located in the FLSAD, initiated this case by filing a complaint in the Gladwin County Circuit Court. Plaintiffs filed a First Amended Complaint (referred to herein as the "Complaint")

on or about May 2, 2024. Defendants then removed the action to this Court on June 4, 2024, and now move the Court to dismiss Plaintiffs' Complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

## ARGUMENT

**I.    The Court lacks subject matter jurisdiction, and the Complaint therefore must be dismissed pursuant to Rule 12(b)(1).**

### A.    The Complaint is barred by Collateral Estoppel and Res Judicata.

#### i.    Applicable Legal Standard

A motion to dismiss based on collateral estoppel and/or res judicata may be brought pursuant to Rule 12(b)(1) or 12(b)(6). *See*, *e.g.*, *In re Graves*, 282 Fed. App'x 432, 432–33 (6th Cir. 2008) (affirming dismissal pursuant to Rule 12(b)(1) because res judicata and collateral estoppel barred the claims); *Daubenmire v. City of Columbus*, 507 F.3d 383, 389–90 (6th Cir. 2007) (affirming dismissal pursuant to Rule 12(b)(6) because res judicata barred the claims). Motions brought pursuant to Rule 12(b)(1) "fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). While a facial attack challenges the sufficiency of the pleading itself, a factual attack challenges the factual existence of subject matter jurisdiction and looks to matters outside the plaintiff's pleading. *Id.* The following arguments, brought pursuant to Rule 12(b)(1), constitute factual attacks, and the Court therefore may evaluate matters outside the Complaint. Importantly, when jurisdiction is challenged pursuant to Rule 12(b)(1),

the plaintiff carries the burden of proof to establish jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

This Court lacks jurisdiction here. The claims asserted by Plaintiffs are barred by collateral estoppel and/or the res judicata effect of the State Court's June 20, 2024, Opinion and Order, attached hereto as **Exhibit A**. To determine the preclusive effect of an earlier suit, federal courts look to the law of the court rendering the prior judgment. *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 Fed. App'x 994, 998 (6th Cir. 2009) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999) ("[W]e must give the same preclusive effect, under the doctrines of res judicata and collateral estoppel, to state court judgments that those judgments would receive in courts of the rendering state.")). In this case, therefore, the Court must apply Michigan law.

Under Michigan law, collateral estoppel bars re-litigation of an issue where three elements are satisfied: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (Mich. 2004) (internal punctuation and citation omitted). Res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter

15

in the second case was, *or could have been*, resolved in the first." *Adair v. State*, 680

N.W.2d 386, 396 (Mich. 2004) (emphasis added).

> ### ii. Plaintiffs are collaterally estopped from relitigating disproportionality and procedural due process.

Plaintiffs Complaint includes four counts. In Counts I and II, for inverse

condemnation under the U.S. and Michigan Constitutions, Plaintiffs assert a novel

theory of relief,[2] citing to Michigan case law commenting that a special assessment

may be "akin" to a taking if the amount of the assessment is disproportionate to the

benefit to be derived by the assessed properties.

Those claims are barred. Even if these counts stated a cognizable claim for

relief under federal or Michigan law—they do not, as explained below—the

underlying disproportionality-of-the-assessments claim on which Plaintiffs' theory

rests has already been *actually litigated* and rejected in a valid and final judgment.

Indeed, Plaintiffs made the **very same** disproportionality argument in their appeal to

the State Court (in their principal brief, reply, and at oral argument). They lost. The

State Court expressly rejected their disproportionality Takings claim, holding:

> Appellants have failed to demonstrate an unreasonable disproportionality between the amounts of their assessments in comparison to the benefit derived to overcome the rebuttable presumption in favor of validity. [**Ex. A**, p. 9.]

---

[2] As argued by FLTF, *infra*, there is **no** recognized federal or Michigan cause of action for inverse condemnation arising out of the alleged disproportionality of a special assessment on real property.

In doing so, the State Court carefully examined the administrative record and evidence relied on by Plaintiffs and ultimately held that "the record provided on appeal does not offer any evidence to show disproportionality." *Id.*, p. 10. Because this issue was presented by Plaintiffs to the State Court and rejected, they are collaterally estopped from relitigating this issue.

Plaintiffs' Counts III and IV for violation of procedural due process suffer the same fate. In their State Court appeal, Plaintiffs argued (in their principal brief, reply briefs, and at oral argument) that the process employed by Defendants in approving the special-assessment rolls violated their procedural–due–process rights. They lost. After carefully considering Defendants' factual and legal arguments, the State Court rejected Plaintiffs' contention, holding: "[T]he Court finds there has not been any violation of [Plaintiffs'] due-process rights in the manner the public hearing was noticed by [Defendants], nor in the manner the public hearings were conducted." *Id.*, p. 7. Again, there can be no dispute that the issue of whether Defendants complied with procedural due process was actually litigated to a final judgment. Plaintiffs therefore are collaterally estopped from relitigating this issue, too.

Not all of the individual Plaintiffs in this case individually joined the the State Court proceeding. But the lead Plaintiff in both cases—HCA—asserted in the State Court proceeding and in this action that it has standing to represent the interests of property owners in the FLSAD. **Ex. A**, pp. 3–4; ECF No. 1-2, PageID.35, ¶ 2. And

the State Court determined that HCA *does* have such standing. **Ex. A**, pp. 3–4. Accordingly, all individuals Plaintiffs in this case are bound by the Opinion and Order of the State Court because either they indvidually or their privy—HCA—were parties. *See Mecosta County Med. Ctr. v. Met. Group Prop. & Cas. Ins. Co.*, 983 N.W.2d 401, 406 (Mich. 2022) (both res judicata and collateral estoppel apply when the parties in the subsequent action were parties or privies of parties to the original action and stating that "[t]o be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert.") (citation omitted).

### iii.    Res Judicata Bars Plaintiffs' Complaint.

Res judicata similarly bars Plaintiffs' claims. As noted above, res judicata requires satisfaction of three elements: (1) a prior action, decided on the merits; (2) the same parties or their privies; and (3) that the matter in the second case was, or could have been, resolved in the first. *See Adair*, *supra*. Each of these elements is satisfied here, for the reasons described above.

Importantly, Michigan courts apply a broad theory of claim preclusion. Res judicata in Michigan bars not only claims which were brought and adjudicated previously, but also those which *could have been brought,* but were not. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 747 (6th Cir. 2002); *Bergeron v. Busch*, 579 N.W.2d 124, 126 (Mich. App. 1998) ("Michigan has adopted a broad application of

res judicata that bars claims arising out of the same transaction that plaintiff could have brought but did not."). Accordingly, even if Plaintiffs' claims could somehow be characterized as new or different from what they asserted in State Court (and they are not), res judicata still bars them because they could have raised the same issues in their appeal.

## B. Five Plaintiffs lack standing, and their Complaint therefore is not justiciable.

### i. Applicable Legal Standard

Article III of the U.S. Constitution limits the subject matter jurisdiction of the federal courts to actual cases and controversies. U.S. Const. art. III, § 2; *see also Safety Specialty Ins. Co. v. Genesee County Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022). The Supreme Court of the United States has delineated several justiciability doctrines in connection with the determination of whether there is a case or controversy sufficient to establish subject matter jurisdiction, including the doctrine of standing. *Id.* "To have standing, plaintiffs must allege (1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress." *Id.* (citation and punctuation omitted). A plaintiff without injury lacks standing and his complaint therefore is subject to dismissal under Rule 12(b)(1). *Forest City Res. Mgt., Inc. v. Beasley*, 71 F.Supp.3d 715, 723 (E.D. Mich. 2014).

### ii.     Plaintiffs With No Affected Property Interest Lack Standing

As reflected in the attached summary table (**Ex. F**),[3] five of the individual Plaintiffs named in this case do not own property in the FLSAD and therefore cannot allege any injury to support their standing in this case. Because these litigants cannot show injury, they lack standing and their claims must be dismissed.

## II.     Plaintiffs' Complaint fails to state a claim and therefore must be dismissed pursuant to Rule 12(b)(6).

### A.     Applicable Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not

---

[3] FLTF, through its consultant, Spicer Group, identified the properties within the FLSAD boundaries based on property tax records, lake improvement special assessment maps developed from property tax records, and Midland and Gladwin County geographic information system (GIS) database, which was later approved by the State Court in May 2019. The property tax records were also used for the purposes of the preparing the lake level special-assessment rolls. The lake-level special-assessment rolls are the definitive list of properties and property owners within the FLSAD.

contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *supra*, at 678. A pleading fails to state a claim under Rule 12(b)(6), and therefore is subject to dismissal, if it does not contain allegations supporting recovery under any recognizable legal theory. *Id*.

### B. Counts I and II for Inverse Condemnation Fail to State a Claim

#### i. Overview of Applicable Substantive Law

As succinctly explained by the Michigan Supreme Court in *Mays v. Snyder*, 954 N.W.2d 139 (Mich. 2020):

> The Fifth Amendment of the United States Constitution and Article 10, § 2 of Michigan's 1963 Constitution prohibit the taking of private property without just compensation. U.S. Const., Am. V; Const. 1963, art. 10, § 2. A claim of inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken even though no formal exercise of the power of eminent domain has been attempted by the taking agency. Inverse condemnation can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a "taking." [*Id.* at 148 (internal citations and punctuation omitted).]

To establish a cause of action for inverse condemnation, a plaintiff must prove two elements: "(1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Id.* (citation omitted). "The right to just

compensation, in the context of an inverse condemnation suit for diminution in value exists only where the landowner can allege a unique or special injury, that is, an injury that is different in kind, not simply in degree, from the harm suffered by all persons similarly situated." *Id.* (citation and punctuation omitted). *See also Lathfield Investments, LLC v. City of Lathrup Village*, Case No. 21-10193, unpub'd decision of the U.S.D.C. for the E.D. Mich., dated Nov. 9, 2023, 2023 WL 7418216, *17–18 (articulating the elements of inverse condemnation as set forth in *Mays*, *supra*) (**Ex. J**).

### ii.   Plaintiffs Do Not allege the Elements of Inverse Condemnation

Plaintiffs do not allege facts showing that they are entitled to relief under a theory of inverse condemnation and their Counts I and II therefore fail to state a claim. Specifically, Plaintiffs allege no facts, whatsoever, in support of their conclusory assertion that the special assessments "decrease the net value [of the properties]." ECF No. 1-2, PageID.44, ¶ 71. Plaintiffs allege no other cognizeable injury to their property interests, but make the purely hypotehcial and speculative contention that some of them may, in the future, be unable to sell their properties or lose their properties to tax foreclosure, in the event they do not pay the special assessments.[4] ECF No. 1-2, PageID.45,  ¶¶ 76, 77. Plaintiffs' faillure—and inability

---

[4] As a matter of Constitutional law, Plaintiffs cannot rely on such hypothetical and speculative allegations.  The "mere risk" of future harm is insufficient to establish

–to allege an actual decrease in the value of their properties or other cognizable injury is fatal to their inverse condemnation theories.

Instead, Plaintiffs essentially invite this Court to recognize an entirely new legal theory invented by Plaintiffs and their counsel in an apparent attempt to avoid the requisite elements of their asserted claims. Specfically, Plaintiffs rely on language contained in a Michigan Supreme Court decision, *Dixon Road Group v. City of Novi*, 395 N.W.2d 211 (Mich. 1986), in an effort to make new law. ECF No. 1-2, PgID.43, ¶¶ 65–67. Procedurally, *Dixon*—which involves a direct appeal from a special assessment—is similar to the State Court appeal Plaintiffs already brought. 395 N.W.2d at 212–14. The *Dixon* petitioners argued that the cost of the assessments at issue in that case and the benefits to be derived therefrom were disproportional and therefore should be invalidated. *Id.* at 395. Discussing broad principles applicable to special assessments, the Michigan Supreme Court agreed with the *Dixon* petitioners in that case, observing that disproportionality between a special assessment's cost and the prospective benefit to assessed property can be "*akin*" to a governmental taking. *Id.* at 403.

---

the injury-in-fact requisite to a plaintiff's standing, and claims contingent on possible future events—which may never occur—are not ripe for review. *See Safety Specialty Ins. Co. v. Genesee County Bd of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (explaining the justiciability doctrines of standing and ripeness under the Cases and Controversies requirement of the U.S. Constitution).

The *Dixon* court, however, did **not** hold that such a disproportionality *is* a taking or that it would give rise to a cause of action for inverse condemnation. *Id.* at 403. And nothing in *Dixon* suggests that even where there is a finding of disproportionality, an affirmative claim for just compensation is given rise. Plaintiffs' reliance on *Dixon*'s disporportionality analysis in the context of a cause of action for affirmative relief under the theory of inverse condemnation—as opposed to a challenge to the validity of a special assessment through the statutorily prescribed process—therefore is misplaced.

Indeed, after exhaustive electronic research, counsel for FLTF has not located even a single decision in which any Michigan or federal court recognized a valid cause of action for inverse condemnation arising from the approval or exaction of a special assessment on property owners in a special assessment district. This research, however, did lead counsel to several cases in which courts have ruled that, as a matter of law, exaction of a special assessment does **not** give rise to a claim for inverse condemnation. *See, e.g., Gaut v. City of Southfield*, 192 N.W.2d 123, 125 (Mich. App. 1971) ("A special assessment is not a 'taking' of property for public use."). *See also Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1329 (Fed. Cir. 2001) (holding "the Takings Clause does not apply to legislation requiring the payment of money"). Because there is no recognized cause of action for inverse condemnation on the facts alleged by Plaintiffs, the Court should dismiss Counts I

24

and II of Plaintiffs' Complaint pursuant to Rule 12(b)(6).

### C.     Counts III and IV for Violation of Procedural Due Process Fail to State a Claim

#### i.     Overview of Applicable Substantive Law

To state a claim for a violation of due process, a plaintiff must allege that a constitutionally protected liberty or property interest was deprived without appropriate process. *Midkiff v. Adams County Regional Water Dist.*, 409 F.3d 75, 762 (6th Cir. 2005). "Due process" under the U.S. and Michigan Constitutions requires (1) notice and (2) an opportunity to be heard. *Chandler v. Village of Chagrin Falls*, 296 Fed. App'x 463, 471–73 (6th Cir. 2008) (plaintiff failed to demonstrate violation of procedural due process where plaintiff failed to show that notice or hearing given was constitutionally inadequate). *See also In re Chappel Dam*, 762 N.W.2d 192, 197–98 (Mich. App. 2009) (where notice and hearing process set forth in Part 307 was followed, there was no violation of procedural due process).

#### ii.     Plaintiffs Do Not Allege a Violation of Procedural Due Process.

Plaintiffs in this case do not allege that the Defendants deprived them of constitutionally protected rights without due process of law. They also do not allege that they were not provided with notice or an opportunity to be heard. Indeed, the allegations of Plaintiffs' Complaint establish just the opposite; upon review of Plaintiffs' Complaint, the Court will see that the allegations set forth therein actually

demonstrate Defendants' full compliance with each and every statutory requirement under Part 307. ECF No. 1-2, PageID. 37-38, 39, 41, ¶¶ 17-24, 31-33, 49. There appears to be no dispute that Defendants fully complied with Part 307. Finally, Plaintiffs do not allege that the notice and hearing requirements set forth in Part 307 are constitutionally inadequate.

Instead, Plaintiffs once again invite the Court to make new law, basing their procedural due process counts on the allegation that Defendants could have done more: "Additional or substitute procedural safeguards, including obtaining expert reports on the benefits derived from the Dams, would place minimal additional burden on the County and the FLTF." ECF No. 1-2, PgID.48, ¶ 108. Whether the Defendants could have done *more*, however, is not the standard by which procedural due process is measured. *See In re Chappel Dam*, *supra*. Thus, Plaintiffs' Complaint fails to demonstrate that they were deprived of notice or an opportunity to be heard and further fails to demonstrate any inadequacy in the notice or hearing they received. Accordingly, Plaintiffs' Counts III and IV fail to state a claim for violation of procedural due process and therefore must be dismissed.

### D.    Plaintiffs Fail to State any Claim Against FLTF

Finally, even if this Court were to accept Plaintiffs' invitation to recognize a new cause of action for inverse condemnation on the facts alleged by Plaintiffs here, or to permit Plaintiffs to pursue procedural due process claims without having

alleged the requisite elements, Plaintiffs still have not alleged facts sufficient to establish such claims as against FLTF. The very essence of the legal theory of inverse condemnation is to ensure **government's** compliance with the takings clauses of the U.S. and Michigan Constitutions. *Mays*, *supra*, at 173. There is no authority, federal or state, for an extension of the theory of inverse condemnation to a non-governmental defendant. Such an extension defies logic. Similarly, a claim for violation of due process can be brought as against a governmental actor, only. *Rush v. Federal Home Loan Mortg. Corp.*, Case No. 13–11302, unpub'd decision of E.D. Mich., dated Mar. 17, 2014, 2014 WL 1030842, *4 (quoting *Krukemyer v. Forcum*, 475 Fed. Appx. 563, 566 (6th Cir. 2012) (**Ex. K**); *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1991)). "There is no constitutional right to be free from harm inflicted by private actors." *Id.*

Importantly, Plaintiffs do not allege that FLTF is a governmental entity; it is not. As reflected in the public records of the State of Michigan, available online at the website maintained by Michigan's Department of Licensing and Regulatory Affairs, FLTF is a Michigan nonprofit corporation. In addition, and as alleged by Plaintiffs in their Complaint, it is the Counties—not FLTF—that acted, by resolution, to approve the special-assessment rolls. ECF No. 1-2, PgID.41, ¶ 49. Under Part 307, final decision-making power rests with the Counties, not the delegated authority (FLTF). *See* Mich. Comp. Laws Ann. § 324.30714(3).

Accordingly, each of Plaintiffs' counts fails to state a claim against FLTF for this reason, too.

## CONCLUSION

For these reasons, FLTF requests that the Court grant its Motion and enter an order dismissing Plaintiffs' Complaint with prejudice.

Respectfully submitted,

CLARK HILL PLC

*/s/ Joseph W. Colaianne*
Joseph W. Colaianne (P47404)
Zachary C. Larsen (P72189)
Bethany G. Stawasz (P75578)
215 South Washington Square, Ste. 200
Lansing, MI 48933
517-318-3100
jcolaianne@clarkhill.com
zlarsen@clarkhill.com
bstawasz@clarkhill.com
*Attorneys for Defendant*
*Four Lakes Task Force*

Dated: July 9, 2024

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2024, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

Respectfully submitted,

CLARK HILL PLC

*/s/ Joseph W. Colaianne*
Joseph W. Colaianne (P47404)
Zachary C. Larsen (P72189)
Bethany G. Stawasz (P75578)
215 South Washington Square, Ste. 200
Lansing, MI 48933
517-318-3100
jcolaianne@clarkhill.com
zlarsen@clarkhill.com
bstawasz@clarkhill.com
*Attorneys for Defendant*
*Four Lakes Task Force*

Dated: July 9, 2024