# EXHIBIT A

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MIDLAND

HERON COVE ASSOCIATION, et al.,
    Appellants,

v

MIDLAND COUNTY BOARD OF
COMMISSIONERS, GLADWIN COUNTY
BOARD OF COMMISSIONERS, and FOUR
LAKES TASK FORCE,
    Appellees.
_____/

Case No. 24-2751-AA

Hon. Michael J. Beale

**A TRUE COPY**

*Ann Manary*

ANN MANARY
MIDLAND COUNTY CLERK &
CLERK OF THE 42nd CIRCUIT COURT

**OPINION AND ORDER ON APPEAL**

Oral arguments for this appeal were heard on May 29, 2024 and the Court took the matter under advisement. The Court issues the following findings and decision on the appeal filed by Appellants.

## I. BACKGROUND

The factual and procedural background of this matter is extensive and largely agreed upon by the parties as comprehensively and succinctly stated in their appellate briefs. The relevant and pertinent information for the Court's decision is stated below.

Appellee Four Lakes Task Force (hereinafter "FLTF") began the process of acquiring, remediating, repairing, and reconstructing dams necessary to restore Secord, Smallwood, Wixom and Sanford Lakes following the breach and flooding catastrophe of May 2020. FLTF received a total of $240 million in federal grants, state grants and private donations which allowed them to begin the restoration of the dams, but the public was also informed additional funds would be needed to complete restoration of the lakes. A special assessment was to be levied on a Special Assessment District to fund the remaining costs of the project. The Four Lakes Special Assessment District (hereinafter SAD) was judicially created in 2019 following a petition to establish normal

1

lake levels and is comprised of 8,170 parcels of property in the vicinity of the four lakes. A special assessment levy is like a tax in the sense money is collected by a governmental entity; however, it is levied to defray the cost of specific local improvements rather than for general governmental purposes. *Dixon Rd Group v Novi*, 426 Mich 390; 395 NW2d 211 (1986).

The amount initially estimated to be levied on the special assessment district was approximately $70 million; however, it was determined in late 2023 that the total cost of the restoration project for the four dams would be nearly $400 million with $217 million being collected through the special assessment. An additional $8,876,000 assessment was needed to operate and maintain the existing dams for the five-year period of 2025 through 2029.

FLTF developed their current methodology for apportionment throughout 2023 with the assistance of Spicer Group, an engineering firm, to allocate the cost of the restoration and maintenance of the dams to achieve the determined lake levels. The apportionment formula includes five factors: base benefit, derived benefit, frontage, waterfront view, and water depth. FLTF held a webinar on December 6, 2023 to update property owners as to the finalized cost of the project, cost for ongoing operation and maintenance, and the estimated special assessment amounts by application of the apportionment formula. A virtual map was created and made accessible for property owners to see their expected assessment amount. FLTF held additional virtual meetings with property owners throughout December 2023 and early January 2024 to discuss the apportionment methodology and assessments for those landowners.

FLTF held a public hearing on January 15, 2024 in accordance with Part 307 of the Natural Resources and Environmental Protection Act (commonly referred to as the Inland Lake Level Act (ILLA); MCL 324.30701 *et seq.*) to allow property owners in the SAD to protest or object to the assessment for their property. Notice was mailed to each property owner in the SAD prior to the

hearing as required by statute. Notice of the hearing was also published twice in the Midland Daily News and the Gladwin County Record as well as posted in the offices of Midland County and Gladwin County. Notice was posted on Midland County's website and FLTF's website on December 22, 2023. Notice was posted on Gladwin County's website on January 5, 2024. Property owners were also entitled to submit their objections in writing to FLTF up to the date of the hearing on January 15, 2024. Appellees concede over 500 written objections were received prior to the hearing and over 100 property owners objected at the hearing. The objections were addressed at the public hearing and the special assessment roll was finalized for submission to the Midland County and Gladwin County Board of Commissioners.

The special assessment rolls proposed at the January 15, 2024 hearing were approved by both the Midland County and Gladwin County Board of Commissioners at a joint Board meeting on February 6, 2024. Appellants timely filed their initial appeal on February 20, 2024 and amended appeals on February 21 and 26, 2024.

## II. ANALYSIS

### 1. Appellants' Standing

Appellees raise the issue of Appellants' standing to pursue this appeal and request the appeal be dismissed due to lack of standing. Appellees' argument is essentially two-fold: 1) Heron Cove Association (hereinafter "HCA") lacks standing because it represents members whose claims are potentially adverse to one another and the association failed to appear and object at the January 15, 2024 public hearing; 2) all, or most, of the individually listed Appellants lack standing because they did not appear at the January 15, 2024 public hearing to protest or object to perfect their appeal, or do not own property in the special assessment district. Neither of Appellees' arguments

3

regarding standing warrant dismissal of this appeal, except for those individual Appellants not owning property in the SAD, for the reasons stated below.

Appellees' conceded at oral argument that HCA is a nonprofit corporation formed to represent the interest of certain landowners within the SAD and has "standing to advocate interests of its members where the members themselves have a sufficient stake or . . . real interests in the matter being litigated." *Trout Unlimited, Muskegon White River Chapter v White Cloud*, 195 Mich App 343, 348; 489 NW2d 188 (1992). Therefore, HCA has standing so long as an individual member does as well. Appellees have not provided any legal support for its insistence that all claims of the Appellants must have an underlying foundation of commonality and the members may not be adverse to one another, thus the Court finds there is no such requirement for HCA to seek redress on behalf of its members within the SAD.

Appellees brief asserts 36 individuals in the case caption do not own property within the SAD; an additional 437 failed to appear at the January 15th hearing or failed to timely submit a written objection; and 248 did file an objection but failed to provide any evidence to refute the proposed assessment determination, which still leaves 253 individuals having standing to pursue this appeal. Therefore, HCA has standing to bring this action because, at a minimum, several of its members are individuals who own land within the SAD and have standing as "a special injury or right, or substantial interest that will be detrimentally affected in a manner different from the citizenry at large . . . ." *Lansing Schools Ed Ass'n v Lansing Bd of Educ*, 487 Mich 349, 372; 792 NW2d 686 (2010).

Appellees conceded at oral argument an objection is required to perfect an appeal to the Michigan Tax Tribunal under MCL 211.741, but not required for an appeal of a special assessment roll to the circuit court under MCL 324.30714(4). MCL 324.30714 incorporates the notice

4

provisions contained in MCL 211.741, but all parties agree the Michigan Tax Tribunal lacks subject matter jurisdiction for this appeal so the "appearance and protest at the hearing" requirement is contrary to the application of MCL 324.30714. Whether the Michigan Tax Tribunal would be a preferred forum to litigate the issues presented as to benefit derived in proportion to the cost imposed is not an issue for this Court to ascertain as the Michigan Tax Tribunal and the appellate courts of this state have found this Court shall undertake this determination. *In re Project Cost & Special Assessment Roll for Chappel Dam*, 282 Mich App 142; 762 NW2d 192 (2009). Consequently, landowners within the SAD who failed to appear at the January 15th hearing or file a written objection still have standing to file an appeal with this Court under the ILLA and if they are members of HCA then HCA has standing as well on their behalf.

2. Due Process

Appellants' argue the special assessments levied on their properties equate to a taking by the government and the procedures followed by Appellees were insufficient to safeguard Appellants' due process rights. Their argument is also supported by showing construction of the project had already begun before the January 15th hearing so it was a mere a formality and did not provide a meaningful opportunity to be heard on the objection to the assessment allocation.

Appellees refute the lack of due process argument by noting all procedures in the ILLA were followed and Appellants had ample opportunity between the December 6, 2023 webinar announcing the additional costs and apportionment methodology and the January 15, 2024 hearing to adequately state their objections and provide evidence in support of the objection.

"The right to due process of law is a flexible concept and must be analyzed by considering the particular circumstances presented in a given situation." *In re Chappel Dam*, 282 Mich App at 150(citing *In re Van Ettan Lake*, 149 Mich App 517, 526; 386 NW2d 572 (1986)). "To comport

5

with due process, notice, when required, must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 287-88; 831 NW2d 204 (2013). The required notice for a public hearing under the ILLA is to be published "at least twice prior to the hearing in a newspaper that circulates in the special assessment district" at least 10 days prior to the hearing, MCL 324.30714(2)(a), and "by first class mail addressed to that owner or party at the address shown on the tax records at least 10 days before the date of the hearing," MCL 211.741(1). The ILLA "guarantees notice and an opportunity to be heard before the determination of a special assessment roll" and "a sufficient hearing is one that (1) allows the circuit court to ensure that the county has considered the varying public interests in reaching its policy decision and (2) protects the public against arbitrary governmental action." *In re Chappel Dam*, 282 Mich App at 150-51.

Appellants were afforded all of the protections contained within the ILLA and affirmed by the Court of Appeals in *Chappel Dam*. Appellants have not alleged any deficiency on the part of Appellees regarding the notice requirements as mandated by statute. Additionally, they admit, through submitted affidavits, a public hearing was held in which hundreds of people attended and property owners were given an opportunity to talk to an engineer about their property and the special assessment apportioned to it, to "verbally object to the assessment rolls in front of the FLTF board," or "deliver a written objection to the FLTF Board." *Appellants' Reply Brief*, p. 5. The ILLA does not provide property owners in a special assessment district anything more than the notice which was provided to Appellants. Appellees not only followed the procedures enacted by the legislature to protect the due process rights of Appellants, but did more through the holding of public webinars, the creation of the virtual map for property owners to view, and posting notice of

6

the hearing in more places than was required, i.e. on the websites for Midland County, Gladwin County, and FLTF. Accordingly, the Court finds there has not been any violation of Appellants' due process rights in the manner the public hearing was noticed by Appellees, nor in the manner the public hearings were conducted.

### 3. Appellees' Approval of the Special Assessment Rolls

Appellants challenge the FLTF's apportionment methodology and the Counties' approvals of the special assessment rolls. Appellants argue Appellees choices were not supported by competent, material, and substantial evidence and FLTF failed to properly consider the requisite proportionality in determining the assessment levied on their properties in the SAD. Appellees counter the methodology and apportionments were not contrary to law, are to be afforded great deference under the prevailing jurisprudence for special assessment allocations, and the FLTF used its best judgment in developing the comprehensive apportionment methodology including all necessary factors to be considered.

The Michigan Court of Appeals in *Chappel Dam* stated the proper standard of review for an appeal of the special assessment district apportionments under the ILLA is the constitutionally proscribed one for administrative proceedings.

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record . . . .
> Const 1963, art 6, § 28.

Substantial evidence, as that term is used in the context of a court's review of an administrative proceeding, "means evidence that a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Bauer*

7

*v Saginaw Co*, 332 Mich App 174, 188; 955 NW2d 553 (2020)(citing *Lawrence v Michigan Unemployment Ins Agency*, 320 Mich App 422, 431; 906 NW2d 482 (2017)).

The ILLA, MCL 324.30711(1), provides the "cost of a project to establish and maintain a normal level for an inland lake shall be defrayed by special assessments . . ." and a delegated authority on behalf of the county board "shall compute the cost of the project and prepare a special assessment roll." Included in these costs of a "normal level project" are the costs of "establishing a special assessment district, including preparation of assessment rolls and levying the assessment" and "locating, constructing, operating, repairing, and maintaining a dam or works of improvement necessary for maintaining the normal level." MCL 324.30712(1)(c)-(e). The special assessment roll must include the following information: description of the parcel of land being assessed, the landowner's name, and the amount of the assessment being levied against each parcel. MCL 324.30714(1). A public hearing must then be held to address the cost of the project and the special assessment roll. MCL 324.30714(2). Notice of the hearing must be provided as required by MCL 324.30714(2)(a)-(b) and finally, the county boards must approve the cost and proposed special assessment after a public hearing. MCL 324.30714(3). As outlined in the factual synopsis above, and the briefs filed by the parties, all of these provisions were procedurally complied with by the FLTF, the Counties' delegated authority, and by the Midland County and Gladwin County Board of Commissioners. Therefore, the FLTF's development of the special assessment roll, and the county boards' approval of it, were authorized by statutory law and are not presented as an issue for review by this Court for the appeal process regarding the apportionment of the assessment roll.

The Court must determine in this appeal if the final decisions of Appellees regarding apportionment of the costs for the SAD were supported by competent, material and substantial evidence based on the record presented. Appellants must rebut the "well-settled principle that

8

municipal decisions regarding special assessments are presumed to be valid." *Kadzban v City of Grandville*, 442 Mich 495, 502; 502 NW2d 299 (1993).

> When reviewing the validity of special assessments, it is not the task of courts to determine whether there is "a rigid dollar-for-dollar balance between the amount of the special assessment and the amount of the benefit...." Rather, a special assessment will be declared invalid only when the party challenging the assessment demonstrates that "there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements."
> *Id.* at 502 (quoting *Dixon Rd Group v City of Novi*, 426 Mich 390; 395 NW2d 211 (1986).

Appellants have failed to demonstrate an unreasonable disproportionality between the amounts of their assessments in comparison to the benefit derived to overcome the rebuttable presumption in favor of validity. Appellants attempt to show disproportionality by selecting twelve parcels of property within the SAD [out of a total of over 800 parcels included in this appeal] and providing their state equalized values (SEVs) for years 2019 through 2024, compared to the assessment to be levied on each property as approved by the Gladwin County and Midland County Boards of Commissioners. Appellants argue this data shows "the loss of the Four Lakes does not appear to have substantially decreased property values within the [special assessment district]. The data also shows that the values of many properties has increased substantially in the last few years without the Project." *Appellant's Brief*, p. 17.

However, close examination of these select properties by Appellants does not adequately support the asserted argument of disproportionality even assuming the SEVs provided are reflective of the true fair market value of those identified properties. Four of the twelve parcels chosen by Appellant had SEVs that went down between 2020 (year of the floods) and 2021, three parcels don't have any data shown for the 2020 SEV so they cannot be compared, and two don't have any data shown for 2021 (the year after the lakes disappeared). A majority of the state

9

equalized values for these twelve properties did increase between the years of 2021 and 2023. Coincidentally, or perhaps not, this is the same time frame when permits were being sought to rebuild the dams and restore the lakes to their prior levels. Additionally, in December 2022 contracts for the restoration of Secord and Smallwood dams were awarded for work to commence. Any increase in value may be attributable to the restoration of the dams project beginning or simply fluctuations in the real estate market, but it certainly does not show a "substantial or unreasonable disproportionality" between the market value of the property before the restoration of the dams and the value of the property based upon completion of the project for raising the water level of the lakes. *Kadzban*, 442 Mich at 502. Appellants stated in their own brief, "the relevant comparison is not between the market value of the assessed property after the improvement and the market value of the assessed property before the improvement . . ." because such a "comparison measures the effect of time." *Ahearn v Bloomfield Charter Twp*, 235 Mich App 486, 496-97; 597 NW2d 858 (1999). At best, Appellant's data, which presumably is the best they have to offer for purposes of this appeal, is inconclusive and does not show the special assessments are disproportional as presented for the record on appeal.

Similarly, the record provided on appeal does not offer any evidence to show disproportionality. There is a dearth of credible evidence provided within the numerous objections filed with the FLTF how the methodology is disproportionate to the benefit derived from the restoration of the water level for the four lakes affected. "[T]he question whether and how much the value of land has increased as the result of certain improvements is factual, to be determined on the basis of evidence presented by the parties." *Kadzban*, 442 Mich at 502. Appellants have failed to present such evidence either in the hearings before Appellees or to this Court on appeal to overcome the rebuttable presumption for a valid special assessment apportionment.

> A Petitioner challenging a special assessment "at a minimum, must present credible evidence to rebut the presumption that the assessments are valid." *Kadzban*, 442 Mich at 505. Only if the petitioner presents sufficient, credible evidence to rebut the presumption does the burden of going forward shift to the municipality. *Deward v City of Farmington Hills*, unpublished per curiam opinion of the Court of Appeals, issued August 9, 2018 (Docket No.337608), p 3.

Accordingly, Appellants have the initial requirement to establish credible evidence to rebut the presumption of validity before Appellees have an obligation to justify the assessment approved by the governmental entities. Appellants have failed to provide the necessary credible evidence to rebut the presumption of validity.

The Court asked Appellants' counsel during oral argument if Appellees needed to have a "without-improvement" and "with-improvement" appraisal done for all 8,170 properties within the SAD to be deemed proportionate on this appeal: "How are [Appellees] going to be able to show what the benefit is, without [the appraisals] if your position is it has to be an increase in market value by the improvement, to show whether it was proportional or not?" Appellants counsel did not provide an answer to the question nor did they have any appraisals for the parcels of property associated with the individual members of the Heron Cove Association showing the levied assessments were disproportionate to the benefit derived from the improvement.

Appellants appear to request some trial-type hearing before this Court, or a remand proceeding to the original tribunal, to address these matters and undertake discovery to more fully develop the record. The Court does not believe the statutory procedure established under the ILLA would be consistent with providing such an opportunity especially where, at a minimum, there would be over 800 parcels of property needing to be reviewed for this appeal. The Court also notes there are additional appeals being pursued by other property owners which were erroneously filed in Gladwin County and stayed pending a decision by the Michigan Court of Appeals, which

subsequently found this Court was the proper venue for any appeal proceeding regarding the special assessment apportionment determination. Appellants were provided an opportunity to present their objections and evidence supporting such objections at the hearings before Appellees and to develop a record to be considered by this Court on appeal, or in the pleadings filed with this Court on appeal. However, Appellants did not create any such record at the hearings before Appellees nor this Court on appeal and is not entitled to an opportunity to supplant the record at this juncture. The Court understands the limitations imposed by the procedures of the ILLA relating to the hearings regarding apportionment of the special assessment roll and the time requirements for filing an appeal to this Court; however, the statutory requirements have been enacted with such dictates and there has been significant time available to Appellants prior to the hearings to have undertaken preparation for those proceedings. The Court is also aware the amount of the special assessment roll was significantly more than the initially estimated amount; however, the process should not be affected by an unexpected amount of the final assessment roll.

Conversely, the methodology put forth by the FLTF takes into account several factors geared towards gauging the benefit each property will derive from the restoration of the lakes, such as the amount of frontage on the lakefront and the lake view. These factors are undoubtedly criteria buyers of lakefront property would take into consideration when purchasing such property and assessing the value for the purchase price. It is common sense to know a lake front property with a lake view would have a higher value than property that had been lake front property previously, but now has extensive bottom lands to traverse to reach any flowing water, nor the previous level of lake view. Appellees articulated a legitimate basis for the methodology to apportion the amount of the improvements needed to restore the level of the lakes and Appellants have failed to overcome the presumption of validity.

Additionally, a number of alterations and adjustments were made to property owners' assessments prior to and at the public hearing on January 15, 2024 based on information furnished by the property owners, as conceded by Appellees in their brief. These modifications of the assessments permitted by Appellees provided a basis for proportionality to be evaluated in determining the extent of benefit derived by each parcel of land from the restoration of the water level of the lakes. Appellants did not have to file an objection or appear at the hearing to preserve their ability to appeal the assessment roll approved by Appellees; however, they are constrained by the record created in the hearing conducted by the tribunals involved in an Inland Lake Level Act proceeding.

### III. CONCLUSION

The Court finds, from the record before it, Appellants have failed to carry their burden and show the special assessments are not supported by competent, material and substantial evidence due to lack of credible evidence rebutting the presumption of validity for a special assessment district apportionment determination. Having failed to do so, the presumption of validity articulated in *Kadzban* and *Dixon Rd* remains unrebutted and Appellants' appeal seeking relief from the FLTF Special Assessment District apportionment is **DENIED**.

**IT IS SO ORDERED.**

This is a final order that resolves the last pending claim and closes the case.

Date: June 20, 2024

Hon. Michael J. Beale
Circuit Court Judge