UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

---

HERON COVE ASSOCIATION, et al,                  Case No. 1:24-cv-11473

             Plaintiffs,

                                 Hon. Matthew F. Leitman

                           Magistrate Judge Patricia T. Morris

v

MIDLAND COUNTY BOARD OF
COMMISSIONERS, and FOUR
LAKES TASK FORCE,

             Defendants.

---

HERON COVE ASSOCIATION, et al,                  Case No. 1:24-cv-11458

             Plaintiffs,

                                 Hon. Matthew F. Leitman

                           Magistrate Judge Patricia T. Morris

v

GLADWIN COUNTY BOARD OF
COMMISSIONERS, and FOUR
LAKES TASK FORCE,

             Defendants.

---

Michael D. Homier (P60318)              Joseph W. Colaianne (P47404)
Laura J. Genovich (P72278)              Zachary C. Larsen (P72189)
FOSTER, SWIFT, COLLINS & SMITH, PC      Bethany G. Stawasz (P75578)
*Attorneys for Plaintiffs*              CLARK HILL PLC
1700 E. Beltline Ave. NE, Suite 200     *Attorneys for Defendant Four Lakes*
Grand Rapids, MI 49525                  *Task Force*
(616) 726-2200                          215 S. Washington Square, St. 200

mhomier@fosterswift.com
lgenovich@fosterswift.com

Lansing, MI 48933
(517) 318-3100
Jcolaianne@clarkhill.com
zlarsen@clarkhill.com
bstawasz@clarkhill.com

Timothy S. Ferrand (P39583)
CUMMINS, MCCLOREY, DAVIS &
ACHO, P.L.C.
*Attorneys for Defendant Gladwin
County Board of Commissioners &
Defendant Midland County Board of
Commissioners*
19176 Hall Road, Suite 205
Clinton Township, MI 48038
(586) 228-5600
tferrand@cmda-law.com

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs, by and through their attorneys, FOSTER, SWIFT, COLLINS & SMITH, P.C., hereby submit their response to Defendant Four Lakes Task Force's Motions to Dismiss (1:24-cv-11473 ECF No. 10, PageID.197; 1:24-11458 ECF No. 9, PageID.291), Defendant Midland County Board of Commissioners' Motion to Dismiss (1:24-11458 ECF No. 10, PageID.502), and Defendant Gladwin County Board of Commissioners' Motion to Dismiss (1:24-cv-11473 ECF No. 9, PageID.76). For ease of reference and for judicial economy, Plaintiffs submit this combined response to all four motions. Plaintiffs rely on the law and argument in the attached brief.

WHEREFORE, for the reasons discussed in the attached brief, Plaintiffs respectfully request that this Honorable Court deny Defendants' Motions to Dismiss.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
*Attorneys for Plaintiffs*

Dated: July 30, 2024                      By: _Michael Homier_

Michael D. Homier (P60318)
Laura J. Genovich (P72278)
FOSTER, SWIFT, COLLINS & SMITH, P.C.
*Attorneys for Plaintiff*
1700 E. Beltline NE Suite 200
Grand Rapids, Michigan 49525
(616) 726-2230
mhomier@fosterswift.com
lgenovich@fosterswift.com

# BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

## STATEMENT OF ISSUES PRESENTED

1.     To have Article III standing, a plaintiff must plead an actual or imminent particularized injury that is traceable to the defendant and may be relieved by the court. An association has standing when its members have standing, the representation is related to the association's purpose, and the individual plaintiffs are not needed to participate. In this case, the individual Plaintiffs have standing because Defendants have levied unconstitutional special assessments against Plaintiffs' properties and the judiciary is capable of remedying Plaintiffs' injuries. Plaintiff Heron Cove Association has standing because its members have standing, representing its members in these proceedings is related to its purposes, and its individual members are not needed to participate.

2.     Under Michigan law, res judicata and collateral estoppel apply when a judgment in the prior proceeding is final. A judgment is final when all appeals have been exhausted. Neither res judicata nor collateral estoppel preclude Plaintiffs' claims because the appellate processes in the first proceedings are just beginning and are separate and distinct proceedings from these original jurisdiction matters.

3.     To plead valid claims, plaintiffs must sufficiently allege all elements of the relevant cause of action. Plaintiffs sufficiently alleged the elements of takings and procedural due process claims in their First Amended Complaint.

## CONTROLLING AUTHORITY

*Pa. Coal Co. v. Mahon*, 260 U.S. 393 (1922)

*Mathews v. Eldridge,* 424 U.S. 319 (1976)

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*United States v. Ritchie*, 15 F.3d 592 (6th Cir. 1994)

*United States v. Dominquez*, 359 F.3d 839 (6th Cir. 2004)

*Curry v. City of Detroit*, 231 N.W.2d 57, 59 (Mich. 1975)

*Dixon Rd. Grp. v. City of Novi*, 395 N.W.2d 211 (Mich. 1986)

*Kadzban v. City of Grandville*, 502 N.W.2d 299 (Mich. 1993)

*In re Project Cost & Special Assessment for Chappel Dam*, 762 N.W.2d 192 (Mich. Ct. App. 2009)

## STATEMENT OF FACTS

These cases, *Heron Cove Association, et al. v Midland County Board of Commissioners, et al*, 1:24-cv-11458, and *Heron Cove Association, et al. v Gladwin County Board of Commissioners, et al.*, 1:24-cv-11473, involve what are believed to be the largest special assessments in Michigan history.

### *The Special Assessment*

In 2019, Gladwin County and Midland County (the "Counties"), through their delegated authority, Defendant Four Lakes Task Force ("FLTF"), successfully petitioned the Gladwin and Midland Circuit Courts to set a normal lake level for Wixom Lake, Sanford Lake, Smallwood Lake, and Secord Lake (collectively the

5

"Four Lakes"), and to approve the boundaries of a special assessment district, pursuant to Part 307 of the Michigan Natural Resources and Environmental Protection Act, Act 451 of 1994, as amended, MCL 307.30701 *et seq* ("Part 307"). (ECF No. 1-2, ECF PageID.35, ¶¶18-19).[1]  The purpose of that special assessment was to raise revenue for operation and maintenance of the dams.

In May 2020, the Edenville Dam failed and the Sanford Dam overflowed, resulting in devasting floods across Midland and Gladwin Counties (*Id*., ¶14). Upon information and belief, in the aftermath of the floods, the Counties claimed substantial loss of tax revenue and tourist traffic (*Id*., ¶¶15, 54). What started as a maintenance assessment then shifted to Defendants' new objectives: rebuilding the four dams and restoring the Four Lakes (*Id*., ¶21).

On February 6, 2024, Defendant Gladwin County Board of Commissioners and Defendant Midland County Board of Commissioners both approved the 5-year operation and maintenance special assessment rolls and the 40-year capital improvement special assessment rolls for the Four Lakes Special Assessment District ("FLSAD"), which are intended to fund a project to restore the Four Lakes following the failure of the Edenville Dam (*Id*., ¶1). Contrary to the requirements of

---

[1] Unless otherwise specified, Plaintiffs will cite to the record in 1:24-11458, *Heron Cove Association, et al. v Midland County Board of Commissioners, et al*.

Part 307, construction on the improvements began **before** the Counties confirmed the special assessments. (*Id.*, ¶35).

### *Heron Cove Association*

Plaintiff Heron Cove Association is a Michigan nonprofit corporation organized "[t]o promote the general welfare of its members, owners of any property along or near Secord, Smallwood, Wixom, and Sanford Lakes, including backlot properties with dedicated access. . ., or any property in or touching the [FLSAD] in or around Gladwin and Midland Counties, Michigan." (HCA Articles of Incorporation, Exhibit A). It is comprised of property owners and those with property interests within the FLSAD. Individual Plaintiffs are members of the Heron Cove Association who own or have interest in property within the FLSAD, representing approximately 750 parcels. (*Id.*, ¶22).

### *Procedural History – Appeal of Assessment*

HCA[2] timely appealed the Counties' decisions pursuant to MCL 324.301714(4) to the Midland County Circuit Court (see excerpts of Amended Claim of Appeal, Exhibit B). In the state court appeal, HCA argued that (1) the Counties' decisions were not authorized by law; (2) the Counties' decisions were not supported by competent, material, and substantial evidence on the whole record; (3) the Counties began construction on the improvement before they approved the

---

[2] "HCA" refers to the individual Plaintiffs and the Association, collectively.

7

financing plan and the special assessment rolls by resolution; (4) HCA's properties derive little to no special benefit or gain in market value from the assessments beyond that provided to the community as a whole; (5) the amount of the assessment imposed on HCA's properties are grossly disproportionate to the increase in market value to the properties; and (6) based on the above, the amount of the assessments imposed were akin to a taking without due process of law. In that appeal, HCA requested the state court vacate the special assessment rolls or remand the matter ordering the Counties assess the properties in amounts roughly proportional to any benefit conferred, as is required by Michigan law. (*Id.*)

On June 20, 2024, Midland Circuit Court Judge Beale denied HCA's appeal (Exhibit C). HCA timely filed a claim of appeal (Exhibit D) and application for leave to appeal (attached as Exhibit E) to the Michigan Court of Appeals, each of which are currently pending at the time of this writing.

<u>*Procedural History – Original Actions*</u>

In March, HCA filed the present actions in state court (ECF No. 1-1, PageID.5). In addition to the arguments raised in the state court appeal, HCA alleged that the appeal process itself was a violation of procedural due process as applied and that it is entitled to just compensation because the vastly disproportionate assessments that mainly benefit the public are a taking (ECF No. 1-2, PageID.44-

49). Defendants removed both actions to this District (ECF No. 1), then filed motions to dismiss in each case on July 9 (ECF Nos. 9 & 10).

## **ARGUMENT**

**I. This Court has subject-matter jurisdiction over Plaintiffs' claims.**

    *1.    Plaintiffs have standing to sue.*

A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1). *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). Generally, the plaintiff bears the burden of proving standing. *Id*. A plaintiff must show "(i) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would be redressed by judicial relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

The Counties' argument that the Association does not have standing is without merit. In the federal system, an association has standing when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Association's purpose is to "[t]o promote the general welfare of its members[.]" (Exhibit A). In these cases, it seeks to protect the property interests of its members

by challenging the special assessments levied against its members' properties. Neither the claims asserted nor the relief requested requires participation of individual members in the lawsuit. Whether the State has adequate procedures or misapplied its procedures can be litigated by the Association, and the Association can adequately represent its members' interests in the fact-finding process necessitated by the takings claims. Thus, the Association here stands in for its members.

Additionally, the Court has inherent authority to control its docket. *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984). The Association was joined in these suits, filed in state court, for the same reasons it joined the state court appeal: for judicial economy. In that appeal, Judge Beale concluded that the Association had standing (Exhibit C, 4).[3]

Furthermore, individual Plaintiffs currently assessed $0 are injured under Defendants' theory that 100% of the cost of the improvements must be apportioned to the FLSAD (see ECF 10, PageID.211). Defendants continuously argue that the normal rules requiring a special benefit to assessed property do not apply to Part 307 special assessments. So under Defendants' theories, they can reapportion the costs and assess these properties at any time and they have said as much (see ECF 11,

---

[3] If the Court determines the Association does not have standing, HCA may seek leave to file a second amended complaint adding class action claims.

PageID.634), and so those Plaintiffs have actual or imminent injuries.

Lastly, the individual Plaintiffs named by Defendants as not owning property in the FLSAD do own or have interests in assessed properties within the FLSAD. (See Exhibit F, "Table of Property Interests" & Capital Assessment Roll).

2. *HCA properly named the County Boards of Commissioners as defendants.*

The Counties also argue that HCA named the wrong entities as parties, claiming that only Midland and Gladwin County could be properly named. Contrary to the Counties' characterization, *Swartz Ambulance Service, Inc. v. Genesee County*, 666 F.Supp.2d 721 (E.D. Mich. 2009), does not stand for the proposition that a board of commissioners is not a proper party. There, plaintiffs sued a county, its board of commissioners, and its individual commissioners, and the court simply dismissed claims that were duplicative. *Id*. at 726. Part 307 specifically states that counties boards of commissioners must affirm special assessment rolls. MCL 324.30714(3).[4]

## II. Plaintiffs' claims are not barred by res judicata or collateral estoppel.

The Counties raise their preclusion arguments pursuant to Rule 12(b)(6) (ECF PageID.517), under which review is limited to the pleadings and allegations in the complaint must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[4] If the Court determines that the County Boards of Commissioners are the incorrect parties, HCA may seek leave to file a second amended complaint naming Midland and Gladwin Counties as defendants.

11

FLTF represents that its preclusion arguments are a factual attack brought under Rule 12(b)(1) (ECF 9, PageID.314). A factual attack "is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "On such a motion, no presumptive truthfulness applies to the factual allegations. . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. In sum, for the purposes of FLTF's 12(b)(1) challenge alone, the Court may properly look outside the complaint.

Generally, it is the plaintiff's burden to establish jurisdiction under Rule 12(b)(1). *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990). However, state law is used to determine whether an earlier action should be given preclusive effect. *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999). "Under Michigan law, the party asserting preclusion bears the burden of proof." *United States v. Dominquez*, 359 F.3d 839, 842 (6th Cir. 2004).

*1. Collateral Estoppel*

Under Michigan law, collateral estoppel has three elements: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment"; (2) "the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co*., 677 N.W.2d 843, 845–846 (Mich. 2004). "For collateral

estoppel to apply, the ultimate issue to be concluded in the second action must be the same as that involved in the first." *Bd. of Cnty. Rd. Comm'rs for Cnty. of Eaton v. Schultz*, 521 N.W.2d 847, 850 (Mich. Ct. App. 1994).

The first element is plainly not met. "A decision is final when all appeals have been exhausted or when the time available for an appeal has passed." *Leahy v. Orion Twp.*, 711 N.W.2d 438, 441 (Mich. Ct. App. 2006). In the first proceeding, the appellate process has just begun: as of this writing, an appeal by right and an appeal by leave are pending before the Michigan Court of Appeals. (Exhibits D and E).

The first and second elements are not met for additional reasons. *First*, in the state court appeal, the issue was (and is) whether the special assessments are invalid because of substantial or unreasonable disproportionality between the assessed amounts and any benefit conferred, due in whole or in part because the underlying methodology for imposing the special assessments was defective. The remedy, when appealing a special assessment, is a reduction or vacation of the special assessment. See MCL 205.732(a). HCA could not seek just compensation in the Part 307 appellate process, even if a court found that the assessments were "akin to a taking without due process of law" under *Dixon Road Group v. City of Novi*, 395 N.W.2d 211, 217 (Mich. 1986). *Second*, just compensation in a regulatory takings case is a factual question. *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 419 (1922); *Murr v. Wisconsin*, 582 U.S. 383, 393 (2001) (the regulatory taking "balancing" test is an

"ad hoc factual inquiry"). Here, the circuit court determined that it was not entitled to make factual determinations (Exhibit C, 5-7). In other words, the parties could not have actually litigated HCA's takings claims, as alleged here, because the circuit court was unable to make factual determinations. In any event, Michigan law is clear that a final judgment has not been entered. See *Leahy*, 711 N.W.2d at 441. The issues are, therefore, not identical, and collateral estoppel cannot bar HCA's claims. *Schultz*, 521 N.W.2d at 849-850. *Third*, the circuit court's judgment did not depend on a finding that a taking did not occur. The circuit court affirmed the special assessments because it stated that HCA did not meet their initial evidentiary burden. (Exhibit C, 9). Accordingly, Defendants' arguments fail.

2. *HCA's claims are not precluded by res judicata.*

Res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. Michigan*, 680 N.W.2d 386, 396 (Mich. 2004). Res judicata does not apply for the same reasons that collateral estoppel does not. The appellate process is just beginning in the first suit. See *Curry v. City of Detroit*, 231 N.W.2d 57, 59 (Mich. 1975) (granting dismissal based upon res judicata after the plaintiff's appellate rights were exhausted); *Zelasko v. Charter Twp. of Bloomfield*, No. 359002 (Mich. Ct. App. May 25, 2023) (noting that an earlier decision was final because the plaintiff did not

14

appeal).[5] HCA's takings claims are not also barred because the first proceeding did not, and could not, address just compensation. Again, the claims are not identical. See *Schultz*, 521 N.W.2d 847.

Under Michigan law, when a decision on a part of the claim is not available in the first suit, res judicata cannot apply to a subsequent proceeding. See *Curry*, 231 N.W.2d at 59; *Gursten v. Kenney*, 134 N.W.2d 764, 766-767 (Mich. 1965). The question in the first suit was whether the assessments were supported by competent, material, and substantial evidence and were authorized by law (Exhibit C). Mich. Const. art. VI, § 28.

The Counties assert that MCR 7.123(G)(2) specifically contemplates that a circuit court can decide the constitutionality of an administrative decision in a direct appeal (ECF 10, PageID.526). However, the rule allows the circuit court to "affirm, reverse, remand, or modify the decision of the agency and" the circuit court "may grant further relief as appropriate based on the record, findings, and conclusions." MCR 7.123(G). The rule does not contemplate a complaint for damages or just compensation. Even when the catch-all provision is considered, none of the remedies

---

[5] These two cases were decided after *City of Troy Bldg. Inspector v. Hershberger*, 183 N.W.2d 430 (Mich. Ct. App. 1970), which the Counties present for the proposition that the circuit court's judgment must be given preclusive effect until reversed, modified, or vacated on appeal. Moreover, *Curry* was decided by the Michigan Supreme Court; *Hershberger* was decided by the Michigan Court of Appeals before November 1, 1990, so it is not binding on the Michigan Court of Appeals. MCR 7.215(J)(2).

enumerated by the rule are akin to a claim for damages or just compensation. See *United States v. Powell*, 423 U.S. 87, 91 (1975) (explaining that the rule of *ejusdem generis* ordinarily "limits general terms which follow specific ones to matters similar to those specified").

Because HCA seeks additional relief beyond what was permitted in the state court appeal (namely, just compensation), this case is not a collateral attack on the first proceeding. See *Lucky Brand Dugarees, Inc. v. Marcel Fashions Grp., Inc*., 590 U.S. 405 (2020).

HCA's due process claims also are not barred. At no point has HCA been allowed to probe Defendants' methodology and discover the true purpose of the special assessments. Again, HCA could not allege constitutional torts and seek damages under 42 U.S.C. § 1983 in the state court appeal. A procedural due process claim under 42 U.S.C. § 1983 can allege that the state did not have a remedy, can allege that state's procedures were inadequate, or can allege that the state misapplied its procedures. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Under the Supreme Court's *Matthews* test*, Mathews v. Eldridge,* 424 U.S. 319 (1976), and its application by the Michigan courts in *In re Project Cost & Special Assessment for Chappel Dam*, 762 N.W.2d (Mich. Ct. App. 2009), the process due to a litigant is flexible, depending on the private interest involved. Here, HCA alleges that the State's procedure, evidenced by Judge Beale's decision that he could not

conduct independent fact finding, was inadequate to protect against arbitrary action against HCA's most sacred rights to remain in their homes or keep their businesses open and that the State has misapplied its own procedure by not allowing any flexibility in procedures when the assessments are this consequential, contrary to *Matthews* and *Chappel Dam*.

In the alternative, this Court could stay consideration of the present motions or these proceedings until the state appellate process has resolved.

## III. Plaintiffs sufficiently alleged both a state and federal claim for inverse condemnation.

HCA raises inverse condemnation claims under the Michigan and Federal Constitutions, respectively. (ECF No. 1-2, PageID.258-261). Defendants argue that both claims should be dismissed for failing to state a claim upon which relief can be granted. (ECF No. 9, PageID.231; ECF No. 10, PageID.528-534).

Both the Federal and Michigan constitutions prohibit the taking of private property for public use without just compensation. U.S. Const., amend. V; Mich. Const. art. X, § 2. "A de facto taking occurs when a governmental agency effectively takes private property without a formal condemnation proceeding." *Merkur Steel Supply, Inc. v. Detroit*, 680 N.W.2d 485, 492 (Mich. Ct. App. 2004). Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by

17

the taking agency." *Mays v. Snyder*, 916 N.W.2d 227, 271 (Mich. Ct. App. 2018) (citation omitted), *aff'd*, 954 N.W.2d 139 (Mich. 2020). "Inverse condemnation can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a 'taking.'" *Merkur Steel Supply*, 680 N.W.2d at 492. Even a partial diminution of value of property by an act of the government is an appropriation. *Peterman v. Dep't of Nat. Res.*, 521 N.W.2d 499, 507 (Mich. 1994) (citation omitted).

Michigan courts require plaintiffs alleging inverse condemnation claims to establish three elements: (1) that the government's actions were a substantial cause of the decline of the property's value; (2) that the government abused its powers in affirmative actions directly aimed at the property; and (3) that the plaintiff suffered a unique injury that is different in kind, not simply in degree, from the harm suffered by all similarly situated persons. *Mays*, 954 N.W.2d at 272.

In the present cases, HCA pleaded all three elements of inverse condemnation. *First*, HCA alleges that its properties' net values decreased because of Defendants' enactment of special assessments that run with the properties. (ECF No. 1-2, PageID.259). The assessments decrease the net value of their properties because they are excessive, contrary to law, and may result in the forced sale of homes and businesses that cannot afford the assessments or even worse, foreclosure by the government for non-payment. HCA also alleges that their properties actually saw a

comparatively substantial increase in their property values without the dams and without the Four Lakes, and these increases cannot—at least not without meaningful review—be attributed to the possible return of the Four Lakes without a showing that the improvements add to property values in addition to the macro-economic factors that have dramatically increased property values in the region and nationwide. (ECF No. 1-2, PageID.258)

*Next*, HCA pleaded that Defendants abused their power to enact special assessments for public improvements by assessing property *only* within the FLSAD to raise funds for the benefit of the Counties as a whole. (ECF No. 1-2, PageID.259). FLTF acknowledges the economic benefit the Four Lakes are to the Counties—not just the lakefront properties. (ECF No. 1-2, PageID.257). Yet Defendants chose to assess *only* those lakefront properties to support what is, in reality, a two-county-wide economic development plan. In other words, the improvements were more pointedly a public benefit than a private benefit for which the Defendants are constrained in the amount of assessments levied against HCA's properties.

Lastly, HCA alleged that they suffered an injury unique in both kind and degree: that they alone would bear the cost of restoring the Four Lakes for the benefit of the general public. (ECF No. 1-2, PageID.257). Admittedly, HCA's injuries are not unique *in kind* from each other—although they vary in degree. However, they

are unique in kind from all other property owners in the Counties who will benefit from new, public lake access without suffering a loss in net property value. (*Id.*).

Similar to Michigan's, the Federal Takings Clause applies when the government appropriates private property for the benefit of others. The Clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). For the same reasons discussed immediately above, HCA sufficiently pleaded a takings claim under the Fifth Amendment.

## IV. Plaintiffs sufficiently alleged procedural due process claims.

HCA sufficiently alleged a deprivation of procedural due process.[6] "Due process is flexible and calls for procedural protections as the particular situation demands." *Matthews*, 424 U.S. at 334. Under *Matthews*, courts weigh several factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

---

[6] The Counties' assertion that Plaintiffs' due process claim is substantive rather than procedural, (ECF No. 10, PageID.536, n 4), is incorrect. A litigant cannot plead substantive due process when the underlying claim involves an enumerated right. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (when the Constitution provides specific protection against a particular government behavior, that provision guides analysis).

administrative burdens that the additional or substitute procedural requirement would entail. [*Id.* at 335.]

In *Chappel Dam*, the Gladwin County Drain Commissioner determined that a dam required $2.04 million in repairs and that the costs to repair the dam would be divided between the property owners in the special assessment district and at-large to the county and the township. 762 N.W.2d at 193-194. After determining the apportionment, pursuant to the Part 307, the drain commissioner held a public hearing. *Id.* at 194. Soon thereafter, the Gladwin County Board of Commissioners approved the special assessment roll, and the petitioners appealed to circuit court. *Id.* In an expedited fashion, solely on briefs and in in short order, the circuit court affirmed. *Id.* at 197-198.

Reviewing the circuit court's procedures, the court of appeals rejected the argument that the circuit court was required to hold an evidentiary hearing.  *Id.* at 196-197. But the court reiterated the principle that the process due in any matter depends on the particular interests at stake. Compared to a $2 million special assessment, the capital assessment in these cases is more than $217 million. HCA alleged the assessments will lead to foreclosures (ECF 1, PageID.44).

But even more, an illegal change of purpose occurred here. What began as a special assessment district to maintain normal lake levels through operations and maintenance transformed into a special assessment district to completely rebuild four dams (ECF 1-2, PageID.37). Yet "[a] municipality cannot establish a special

21

assessment district to fund a specific project but then use the proceeds derived for an alternative project, even if that alternative serves the purpose envisioned by the original project." *NDC of Sylvan, Ltd. v. Twp. of Sylvan*, No. 301397, slip op at 5 (Mich Ct. App 2011) (Exhibit G). After the Edenville Dam collapsed, Defendants turned their attention to reconstructing the dams. When that switch was made, the circuit court had already confirmed the FLSAD and the time to appeal that decision had expired. From 2023 to 2024, the unfunded cost to reconstruct the dams increased from approximately $70 million to $217 million (ECF 1, PageID.38). The public did not bear any of the cost increase despite the obvious, direct public benefit. Instead, private property owners in the FLSAD are required to foot the bill.

To date, HCA has been denied the opportunity for independent fact-finding. Contrary to the circuit court's determination, review is available by an independent fact finder—not just by the governmental unit imposing the assessment—across Michigan law. See e.g., MCL 205.737 (governing fact finding by the Tax Tribunal; MCL 280.106 (providing for boards of review for drain assessments). In short, the State's process is inadequate under these circumstances, the available State process does not offer a remedy, and/or the state misapplied its procedures. See *Hahn*, 190 F.3d 708. The Michigan Supreme Court has continuously held that independent fact finding is required to support special assessments when a challenge is raised regarding the lack of special benefit conferred on the assessed properties. *Dixon*, 395

N.W.2d at 216-217; *Kadzban v. City of Grandville*, 502 N.W.2d 299 (Mich. 1993) (six of seven justices based their opinions on the evidence presented to an independent factfinder). Accordingly, Plaintiffs sufficiently pleaded claims for procedural due process.

## **Conclusion**

For these reasons, HCA requests that the Court DENY all pending motions to dismiss in both cases.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
*Attorneys for Plaintiffs*

Dated: July 30, 2024              By:_____

Michael D. Homier (P60318)
Laura J. Genovich (P72278)
FOSTER, SWIFT, COLLINS & SMITH, P.C.
1700 E. Beltline NE Suite 200
Grand Rapids, Michigan 49525
(616) 726-2230
mhomier@fosterswift.com
lgenovich@fosterswift.com

89232:00001:200700498-8