# EXHIBIT E

STATE OF MICHIGAN
IN THE COURT OF APPEALS

---

HERON COVE ASSOCIATION, on behalf
of its members, and individually by its
members: JEFFERY DANA; JUDY
DANA; DEBORA ADAMS; MICHAEL
ADAMS; SHANNON ADAMS; JAMIE
ADAMS; RIC ADER; SALLY ADER;
MICHAEL ADOLPH; DARLENE
ADOLPH; CLIFFORD ALLEN;
ANDREW ALLEN; PAUL ALLEN;
JAYNE ALLEN; PAMELA ALLEN;
JULIE ALLEN; CHRISTINE ALLEN;
LEONARD ALLEN; DAVID
ALTENBERNT; JACOB ALTENBERNT;
CONNIE ALTENBERNT; BRITTANY
ALTENBERNT; EDWARD
ARSENEAULT; AMY ARSENEAULT;
DICK ARTHUR; DOREEN ARTHUR;
DENNIS ATHEY; PATRICIA ATHEY;
BRAD AVER; KRISTY AVER; KURT
BAKER; SANDRA BAKER; CYNTHIA
BALHORN; JAQUELINE BALHORN;
JOSEPH BALHORN; RICHARD
BARLOW; RAYMOND BARTON;
PAMELA BARTON; DOUGLAS
BASHUR; MELANIE BASHUR; RAY
BAUERS; MARIE RISTE; SCOTT
BAUMGART; ROBERT BAZINET;
MICHAEL BAZZLE; AMY BAZZLE;
ROBERT BEAUCHAMP; DEBRA
BEAUCHAMP; MARY BETH BECHTEL;
CAROLINE GOICK; MICHAEL
BECKHAM; KEN BELLHORN;
GEORGE BENCI; JOHN BENCI;
SHARON BENCI; ROBERT BENNETT;
TAMMY BENNETT; GILBERT
BERNIER; JACQUELINE BERNINGER;
ALYSIA BERTHIAUME; LINDA
BEVERIN; SUSAN E. BEYER; GARY
BISHOP; KRYSTAL BISHOP; JASON
BISKNER; STACEY BISKNER; JUDY
BOMAN; GARY BOOTH; HOLLY
BOOTH; RONALD BOWMAN; CLARA

Docket No. _____

Midland Circuit Court
Case No. 24-2751-AA

RECEIVED by MCOA 7/11/2024 4:10:31 PM

BOWMAN; STACI BOYNTON; ELAINE
BRANCHEAU; SHAWN BRANCHEAU;
KATHLEEN BREWIS; CARY BREWIS;
SCOTT BRICHACEK; RACHELE
BRICHACEK; JIM BRINK; AMY
BRINK; AJ BROCK; CYNTHIA BROCK;
JAMES BROSIER; PAULA BROSIER;
DAVID BROWN; FRED BRYAN; LISA
KINSEY; FRED KINSEY; ROBERT
BUNKER; JANICE BUNKER; JACK
BURNIAC, JR.; ANDREW BYCE;
KAREN BYCE; JIMMY CAIN; CATHY
CAIN; PAT CALAHAN; JENNIFER
CALAHAN; JAMES CALDWELL;
PATRICIA CALDWELL; RENEE
CALHOUN; MICHAEL CAMPBELL;
MELANIE CAMPBELL; ROBERT
CAPELING; JENNIFER CAPELING;
WAYNE CASKEY; JOSETTA CASKEY;
JANIS A.E. COLTON; TIMOTHY COOK;
NICHOLAS COON; ANN COON;
ROBERT COWGILL; RICHARD COX;
CAROLYN COX; ROBERT CUBBA;
RITA CUBBA; KEITH DANIELS;
PATRICIA DANIELS; DONNA DAVIS;
BRADLY DAVIS; LOU ANN DAVIS;
STACY DAVIS; GENE DAVIS; KIM
DAVIS; JO ELLEN DE VUYST;
KENDALL DE VUYST; KRISTINA
DELISLE; KEVIN DELISLE; GARY
DELONG; BELINDA DELONG; DAWN
DENMARK; ROD DENMARK;
BRADLEY DENNINGTON; DAVID
DINSMORE; PAMELA DINSMORE;
TERRIL DISCH; TERRY
DONAKOWSKI; CHERYL
DONAKOWSKI; RICHARD DOWNING;
SUSAN DOWNING; LEANNA DOYLE;
NICK DRYE; TIFFANY DRYE; TERESA
DUFRESNE; MICHAEL DUNCAN;
SCOTT DUNCANSON; CAREY
DUNCANSON; JOHN DURANCZYK;
THOMAS DWYER; STEPHANIE
DWYER; DAVID EBENDICK; ROBIN
EBENDICK; KARI W. FARLING; BETH
MANSFIELD; MICHELLE

RECEIVED by MCOA 7/11/2024 4:10:31 PM

FARRINGTON; JOHN KAPRAL;
BOBERT FAVREALL; CHARLES
FEGREUS; PATRICK FELD; ROBERT J.
FERGUSON; SHARON FERGUSON;
REBECCA FIELD; JESSICA FINNERTY;
LUANN FOLLETT; KEITH FOREN;
CHARLOTTE FOSGARD; WALTRAUD
FUSCO; MARK GAHRY; CARL
GARBACIK; KAREN GAWRON; JAMES
GEROMETTEE; GIOVAINA
GEROMETTEE; THADDEUS
GIERALTOWSKI; MARY ANN
GIERALTOWSKI; JEFFERY GIGNAC;
BARBARA GIGNAC; JILL GLINSKI;
JEROME GLINSKI; GARY GNYP;
MARY GNYP; EILEEN
GOLDSWORTHY; CURTIS GOLL;
MARTHA GOLL; JILL R.
GOODEMOOT; TIMOTHY GORDERT;
GERARD GOWAN; MICHAEL GREEN;
JEFF GRONAU; DONNA GRONAU;
DOUG GROSSMAN; CONNIE GROVE;
RON GUSTINE; LISA GUSTINE; JANET
HABERLAND; JAMES HANKERD;
KIMBERLY HANKERD; JEREMIE
HANNA; DANIELLE HANNA; HARRY
HARTFIELD; KENNETH HARVILLE;
JOSHUA HARVILLE; JESSICA
MINARD; JAMES HAWLEY; KIM
HAWLEY; LORRAINE HEDRICH;
BRIANT HEISER; KEVIN HENNESSY;
SANDRA HENNESSY; JUDY GERRIE
HERNANDEZ; GAIL POST-HEROLD;
JOHN HIGHFIELD; JENNIFER
HIGHFIELD; DAVID HILDEN; SALLY
HILDEN; GEORGE HILLIARD; LORI
HILLIARD; CHARLES HILLIKER; RUSS
HIUMENIAK; JENNIFER HIUMENIAK;
JAY HOCKING; SUSAN HOCKING;
MARIANN HODGE; GARY HOMMEL;
MARY JO HOMMEL; MICHAEL
HOPKINS; CHARLENE HOPKINS;
JONATHAN HOZESKA; CARRIE
HOZESKA; MICHAEL HUBER; CARRIE
HUCKINS; GORDON HUCKINS;
BEHZAD HUSSEINZADEH; PAMELA

RECEIVED by MCOA 7/11/2024 4:10:31 PM

HUSSEINZADEH; DANIEL IGNACE;
DANA IGNACE; DAN INMAN;
BEVERLY INMAN; CHARLES
IRELAND; GERI IRELAND; JOHN
JAKUBIEC; DENNIS JOHNSON;
ROGER JOHNSON; KIM JOHNSON;
SONG CHA KANG; KAL KAUFMANN;
GINA KAUFMANN; RICHARD
KEDZIOREK; DIANE KEDZIOREK;
ALBERT KEEN; CYNTHIA KEHOE;
MELISSA KELLER; JOE KELLOGG;
STACIE KELLOGG; IRENE KENNEDY;
KVLA KENNETH; KATHLEEN
KENWORTHY; DAVID KINGSBURY;
RITA KINGSBURY; DANIEL KINNER;
CHERYL KINNER; JAMES KNIEPER;
MICHAEL KOLANOWSKI; VICKY
KOLANOWSKI; JASON KOZAK; KATIE
KOZAK; KEVIN KRAFT; DONA
KRAFT; GEORGE KRATZ; KRATZ CO.
LLC, RAYMOND KRUEGER; JOSEPH
KRUEGER; SYLVESTER KIM;
RODNEY KRUGER; SHARON
KRUGER; THERESA KRYS; LYLE
SHIFFER; PATRICK KUCHER;
MONICA KUCHER; KATIE GRUND;
BRANDON GRUND; DEREK
KUNDINGER; ANGELA KUNDINGER;
ARTHUR KUPIEC; LOUISE KUPIEC;
MICHELL LAFOND; ROBERT
LAGRAFF; BRENDA LAGRAFF; JOHN
LANG; BETHANY LANG; ALAN
LARSON; ANDREA LARSON; ED
LASKE; COLLEEN LASKE; MICHAEL
LATHROP; MARTIN LATHROP;
CRYSTAL LATHROP; TYLER
LATHROP; CHRISTAL LATHROP;
SHARON LEACH; EDWARD LEACH;
ED LEE; KIMBERLY LEE; LARRY
LESTER; GERALD LICQUIA; KAREN
LICQUIA; WILLIAM LINDBERG;
MARK LINDENMUTH; PERRI
LINDENMUTH; CATHERINE LOVE;
DAVE LOVEJOY; RITA LOVEJOY;
BRUCE LOVELACE; KAREN
LOVELACE; DAVID LULEWICZ;

RECEIVED by MCOA 7/11/2024 4:10:31 PM

SHERYL LULEWICZ; KRISS LYONS;
KIM LYONS; RANDALL MAGEE;
CAROL MAGEE; STEVEN MAKOWSKI;
JANINE MAKOWSKI; MARY
MALONEY; TERRY MARICK; KEVIN
MARICK; BRENT MARKO; DAVID
MARR; DENZEL MARTIN; SHARON
MARTIN; ALVIN MATICH; BRIAN
MATTHIAS; CINDY MATTHIAS;
TIMOTHY MCATEER; PATRICIA
MCATEER; MELISSA MCATEER;
JAMES MCATEER; DENNIS MCBRIDE;
PATRICIA MCBRIDE; WILLIAM
MCCRANDALL; MARETTA
MCCRANDALL; FLOYD MCDONALD;
JOYCE MCDONALD; RANDY
MCDONALD; RENEE MCDONALD;
CAROL MCDONALD; KRISTINA
MCDONALD; SHELLY MCEOWN;
MAC MCKELLAR; CHRISTOPHER
MILLER; DARRELL MONDAY;
TAMELA MONDAY; KEVIN MOORE;
JAMES MORSE; CONNIE MORZINSKI;
RANDALL MORZINSKI; DANIEL
MOTT; KAREN MOTT; BETTY
MULLIN; EDWARD MULLIN;
TIMOTHY MURPHY; KRAIG OLIVER;
KAREN MYERS; GREG NELSON;
ANNETTE NELSON; JARED NICKEL;
HUNTER NORRIS; NICHOLAS
JERMAN; YVETTE OARD; DANNY
OKONIEWSKI; JAMES OLSON; JANET
OLSON; KAREN OLSON; ALFRED C.
OLSON III; DEBRA OLSON; ERIKA
OSTASZEWSKI; AARON
OSTASZEWSKI; CHARLES BARNES;
JEFF OTTO; MARY OTTO; DANIEL
OUILETTE; LISA OUILETTE; DONALD
PALMATEER; BENNETT PALMATEER;
HAZEL PARSONS; DAVID
PARTRIDGE; CINDY PARTRIDGE;
JOSEPH PEELISH; KELLIE PEELISH;
MATT PEER; TERI PEER; NANCY PEIL;
CHRISTINE PELLAR; DONALD
GUNTHER; NORMA GUNTHER;
MATTHEW PENNEY; NACEY

PENNEY; ANDREW PETERS;
DOUGLAS PETERSON; CHRISTINE
PETERSON; SCOTT PETHERS; MARK
PFENNINGER; PAMELA PHILLIPS;
LAWRENCE PHILLIPS; ROCHELLE
PHILLIPS; EDWARD PINKSTON;
JEFFERY PITTS; JUDIA PITTS; BRUCE
PLOWMAN; LISA PLOWMAN; DARIN
POPE; RICKY PORTER; JAN PORTER;
DANNY POYNER; JANEEN POYNER;
HOLLI POYNER; KAREN RADCLIFFE;
PATRICIA RADCLIFFE; KEVIN RAMM;
BRADLEY RAUSCH; LORRAINE
RAYMOND; DEAN A. READER;
TAMRA L. READER; READER FAMILY
TRUST; AMY REGINEK; TIMOTHY
REILLY; DIANA REILLY; CRAIG REIS;
KIMBERLY REIS; JEANNE RESKE;
DAVID RETAN; AMY RETAN; DOUG
REX; LORI REX; KATHLEEN
RHYNARD; LATASHA RHYNARD;
LAWRENCE RICE; PETRENIA RICE;
CHARLOTTE RILEY; ROBERT
UMPHREY; ADAMS RIVAS; WILLIAM
ROBINSON; REBECCA ROBINSON;
JAMES ROGERS; RANDALL ROGNIER;
PATRICIA ROGNIER; CARL ROLL;
COLETE BECOLE; ASHLEY ROSE;
CAREN ROSE; CHRIS ROSE; NEIL
ROSS; CYNTHIA ROWLEY; GREG
RUPPEL; CHRISTY RUPPEL; DAVID
RYMAS; AMY RYMAS; REZA
SAFFARIAN; CHERYL SAFFARIAN;
WILLIAM SAROS; LAURA SAROS;
JOHN SAXON; JEFFERY SCHAFFER;
RONALD SCHMIDT; PAMELA
SCHMIDT; GREGORY SCHOWALTER;
TAMARA SCHOWALTER; GARY
SCHULZ; KRISTEN SCHULZ; FRANK
SCHUMACHER; JUNE SCHUTT; TIM
SEAGRAVES; KATHY SEAGRAVES;
ENDRE SEFCSIK; ROBERT
SEIBERLING; JAMES SEIGLA; CAROL
SEIGLA; LARRY SERRELL; BARBARA
SERRELL; MARLENE SHEBESTER;
ARCHIE SHEBESTER; KEFF SIELOFF;

RECEIVED by MCOA 7/11/2024 4:10:31 PM

KIMBERLY SIELOFF; DAVID SILEO;
DEBORAH SILEO; ROBERT SIMS;
TRACY SIMS; DAWN SISK; RONALD
SIZELAND; SUSAN SIZELAND;
TRAVIS SMITH; RONALD SMITH;
GEORGE SMITH; RONDA SMITH;
EDWARD SOWA; DINA
FRANCESCUTTI; JAMES SPARBECK;
JEFFREY SPARBECK; EDWIN
SPECKHAEDT; ANTHONY STAHL;
DAVID STAHL; NORA STAHL; DEAN
STALDER; ANDREW STEPHENSON;
MARIE STOCK; MICHAEL STOCKER;
DENVER STOCKER; LARRY
STOINSKI; RUTH STOINSKI; WAYNE
STOVER; LINDA STOVER; JAMES
STRADTNER; KELLY STRADTNER;
RONALD STREETER; SANDRA
STREETER; CHRISTINE STUMPO;
JOSEPH STUMPO; TODD SULLIVAN;
RACHEL SUNDE; DEBARAH
SUWINSKI; LAWRENCE SUWINSKI;
JOHN SYDENSTRICKER; THERESA
SYDENSTRICKER; STEVEN TAYLOR;
LORETTA TAYLOR; DAVID
THIBODEAU; LINDA THIBODEAU;
DAVE THOMAS; JAMES THOMAS;
MARK THOMAS; VICKI THOMAS;
LOWELL THOMAS; BRIAN
THOMPSON; CARMAN THOMPSON;
THOMAS THOMSON; KELLY
THOMSON; THOMAS J. THOMPSON;
LINDA C. THOMSON; JANICE
TORREY; GARY TRELFA; DIANE
TRELFA; SCOTT TRINKLEIN; DOUG
KRUGER; LENORE TROIA; CYNTHIA
ABBS; DAVID TROMBLEY; GORDON
TROYANEK; TRAVIS TWITCHELL;
BEATRICE TYREE; DAVID VALICE;
LINDA VALICE; JAMES VAN HORN;
DEBORAH VAN HORN; MARKO
VANCE; MARYANN VANCE;
WILLIAM VASICEK; MICHAEL L.
VERELLEN; COURTNEY VERELLEN;
MARY ELLEN VERELLEN; JAMES
VOGT; SUSAN VOGT; KRISTIN

RECEIVED by MCOA 7/11/2024 4:10:31 PM

WAGNER; RYAN BENJAMIN WAHL;
JOSHUA WALLACE; ANDREA
WALLACE; MICHAEL WALRATH;
MICHAEL WARNER; KELLY
WARNER; THOMAS WARSHEFSKY;
RON WASCHER; MARY WASCHER;
JAMES WAZNY; PAMELA WEIRMIER;
GENE WEST; WANDA WEST; KEVIN
WESTLAKE; SARAH WESTLAKE;
DOUGLAS WHEATLEY; LINDA
WHITE; NORMAN WIESKE;
SAMANTHA WILLIAMS; TIMOTHY
WILLIAMS; ANGELA WILLIAMS;
JEFFERY WILLIAMS; EARL WILSON;
RICHARD WING; THERESA WING;
BARB WIRTZ; LEROY WOODS;
GLENDA WOODS; RALPH
WYRYBKOWSKI; DARLENE
WYRYBKOWSKI; KENNETH YEAGER;
CATHRYN YEAGER; JAMES YOUNG;
TRACY ZWICK YOUNG; STEVEN
ZASTROW; LORI ZASTROW;
MAURICE L. ZEMLICKA; ELIZABETH
C. MORSE; MICHAEL ZREPSKEY;
PATRICE ZREPSKEY; ORLANDO
ZUNIGA; MARGARET ZUNIGA;
ALBERT VARDUKYAN; TED YANKO;
KIM KEELEY; DAVID TAYLOR;
VERNON VERKENNES; SHERYL
WALDING; ROBERT PRICE; KAREN
PRICE; THOMAS ROGERS; MELESSA
MANNINO; ALLAN LEONARD; JOHN
KRETZSCHMAR; CRYSTAL
MCMAHAN; LISA MORRISON; PETER
SARACINO; COLLEEN TAYLOR;
RUTH ANN BAZZANI; LYNN MARIE
RAU; EDWARD RAU; HARRY
WAGNER; MELISSA FRANKEL-
WAGNER; JAY RICKERT; KRISTINE K.
RICKERT; TERRY YORK; DENISE
YORK; CASMIER ZOMERFELD;
ANDREA ZOMERFELD; MARTHA
DICK; NOLAN HARVEY, II; DIANE
HAMMOND; JESSICA FESING;
NATHAN FESING; MICHAEL RYBAK;
CHRISTINE RYBAK; MICHAEL

RECEIVED by MCOA 7/11/2024 4:10:31 PM

MIKOLAJEWSKI; GARY HORNE;
ROBERT GRADOWSKI; NICOLE
MIKOLAJEWSKI; DIANE HORNE;
JULIE GRADOWSKI; HAROLD MERTZ,
JR.; DIANA MERTZ; ALBERT; ANGEL
HARRISON; DANIEL KELLAN; PAUL
LAY; DENNIS KLOTT; AARON
JOHNSTON; SHANDA JOHNSTON;
DENNIS LYONS; SANDY LAY;
DEBORAH KLOTT; VICKI LYONS;
JACQUELINE BALHORN; GAIL
BARRON; RHONDA GOODWIN; ART
GOODWIN; MATTHEW FINNERTY;
JONES; JENNIFER LINTS; MARY
KENNEDY; JEFFREY KLINE, SR.;
KENNETH KULA; KELLY MCGRATH;
DONNA KULA; DUANE BARRON;
TRAVIS BARRON; DOUGLAS C.
PETERSON; CHRISTINE M.
PETERSON; MICHAEL SANDER;
JOANN SANDER; JULIE MILLS;
DEIDRE DONALD; HENRY DONALD;
TIMOTHY ALVESTEFFER; BILL
BACON; LINDA L. BEDELL; JAMES L.
BEDDELL; KIMBERLY BORCHARD;
TIMOTHY DANA; TOM BOWLAND;
TERRY BUSHRE; DIAWA BUSHRE;
GAYLORD CHENEY; SHARON
CHENEY; DAVE CIANEK; TRACY
COATES; BRETT COTTON; BOBBIE
CRAWFORD; SUSAN CURRY;
CLEMENT CURRY; KENNETH
DENMARK; ROXANNE FETTIG;
ANDREW GIEDROCZ; RUTH
GIEDROCZ; SYLVIA GILVIDIS;
LELAND GORMLEY; KENNETH
HOWDEN; MICHAEL JERRY; KATHY
JERRY; PATRICIA JEWETT; GORDON
JEWETT; KARL KACEL; NEHIL
KEELEY; LEONA KOZLOWSKI;
RICHARD LABRENZ; VIRGINIA
LOOSE; DOUGLAS LOOSE; DARIN
LUNSFORD; FREDERICK LYONS;
NANCY LYONS; ROBERT MAXWELL;
PENNY MAXWELL; DARLENE
MCDADE; JAMES MCDADE; ROBERT

RECEIVED by MCOA 7/11/2024 4:10:31 PM

MCMANUS; MICHELLE MCMANUS;
BRIAN MILLER; TERRY MILLER;
DAWN MILLER; DAVID NOPPE;
NADINE NOPPE; WAYNE O'DELL;
WALDEMAR PAETZ; SANDRA PAETZ;
MARSHA DELISO; PETER DELISO;
IRVIN POTTS; ROSEMARIE POTTS;
JEFFRERY POTTS; JUDITH POTTS;
TERRY RAMIREZ; CHERYL RAMIREZ;
JACOB ROESE; JENNIFER
SALISBURY; MELISSA SCHAFER;
GREGORY SCHARBONEAU; MARY
ANN SCHARBONEAU; MARK
SCHNEIDER; KEITH SHATTUCK;
KATHLEEN SHATTUCK; GARLAND
SNEED; LILA SNEED; JIM SPERLING;
MARGE SPERLING; DENNIS
STANKEWICZ; MERRILEE
STANKEWICZ; BRUCE THIBODEAU;
TONI THIBODEAU; ARLENE THORP;
MARY TURVEY; STEPHEN
WYZYWANY; KAREN WYZYWANY;
JOSEPH ZAWISLAK; BONNIE
ZAWISLAK; MICHELLE ZEMLICAK;
SHARON MAXWELL; JOHN PESSINA;
PHYLLIS BOMAN; LINDA BOMAN;
CAROL KUBINSKI; LISA DIESBOURG;
LEYNA WERNER; DENNIS WERNER;
MICHAEL BACHER; MELINDA
BACHER; JOHN BOOS; MARY BOOS;
SUSAN BURTCH; ROBIN BUSECK;
RICHARD CASTRO; PATRICIA
DEGASPERIS; PAUL DEGASPERIS;
DIANA L. COLE TRUST; KAY
DURANCZYK; TONY DURANCZYK;
SHARON GILLETTE; ANDREW
STEPHENSON; RICHARD
GRZEGORCZYK; LEZLEY
GRZEGORCZYK; D.; JOAN JOHNS;
DIANE KOSHT; WILLIAM LAI;
MARINA LAI; HENRY LEICH; CHERYL
LEICH; ANDREA LEWIS; MARILYN
MEYLAN TRUST; DALE MYERS;
ROBERT NIENHAUS; SHERYL
NIENHAUS; CAROL OUELLETTE;
NANCY PIETZ; RICHARD & DONNA

LABRENZ TRUST; KELLY RUSSELL;
VIRGINIA RUSSELL; ROSEMARY
SAVAGE; KENNETH SAVAGE;
KENNETH SESTO; DENISE SESTO;
CATHERINE SESTO; JAMES SESTO;
LISA SHOWEK; JOHN TRACY;
LORRAINE TRACY; LOST ARROW
RESORT; TITTABAWASEE RESORT
LLC; MICHELYNNE ADDINGTON;
CHARLES ADDINGTON; MARJORIE
ALLMAN; ROGER ANTEAU; WENDY
ANTEAU; JERRY ATKINSON;
THERESA ATKINSON; BRAD AUER;
KRISTY AUER; JENNIFER AUTY;
TERRIE BABBITT; MICHAEL G.
BARTLETT; MICHAEL BERGER;
ASHLEY BERGER; SCOTT BIGELOW;
BRIAN BRADEN; SARAH BRADEN;
LAWRENCE BRADY; CAROL BRADY;
DANIEL BRODAK; LOREN BRUNGER;
GLENDA BRUNGER; DAVID
CANNING; HELEN CANNING; BRUCE
CARTER; SHERRY CARTER; KAREN
CENTOFANTI; MICHAEL CHRISS;
SHARON CHRISS; SHERYL
DENMARK; DANIEL DIONNE; DAWN
DIONNE; DONALD DRAYTON;
WENDY FABER; ROBERT FABER;
ROBERT KELEY; GEORGE
FERGUSON; LYNDA FERGUSON;
MICHAEL GRIFFIN; SUSAN
GRITZINGER; ANTHONY GROHMAN;
JAMES HARDY; TONYA HARDY;
BONNIE HARGRAVES; LORRAINE
HEDRICK; LESLIE HESS; BRENDA L.
HILLIKER; WILLIAM HOGREBE;
PATRICIA HOGREBE; ALLAN INNES;
JEFFREY KALETO; ROBERT KELLEY;
JOSEPH KELLOGG; JEFF KINNE;
SANDY KINNE; ANDREW KRIEGER;
FRANK LEVENICK; MICHELLE
LEVENICK; TIMOTHY LONG;
ROXANNE LONG; ASHLEY LOTHIAN;
BRAD LYON; KIM LYON; DERALD
MARSH; KITTY MASCARO; WILLIAM
MASCARO, JR.; JOHN MCCANN;

RECEIVED by MCOA 7/11/2024 4:10:31 PM

MARY MCCANN; GERARD
MCGOWAN; ARICKA MEALBACK;
CARLTON MILLS; JANICE MILLS;
ALEXANDRA MURPHY; MICHAEL
MURPHY; DAVID J. MURRAY;
FREDRICK MURRAY; ROSEMARIE
MURRAY; ROBERT NEIIENDAM;
JENNIFER NEIIENDAM; WAYNE
ODELL; DANIEL OUILLETTE; LISA
OUILLETTE; GEORGE PATTERSON;
TAMMY PATTERSON; DUANE LEE
PAUL; ANTHONY A. PAVONE;
MATTHEW PENNY; NANCY PENNY;
NICHOLAS PHILLIPS; KARENA
PHILLIPS; DARIN POLE; DENNIS
RADCLIFFE; MARK L. RAMER; DAVID
RANDALL; TONY REEDY; MAUREEN
REEDY; RANDAL REGNIER;
PATRICIA REGNIER; PETRINA RICE;
DANIEL RITTER; ETOILE RITTER;
CYNTHIA ROBINSON; CASEY ROSS;
STEPHANIE SABIN; LARRY SCHMIDT;
SHARON SCHMIDT; ROBERT
SCHOOLEY; ANNE SCHOOLEY; PAUL
SHERYL; JOHN SMILNAK; LAURIE
SMITH; EDWIN SPECKHARDT;
MONICA SPECKHARDT; PATRICIA
SPENCER; MARK SULLIVAN;
LATASHA SULLIVAN; NANCY
THORP; CHAD TOMS; JULIE ANN VAN
AMEYDE; ROBERT WOODRUFF;
CINDY WOODRUFF; STEVE
WORPELL; TERRI WORPELL; WHITE
FAMILY TRUST; PRESTON L. MARSH
TRUST; GARY L. MEYLAN TRUST;
ESTATE OF MARK AUTY; LANCE
HUGHES; JOYCE SCHOFIELD;
JEFFREY FLETCHER; RICHARD
GREGOR; ANGELA GREGOR; JERRY
ATKENSON; THERESA ATKENSON;
RICHARD KOVALCIK; SUSAN
MONROE; GEORGE E. MONROE; and
ANDREW KRIEGER,

       Plaintiff/Appellants,

RECEIVED by MCOA 7/11/2024 4:10:31 PM

and

DIANE OLIVER; WENDI SIGOURNEY;
BRIAN ABRAHAM; JAYNA
ABRAHAM; TOMS FAMILY TRUST;
BRYCE PAULSEN; SUE BEYER; JANA
BARRINGER; LAURIE AGUIRRE;
CHARLES AGUIRRE; RONALD KLINE;
MICHELLE KLINE; TINA ROSSI;
DANIEL WOZNIAK; ROBERTA YAGER
KELLAN; REBECCA TROMMER;
JAMES TROMMER; SANDRA
PRIEMER; MICHELE HARDY;
ANDREA LOPEZ; ELISE ALLIE; SCOTT
HOUSER; REVA WILLIAMS; HALINA
BULAT; MICHAEL MERCIER; TARAH
MERCIER; JOHN CAREY; BEVERLY
CAREY; RICHARD MILLER; JUDY
MILLER; RYAN KELATO; SHERRY
DICK; MISSY KELLER; GARY
KELLER; TORY SHOWEK; JULIE
WISKUP; GEORGE WISKUP; RICHARD
LAPOINTE; CHRISTINE LAPOINTE;
LORI WENDLING; MATTHEW
WENDLING; DANEIL EICKHOFF;
JULIE EICKHOFF; BRIAN DANKERT;
PATRICIA DANKERT; SCOTT
BIGELOW; MICHAEL CRISS; SHARON
CRISS; CHRISTINE DOUGLASS;
VELMA GERMAIN; NICHOLAS
HOLLY; DEENA HOLLY; DONALD
KEARNS; DIANE KEARNS; LYNDA
MIESKE; MONIKA M. SPALLINGER;
JEFFREY ZAPORSKI; JOAN
ZAPORSKI; AND GEORGE WISKUP

                    Plaintiffs,
v

MIDLAND COUNTY BOARD OF
COMMISSIONERS, and GLADWIN
COUNTY BOARD OF
COMMISSIONERS, and FOUR LAKES
TASK FORCE

                    Defendant/Appellees.

RECEIVED by MCOA 7/11/2024 4:10:31 PM

Michael D. Homier (P60318)
Laura J. Genovich (P72278)
Keith T. Brown (P84193)
FOSTER, SWIFT, COLLINS & SMITH, PC
*Attorneys for Appellant*
1700 E. Beltline Ave. NE, Suite 200
Grand Rapids, MI 49525
(616) 726-2200
mhomier@fosterswift.com
lgenovich@fosterswift.com
kbrown@fosterswift.com

Joseph W. Colaianne (P47404)
Zachary C. Larsen (P72189)
Lauren K. Burton (P76471)
CLARK HILL PLC
*Attorneys for Appellees*
215 S. Washington Square, St. 200
Lansing, MI 48933
(517) 318-3100
Jcolaianne@clarkhill.com
zlarsen@clarkhill.com
lburton@clarkhill.com

**HERON COVE ASSOCIATION, ET AL'S
APPLICATION FOR LEAVE TO APPEAL**

July 11, 2024

## TABLE OF CONTENTS

INDEX OF AUTHORITIES....................................................................................................II

ORDER OR JUDGMENT ON APPEAL ........................................................................1

STATEMENT OF QUESTIONS PRESENTED.............................................................2

INTRODUCTION AND GROUNDS FOR GRANTING LEAVE TO APPEAL .........................3

STATEMENT OF FACTS ...............................................................................................5

ARGUMENT ...................................................................................................................8

STANDARD OF REVIEW ............................................................................................8

I.      THE CIRCUIT COURT CLEARLY ERRED WHEN IT FOUND THAT
        APPELLANTS DID NOT MEET THEIR INITIAL BURDEN TO OVERCOME
        THE PRESUMPTION OF VALIDITY..................................................................9

II.     THE CIRCUIT COURT CLEARLY ERRED AND APPLIED INCORRECT
        LEGAL PRINCIPLES WHEN IT DETERMINED THAT COMPETENT,
        MATERIAL, AND SUBSTANTIAL EVIDENCE ON THE RECORD
        DEMONSTRATES THAT APPELLEES' METHODOLOGY ADEQUATELY
        CONSIDERED THE BENEFIT CONFERRED ON THE ASSESSED
        PROPERTIES. ...................................................................................................16

III.    THE CIRCUIT COURT CLEARLY ERRED AND MISAPPLIED *CHAPPEL
        DAM* AND THE CONSTITUTIONAL REQUIREMENTS OF PROCEDURAL
        DUE PROCESS. ................................................................................................18

CONCLUSION.............................................................................................................25

WORD COUNT CERTIFICATION ............................................................................25

RECEIVED by MCOA 7/11/2024 4:10:31 PM

## INDEX OF AUTHORITIES

**Cases**

*Boyd v Civil Service Comm.*, 220 Mich App 226; 559 NW2d 342 (1996)....................................9

*Ahearn v Bloomfield Charter Twp*, 235 Mich App 486; 597 NW2d 858 (1999) ........................10

*Barak v Drain Com'r for Oakland Co.*, 246 Mich App 591; 633 NW2d 489 (2001) ...................8

*Bigger v Pontiac*, 390 Mich 1; 210 NW2d 1 (1973)..................................................................21

*Dixon Road Group v City of Novi*, 426 Mich 390; 395 NW2d 211 (1986)...........................10, 16

*Fritz v St. Joseph Cty Drain Com'r*, 255 Mich App 154, 661 NW2d 605 (2003) ........................8

*In re Project Cost & Special Assessment Roll for Chappel Dam*, 282 Mich App 142; 762
        NW2d 192 (2009) ..................................................................................19, 20, 24

*Johnson v City of Inkster*, 401 Mich 263; 258 N22d 24 (1977) ...................................................13

*Kadzban v City of Grandville*, 442 Mich 495; 502 NW2d 299 (1993).........................................10

*Matthews v Elridge*, 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976) .......................................19

*Michigan's Adventure, Inc v Dalton Twp*, 290 Mich App 328; 802 NW2d 353 (2010) ..............10

*Sessa v Macomb Co*, 220 Mich App 279; 559 NW2d 70 (1996) .................................................21

**Statutes**

MCL 280.155-59................................................................................................................................24

MCL 324.30704(1) ............................................................................................................................9

MCL 324.30707(5) ............................................................................................................................9

MCL 324.30711(1) ............................................................................................................................9

MCL 324.30714(4) ............................................................................................................................21

**Rules**

Mich Admin Code, R 792.10201 ......................................................................................................24

**Constitutional Provisions**

Const 1963, art 10, §2 ......................................................................................................................22

RECEIVED by MCOA 7/11/2024 4:10:31 PM

Const 1963, art 6, § 28 ................................................................................................................ 8

RECEIVED by MCOA 7/11/2024 4:10:31 PM

**<u>ORDER OR JUDGMENT ON APPEAL</u>**

Appellants seek leave to appeal from the Midland Circuit Court's June 20, 2024 Opinion and Order affirming the February 6, 2024 decisions of the Midland and Gladwin Counties Boards of Commissioners confirming the capital assessment roll and the 2025-2029 operations and maintenance special assessment roll for the Four Lakes Special Assessment District (Exhibit A). This Court has jurisdiction to consider this Application under MCR 7.205.[1]

---

[1] There is at least some legal question as to whether the circuit court's June 20, 2024 Opinion and Order is appealable as of right. Because of this, Appellants simultaneously filed a claim of appeal and this Application. That said, Appellants submit that they are entitled to an appeal as of right. Appellees in this case did not act as "tribunals" for the purposes of MCR 7.203(A)(1)(a). See *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 85-87; 832 NW2d 288 (2013) (explaining that tribunals include administrative agencies acting in judicial or quasi-judicial capacities). In *Natural Resources Defense Council*, this Court explained that "quasi-judicial procedures include procedural characteristics common to courts, such as a right to a hearing, a right to be represented by counsel, the right to submit exhibits, and the authority to subpoena witnesses and require parties to produce documents. *Id*. at 86. But in that case, like here, the relevant hearings "were public hearings, not adversarial hearings," "there is no indication that interested persons here had the opportunity or right to call witnesses or submit exhibits." *Id*. at 86-87.

RECEIVED by MCOA 7/11/2024 4:10:31 PM

## STATEMENT OF QUESTIONS PRESENTED

Under longstanding Michigan law, municipal decisions are presumed to be valid.  However, that presumption may be overcome if a special assessment is substantially or unreasonably disproportionate to the benefit conferred to the assessed property. On February 6, 2024, Appellees, the Midland and Gladwin County Boards of Commissioners, and their delegated authority, the Four Lakes Task Force, imposed what is believed to be the largest special assessment in Michigan history.  In doing so, Appellees failed to consider the proportionality of the assessments to the benefits conferred on the assessed properties.  Without allowing Appellants to present evidence to rebut the presumption of validity, the circuit court affirmed Appellees' decisions.

I.   **Did the circuit court clearly err and apply incorrect legal principles when it determined that Appellants did not meet an initial burden to demonstrate that the special assessments are substantially or unreasonably disproportionate?**

   Appellants answer: Yes
   Appellees likely answer: No
   The circuit court would answer: No.

II.   **Did the circuit court clearly err and apply incorrect legal principles when it determined that competent, material, and substantial evidence on the record demonstrates that Appellees' methodology adequately considered the benefit conferred on the assessed properties?**

   Appellants answer: Yes
   Appellees likely answer: No
   The circuit court would answer: No.

III.   **Did the circuit court clearly err and apply incorrect legal principles when it decided the case without an evidentiary hearing and a discovery process that would adequately protect Appellants' fundamental interest in keeping their homes?**

   Appellants answer: Yes
   Appellees likely answer: No
   The circuit court would answer: No.

RECEIVED by MCOA 7/11/2024 4:10:31 PM

**<u>INTRODUCTION AND GROUNDS FOR GRANTING LEAVE TO APPEAL</u>**

This case involves what is believed to be the largest special assessment in Michigan history. It arises from the February 6, 2024 decisions of Appellee Midland County Board of Commissioners and Appellee Gladwin County Board of Commissioners approving the 5-year operation and maintenance special assessment rolls and the 40-year capital improvement special assessment rolls prepared by their delegated authority, Appellee Four Lakes Task Force ("FLTF") for the Four Lakes Special Assessment District, which are intended to fund a project (the "Project") to restore Wixom Lake, Sanford Lake, Smallwood Lake, and Secord Lake (collectively the "Four Lakes") following the failure of the Edenville Dam. When the endeavor began, and for several years, property owners in the special assessment district were told they would be responsible for $70 million in capital costs. But just a short time before the final public hearings, the cost to those property owners ballooned to $217 million. The only thing that changed in that time was the cost of the Project.

According to Appellees, the Four Lakes are critically important to the local economies. So Appellees, determined to march forward no matter the cost, simply apportioned the full increased amount to the special assessment district with no analysis of benefit conferred on the assessed properties or consideration of what percentage of the Project's benefit is actually conferred to the properties in the special assessment district instead of the communities and counties at large. Some assessments are over $100,000. There is a "minimum front-lot assessment" of over $26,000. Some assessments are egregious to the naked eye. For example, Parcel No. 030-170-000-014-00 has a 2024 state equalized value of $5,400 but a principal capital assessment of $31,711.55 (plus 5% interest). Appellees' methodology and the substantial and unreasonable disproportionality of the special assessments violate bedrock constitutional principles and longstanding Michigan law.

RECEIVED by MCOA 7/11/2024 4:10:31 PM

Appellants are the Heron Cove Association and its members, consisting of individuals, families, and businesses who own more than 600 parcels of property in the Four Lakes Special Assessment District.  Appellants argued in the circuit court that the record was devoid of evidence that Appellees considered whether the benefits conferred to the assessed properties is roughly proportional to the costs of the assessments, as is required by the United States and Michigan Constitutions and Michigan law.  In addition to pointing to the established record and Appellees' own statements that demonstrate such lack of consideration, Appellants requested an evidentiary hearing, which they would be entitled in other special assessment appeals, during which the parties could present evidence regarding the proportionality (or lack thereof) of the assessments.

The circuit court held that Appellants failed to demonstrate that the special assessments are disproportionate to the benefit conferred, that Appellees' methodology considered the benefit conferred to assessed properties, and that Appellants had been given all the process due to them. Appellants now seek leave to appeal the circuit court's decision.

As discussed in this Application, Michigan law has long been clear that the presumption of validity of municipal decisions can be rebutted and that there are constitutional limits to the authority of local governments to impose special assessments.  The circuit court's decision in this case will eviscerate that precedent.  Moreover, there are significant unsettled questions of law regarding what constitutes substantial or unreasonable disproportionality and the amount of process due to property owners when a special assessment is of such size to truly threaten their ability to remain in their homes or keep their businesses alive.  This case presents an opportunity for this Court to clarify these open questions.  And lastly, as noted above, the stakes are enormous. Appellants request that this Court grant this application.

RECEIVED by MCOA 7/11/2024 4:10:31 PM

## STATEMENT OF FACTS

The Appellee Counties originally filed petitions, through their delegated authority, Appellee Four Lakes Task Forces ("FLTF"), to establish normal lake levels for the Four Lakes and confirm the boundaries of the Four Lakes Special Assessment District in 2019. These proceedings, brought under Part 307 of the Natural Resources and Environmental Protection Act, Act 451 of 1994, as amended, MCL 307.30701 *et seq.*, in both Midland and Gladwin Counties, were assigned to Judge Stephen P. Carras (in Gladwin County by order of the State Court Administrative Office). Judge Carras eventually approved the petitions and confirmed the boundaries of the District. (Record Tab #2, Order Setting Normal Lake Levels for Sanford Lake, Wixom Lake, Smallwood Lake and Secord Lake and Confirming the Four Lakes Special Assessment District Boundaries, 1-4.)

FLTF then "proceeded to design, obtain necessary permits and construct the Lake Level Project which, due to the complexity and state dam safety requirements, was to be completed in phases over multiple years." In May 2021, "[t]he restoration estimate for all dams was $215 million, with a sensitivity of +/- 25% , and a planning estimate was set at $250 million." Appellees raised at least $182 million in grants for the Project from the State of Michigan and federal and private sources. (Tab #37, FLTF 1/29/2024 Capital Assessment Memo, 12.) This left Appellees with about a $70 million shortfall. But at an unspecified time later, FLTF "updated its planning range to reflect the reality of the market and the project's updated cost." "This has resulted in an updated cost planning range of $330 to $390 million with a $360 planning estimate." (FLTF 1/29/2024 Capital Assessment Memo, 12.) The final capital assessment roll states that the total cost is $399,700,000 (Tab #36, 2/6/2024 Capital Assessment Roll, 1). **So what began as an approximately $70 million shortfall ballooned to $217 million.** Appellees set out to finance the

RECEIVED by MCOA 7/11/2024 4:10:31 PM

remaining approximately $217 million by specially assessing the properties in the Four Lakes Special Assessment District, which contains approximately 8,000 parcels.

Construction of the dams began sometime in 2022.  On its website, FLTF has posted summaries and photos of the progress of construction at the Secord and Smallwood Dams in the "16 months" prior to February 2024.[2]  On January 4, 2024, FLTF President David Kepler signed a memorandum to the FLTF Board stating that "design engineering and permitting are complete" and that the Secord, Smallwood, and Sanford "dams are under construction."  "Edenville" had "begun construction on pull-ahead projects."  (Tab #11, 1/4/2024, Kepler Memo, 3.)  According to the January 4, 2024 memorandum, the "Capital Assessment amount is based on the total restoration project cost less the grants that have been received."  "The computation of cost is based off bid projects at Secord, Smallwood and Secord.  The Edenville estimate is now based o 100% design and has been updated to reflect the pricing received for the other three projects."  (1/4/ 2024, Kepler Memo, 3.)

On January 15, 2024, FLTF held a required public hearing regarding the capital special assessment roll and the 2025-2029 operations and maintenance special assessment roll (Tab #18 1/15/2024 Public Hearing Minutes, 1-3; Tab #19 1/15/2024 Public Hearing Transcript).

Following that public hearing, FLTF released a revised methodology for determining the apportionment of the special assessments.  The methodology states that FLTF endeavored to create a "fair" distribution of the assessments.  It notes that, although it is permitted to assess the relevant townships, villages, cities, and counties at-large, it determined not to assess those entities at-large

---

[2] Four Lakes Task Force, February 14, 2024, "State of Construction on Northern Dams," https://www.four-lakes-taskforce-mi.com/updates/photos-show-progress-on-secord-and-smallwood.

RECEIVED by MCOA 7/11/2024 4:10:31 PM

on the capital assessment.  Instead, the remaining $217 million needed to construct the Project as planned would be assessed only on private property owners in the SAD.  (Tab #12, Four Lakes Special Assessment District Assessment Methodology- Revised January 2024, 1.)

On February 6, 2024, the Counties approved the capital and operations and maintenance special assessment rolls (Tab #32, Midland County 2/6/2024 Resolution Approving Special Assessment Rolls; Tab #33 Gladwin County 2/6/2024 Resolution Approving Special Assessment Rolls).  The Counties also approved the financing plan, which provides that an aggregate principal not to exceed $217,700,000 may be secured by and payable from the collection of the special assessments (Tab #30, Midland County 2/6/2024 Resolution Approving Financing Plan; Tab #31, Gladwin County 2/6/2024 Resolution Approving Financing Plan).

On February 20, 2024, Appellants claimed an appeal of the Counties' decisions in Midland Circuit Court (Claim of Appeal, 2/20/204; Exhibit B).  Appellants filed an amended claim of appeal on February 21, 2024 (Amended Claim of Appeal, 2/21/2024; Exhibit C).  Appellants argued that Appellees' decisions were not supported by competent, material, and substantial evidence on the whole record and that the special assessments are takings without due process of law.  Specifically, Appellants argued that the record is devoid of evidence that the special assessments are not substantially and unreasonably disproportionate to the benefits conferred to the assessed properties.  And Appellants requested that the circuit court conduct an evidentiary hearing or allow for trial-like procedures so that the parties could present evidence as to the same. (Appellants' Circuit Court Brief on Appeal, 3/26/24; Exhibit D).

The circuit court decided the appeal before it on briefs and oral argument.  In relevant part, the circuit court held that Appellants were provided all the process afforded under Part 307, that Appellants failed to overcome their initial burden to overcome the presumption of validity of

RECEIVED by MCOA 7/11/2024 4:10:31 PM

municipal decisions, and that Appellees' methodology considered proportionality. (Opinion and Order, 11-13.) This Application (and Appellants' claim of appeal) follows.

## ARGUMENT

### Standard of Review

"An administrative agency decision is reviewed by the circuit court to determine whether the decision was authorized by law and supported by competent, material, and substantial evidence on the whole record." Const 1963, art 6, § 28. "Substantial evidence is any evidence that reasonable minds would accept as adequate to support the decision; it is more than a mere scintilla of evidence but may be less than a preponderance of the evidence." *Barak v Drain Com'r for Oakland Co*., 246 Mich App 591, 597; 633 NW2d 489 (2001) (cleaned up).

The Court of Appeals "is limited to determining whether the circuit court applied the correct legal principles and whether it committed clear error in its factual review by misapprehending or grossly misapplying the substantial evidence test to the agency's factual findings." *Fritz v St. Joseph Cty Drain Com'r*, 255 Mich App 154, 162, 661 NW2d 605 (2003). This standard is "indistinguishable from the clearly erroneous standard." *Id*. A circuit court's decision is clearly erroneous "when, on review of the whole record, the appellate court is left with the definite and firm conviction that a mistake was made." *Fritz*, 225 Mich App at 661. With matters of law, the Court of Appeals' review is limited to whether the circuit court applied the correct legal principles. *Boyd v Civil Service Comm*., 220 Mich App 226, 234; 559 NW2d 342

RECEIVED by MCOA 7/11/2024 4:10:31 PM

(1996).  Courts "presume that an administrative body has acted correctly and that its orders are valid." *Fritz*, 255 Mich App at 162.[3]

### I.    The circuit court clearly erred when it found that Appellants did not meet their initial burden to overcome the presumption of validity.

Special assessments are not automatically valid. Presumptions are designed to be challenged, and review of governmental decisions is nearly always available.  But the circuit court's opinion and order mostly adopted Appellees' argument to the contrary.  The circuit court held that Appellants failed to overcome the presumption of validity for municipal decisions because Appellants did not present sufficient evidence at the January 15, 2024 public hearing or before the circuit court (Opinion and Order, 9, 11-13).  This is directly counter to longstanding Michigan law.

Under the IILA, the cost of maintaining legal lake levels may be offset by special assessments.  MCL 324.30704(1).  Following approval of the petition to set a normal lake level, the circuit court that approved the petition is required to confirm the boundaries of a special assessment district.  MCL 324.30707(5).  Properties that may be assessed are "privately owned parcels of land, political subdivisions of the state, and state owned lands under the jurisdiction and control of the department."  MCL 324.30711(1).

The general standard for challenging a special assessment is well established.  Special assessments are "presumed valid" and must be upheld unless "there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements."  *Dixon Road Group v City of Novi*, 426 Mich 390, 403; 395 NW2d 211

---

[3] Appellees argued in their briefing before the circuit court that the substantial evidence test was not applicable in this case (Appellees' Circuit Court on Appeal, 4/16/2024, 32-35; Exhibit E).  But at oral argument, Appellees' counsel agreed that it did (TR, 42).

RECEIVED by MCOA 7/11/2024 4:10:31 PM

(1986).  In particular, a special assessment will be found valid when two requirements are met: "(1) the improvement subject to the special assessment must confer a benefit on the assessed property and not just the community as a whole and (2) the amount of the special assessment must be reasonably proportionate to the benefit derived from the improvement."  *Michigan's Adventure, Inc v Dalton Twp*, 290 Mich App 328, 335; 802 NW2d 353 (2010), *citing Kadzban v City of Grandville*, 442 Mich 495; 502 NW2d 299 (1993).  However, when there is not a reasonable relationship between the amount of the assessment and the benefit conferred to the assessed property, it is "akin to a taking without due process of law."  *Dixon Road Group*, 426 Mich at 403.

When determining whether an improvement confers a proportionate benefit on the specially assessed property, Michigan courts compare the market value of the property *with* the improvement to the market value of the assessed value *without* the improvement.  *Michigan's Adventure, Inc*, 290 Mich App at 335.  This Court has explained the analysis as follows:

> [I]n order to determine whether the market value of an assessed property has been increased *as a result of* an improvement, the relevant comparison is not between the market value of the assessed property *after* the improvement and the market value of the assessed property *before* the improvement, but rather it is between the market value of the assessed property *with* the improvement and the market value of the assessed property *without* the improvement.  The former comparison measures the effect of time, while the latter measures the effect of the improvement.

*Ahearn v Bloomfield Charter Twp*, 235 Mich App 486, 496-97; 597 NW2d 858 (1999) (emphasis in original).  In other words, a special assessment can be found invalid if the public improvement does not increase the benefit of the assessed parcel in an amount roughly proportionate to the amount of the assessment.  In *Dixon Road Group*, the Michigan Supreme Court held that a ratio of 2.6 was invalid.  *Id.*  But the court did not use that ratio as a threshold; it instead used the "substantial and unreasonably disproportionate" test.

RECEIVED by MCOA 7/11/2024 4:10:31 PM

About seven years later, the Supreme Court decided *Kadzban*, 442 Mich 495.  In that case, the plaintiffs challenged the validity of a special assessment for street and utility improvements. *Id*. at 497.  The key issue was whether the special assessments complied with *Dixon* by being reasonably proportional to the benefit conferred on the assessed properties, when much of the benefit provided by the relevant improvements was seen by the public, not by the properties assessed.  See *id*. at 499.

Unlike *Dixon*, which announced a clear proposition and is binding on this Court, *Kadzban* requires a more in-depth analysis.  Only three justices signed onto the analysis of the lead opinion (Griffin, Brickley, and Boyle).  Justice MICHAEL CAVANAGH concurred in the result only, and Justices Boyle and Riley each wrote a concurrence.  Justice MALLET concurred with Justice RILEY's opinion.  Although no one opinion commanded a majority, there are essential holdings that cut across the various opinions and that should guide this appeal.

The lead opinion (written by Justice GRIFFIN) reiterated that "whether and how much the value of land has increased as the result of certain improvements is factual, to be determined on the basis of evidence presented by the parties." *Id*. at 502 (opinion of GRIFFIN, J.).  "As such, it is to be resolved by the trier of fact—in [that] case, the Tax Tribunal." *Id*.  The Supreme Court ultimately affirmed because evidence presented to the Tax Tribunal showed that "the improvements were shown to be directly linked to significant increases in the marketability and the selling of plaintiffs' properties." *Id*. at 506.

Justice RILEY focused on the interplay of *Dixon* and the presumption that special assessments are valid.  She wrote, "[i]f we are to recognize a presumption of validity in favor of municipalities in matters of special assessments, then the proportionality issue as outlined in *Dixon* must be subsumed into such a presumption." *Id*. at 509 (opinion of RILEY, J.)  "To hold otherwise would be to make a nullity of the proportionality question by subjugating it to the presumption of

11

validity." *Id*. "Accordingly," Justice RILEY believed "that a municipality seeking to rest upon its presumption must indicate, when challenged in court, that it engaged in a consideration of the benefits to those assesses in contrast to the costs imposed on them." *Id*. Justice RILEY wrote that she would have remanded that case for factual supplementation on the issue of proportionality, as "there [was] no indication on the record that defendant gave any reasonable degree of consideration to the proportionality issue either before the assessment process or following the filing of the instant action." *Id*. at 510. She noted that the municipality did not present evidence of proportionality before the Tax Tribunal and instead merely attacked the plaintiffs' evidence. *Id*.

Justice RILEY noted "that plaintiffs make several good arguments worthy of empirical rebuttal." *Id*. "For example," she wrote, "there are approximately seventy homeowners whose property fronts Canal Avenue, yet the two-lane street accommodates between 8,000 and 10,000 vehicles each day." *Id*. "Moreover, it is undisputed that Canal Avenue is a major collector of traffic from relatively recently developed subdivisions whose only access to the rest of Grandville is through use of Canal Avenue." *Id*. This use belied what Justice RILEY considered "to be the primary purpose of the improvements." *Id*. at 511.

But this was Justice RILEY's key point:

> In cases where there is no demonstrable *public* benefit of the nature at issue here, it is easier to conceive of a vague reliance on the presumption of validity in order to affirm the decisions of an assessing municipality. Where the *private* benefits of an improvement to adjoining properties are not so clear, I would prefer to see more record evidence of any asserted benefit before feeling confident in relying upon the presumption of validity. Where courts are going to do away with consideration of the proportionality requirement mandated by the *Dixon* line of cases, they should at the least ascertain whether an assessing municipality considered the costs and benefits to the assessed landowners before concluding that there is sufficient evidence on record to sustain the presumption of validity. [*Id*.]

12

RECEIVED by MCOA 7/11/2024 4:10:31 PM

In yet another opinion, Justice Levin conceded that the plaintiffs' properties were benefitted by the improvements installed and that it was "surely. . . appropriate to assess against the plaintiffs' properties some portion of the cost incurred in conferring those benefits." *Id*. at 517 (opinion of Levin, J.). But he believed "that it was arbitrary to allocate to the plaintiffs the entire cost assessed against them" when Grandville had failed to "assess any of the cost of the road improvements against the owners of properties on side streets that depend solely on Canal for ingress and egress. . .." *Id*.

Justice LEVIN also cited this passage from *Johnson v City of Inkster*, 401 Mich 263; 258 N22d 24 (1977), which states:

> The principle that persons who 'are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby' does not accommodate an assessment to defray the cost of *rectifying conditions mainly brought about by the public at large and not 'specially and peculiarly' related to the use or needs of persons residing in the assessment district. The plaintiffs' homes were not specially and peculiarly advantaged by restoring safe and ready access to and from a road adequate to serve their needs and which would have remained adequate but for pre-emptive use emanating from outside the assessment district.* 'There has been no enhancement.' [Emphasis in *Kadzban,* 442 Mich at 516; cleaned up.]

If there is a sure rule from *Kadzban*, it is that special assessments are subject to a review of the facts supporting benefit conferred. In sum, three justices decided that not enough evidence of benefit conferred to the assessed properties was presented; and three justices affirmed the Tax Tribunal's factual findings that the assessments at question conferred increases in value on the relevant properties that "substantially exceeded" the amounts of the assessments (and one justice simply voted to affirm the Tax Tribunal) because the Tax Tribunal's findings were supported by competent, material, and substantial evidence on the whole record.

13

RECEIVED by MCOA 7/11/2024 4:10:31 PM

Here, the circuit court's cursory determination that Appellants failed to overcome the presumption of validity is contrary to *Dixon* and *Kadzban* and finds no support in Michigan law. Appellants presented Appellees' own statements that the Four Lakes are critically important regional economic engines that support businesses and jobs and draw tens of thousands of tourists and other visitors to Midland and Gladwin Counties (Appellants' Circuit Court Brief on Appeal, 12-13). These statements call into question the proportion of public versus private benefit conferred by the improvements and the return of the Four Lakes. Appellants presented property value data that was available in the short timeframe allowed that raises questions about the benefit conferred by the improvements, including that many properties saw significant increases in value in the years following the retreat of the Four Lakes that was comparable to macro regional and national increases in property values that cannot be attributed to the possible return of the Four Lakes without further analysis (Appellants' Circuit Court Brief on Appeal, 15-17). Appellants presented Appellees' own documents, and documents by other organizations, reflecting the massive regional efforts to aid flood control in the area. Appellants alleged that the increased size of the new dams is a piece of this larger effort. (Appellants' Circuit Court Responsive Brief on Appeal, 5/7/2024, 23; Exhibit F.)

There are readily apparent flaws in the assessments and the underlying methodology that overcome the initial presumption of validity. For instance, there are $22,065.95 "minimum front lot assessments," meaning that no matter where an Appellants' property is located in the SAD in relation to the Four Lakes or the dams, as long as it is a "front lot," it is assessed at least $22,065.95. Oddly, Appellees' Revised Methodology appears to contain no mention of this "minimum front lot assessment." But on FLTF's interactive assessment map, the notation reflected in the image below can be found on the information tab for countless properties:

RECEIVED by MCOA 7/11/2024 4:10:31 PM

| | | |
|---|---|---|
| Base: | ' | |
| Derived Benefit: | 1 | |
| Waterfront View: | 0.75 | |
| Depth: | 0.75 | |
| Frontage: | 0.87 | |
| Backlot Access: | 0 | |

Total Assessment Factor :   0.501 - This is
the minimum front lot assessment

This is wholly unrelated to the benefit conferred.  Indeed, the methodology does not account for location at all.  Some upstream property owners are approximately 25 miles away from the southernmost dam.  But all front-lot owners have at least the same minimum assessment.  It is unclear what the recreational benefit of a southern dam is to the northern property owners.

According to FLTF, state, federal, and private funding accounts for 45% of the overall costs of the new Dams.  Even if such considerations were relevant under *Dixon* and the other relevant caselaw, the record contains no evidence that the properties in the SAD receive even 55% of the benefit conferred by the Project.

Yet as *Dixon* and *Kadzban* instruct, the circuit court conducted no factual analysis following Appellants' challenge to the proportionality of the assessments.  It did not require Appellees to present evidence to support their decisions.  In fact, it did not allow the parties to present evidence and it determined that it was not authorized to conduct fact finding.  It was not Appellants' burden to demonstrate that the special assessments are substantially or unreasonably proportional, as the circuit court claimed.  Accordingly, the circuit court clearly erred and applied legal incorrect legal principles, and this Court should grant leave to appeal the circuit court's decision.

15

RECEIVED by MCOA 7/11/2024 4:10:31 PM

**II.    The circuit court clearly erred and applied incorrect legal principles when it determined that competent, material, and substantial evidence on the record demonstrates that Appellees' methodology adequately considered the benefit conferred on the assessed properties.**

The circuit court also determined that "the methodology put forth by the FLTF takes into account several factors geared towards gauging the benefit each property will derive from the restoration of the lakes, such as the amount of frontage on the lakefront and the lake view" (Opinion and Order, 12).  This is not necessarily untrue, but it is legally irrelevant and misapplies the correct legal principles.

As *Dixon* and *Kadzban* instruct, a special assessment must confer an increase on market value on the property being assessed.  The assessment cannot be substantially or unreasonably disproportionate to that benefit conferred.  *Dixon*, 426 Mich at 402-403.  By their own words, Appellees sought to assess the SAD "fairly."[4]  Appellees argued below that the assessments are fair amongst the properties in the SAD (Appellees' Circuit Court Brief on Appeal, 36).  They argued that they could not assess based upon an increase in market value because such an analysis would not account for the different uses of property in the SAD (like the difference in improved and unimproved lots).  Whatever their reasoning, Appellees have not brought forth any support or evidence of benefit derived or proportionality.

As discussed above, Appellants demonstrated below that the record was devoid of evidence that Appellees conducted any analysis of benefit conferred after they increased the assessment amount more than threefold, from approximately $70 million to $217 million.  Yet the SAD methodology itself belies its own arbitrary nature and disregard to the proportionality required by

---

[4] In other words, Appellees had first and foremost an expense (reconstruction of four dams) that must be covered by revenue through the imposition of special assessments. Thus, a target revenue number was in mind and then the special assessments were spread amongst the parcels in the district "fairly" to generate the revenue needed to cover the cost. This was never about benefit.

RECEIVED by MCOA 7/11/2024 4:10:31 PM

*Dixon Road Group* and its progeny.  The parcels in the SAD were assigned a "derived benefit factor," which was used to determine the amount of benefit derived to each parcel *compared to other parcels in the district*.  The derived benefit factor was calculated using a number of individual factors.  One of those factors is the "frontage factor."  "The frontage factor is a weighted factor given solely to parcels with direct access to the water."  (Tab 12, January 2024 Revised Methodology, 5.)

But the methodology only weighs a property's' frontage as a benefit factor as compared to other parcels in the district.  As Appellees state in their methodology conclusion, "FLTF has worked to create a *fair* apportionment methodology that considers various benefits parcels receive" (emphasis added) (Revised January 2024 Methodology, 10).  The methodology summary contains no mention of proportionality or the actual increase in market value conferred by the Project, as required by *Dixon Road Group* and its progeny.  Instead, it only analyzes benefit conferred amongst the privately-owned parcels in the SAD.  The record simply contains no evidence that Appellees conducted any evaluation of the proportion of the overall benefit conferred to the region to that of Appellants' properties within the SAD.  Instead, they simply made a political decision to only assess Appellants' properties, without an explanation that can be found in the record before the Court.

In short, Appellees attempted to dress up their methodology in the language of the law by allocating the special assessments based upon "derived benefit factors."  But they fundamentally misunderstood the purpose of the derived-benefit rule.  Under Appellees' interpretation of the derived benefit principle, they could have assessed any amount of dollars needed to complete the Project, no matter the cost of individual assessments or the increase in market value conferred onto those properties.  Taken to its extreme, the logic of Appellees' methodology would allow them to assess just 10 properties to finance a $100 million project, as long as the underlying methodology

17

had some level of "fairness" amongst those 10 properties. Appellees, pursuant to their own methodology, would have with no concern that one property could be assessed $50 million but only see an increase in market value of $25,000 because of an improvement. Appellees did not refute this logical conclusion in the circuit court.

Because the circuit court clearly erred and applied incorrect legal principles, this Court should grant leave to appeal.

### III.   The circuit court clearly erred and misapplied *Chappel Dam* and the constitutional requirements of procedural due process.

The circuit court's holding and Appellees' arguments regarding due process are somewhat circular. The circuit court held that Appellants were afforded all the process afforded by the ILLA. In effect, the circuit court adopted Appellees' argument that Appellants' only recourse to challenge their assessments was to present "evidence" to FLTF at the January 15, 2024 public hearing. Then, the circuit court held, the county boards of commissioners—even though FLTF is their own *delegated* authority—were the "independent" bodies that reviewed the FLTF's computations. (Tr, 17.)

At times, the circuit court suggested that Appellants failed to overcome the presumption of validity for municipal decisions because Appellants did not present sufficient evidence at the January 15, 2024 public hearing or before the circuit court (Opinion and Order, 9, 11-13). But at other times, the circuit court stated that Appellants could not expand the record before that court (Opinion and Order, 13). In any event, the circuit court in effect held that Appellees' decisions are unreviewable.

FLTF's methodology demonstrates that the Counties and FLTF did not consider the proportionality of the benefit conferred on the specially assessed properties. Instead, the record demonstrates that Appellees had a target revenue number, raised the funds they thought they could,

18

and then apportioned the remainder on the properties within the SAD. Although Appellees developed a methodology that ostensibly aimed to allocate the special assessment amongst the assessed properties on the basis of derived benefit, the methodology merely categorized the assessed properties in comparison with each other. Each property was then assessed a portion of the costs of the Project without regard to the proportionality of the assessment to the actual benefit derived to that property in the form of increased market value. The record lacks necessary and critical material evidence and leaves many questions unanswered.

The amount of process due to a litigant is a flexible concept, dependent on the circumstances of the case. *In re Project Cost & Special Assessment Roll for Chappel Dam*, 282 Mich App 142, 150; 762 NW2d 192 (2009). To determine whether a governmental actor has violated a person's rights to procedural due process, Michigan courts employ the three-part test from *Matthews v Elridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In *Chappel Dam*, this Court noted that property owners were afforded notice and a public hearing before the confirmation of the roll. *Chappel Dam*, 282 Mich App at 151. Appellants do not dispute that, in ordinary circumstances, the procedures set forth in the IILA, and the procedures approved of in *Chappel Dam*, can be sufficient to comply with *Matthews* and constitutional standards. But for several reasons, that is not true here.

In *Chappel Dam*, the Gladwin County Drain Commissioner determined that the Chappel Dam required substantial repair, in the amount of $2.04 million, and that the costs to repair the dam would be divided between the property owners in the special assessment district, the county,

19

RECEIVED by MCOA 7/11/2024 4:10:31 PM

and the township.  *Id.* at 144.  After determining the apportionment, pursuant to the Inland Lake Level Act, "Part 307," the drain commissioner held a public hearing in which many of the property owners protested the apportionment.  *Id.*  The next day, the Gladwin County Board of Commissioners approved the special assessment roll, and ten days later, an appeal of the special assessment roll was filed in the Gladwin County Circuit Court.  *Id.*  In an expedited fashion, solely on briefs and in in short order, the circuit court affirmed.  *Id*. at 151.

Before this Court in *Chappel Dam*, the central issue was the interplay of Part 307 and the Drain Code.  Reviewing the circuit court's procedures, this Court held "that the Legislature specifically provided for circuit review and knowingly excluded from the ILLA the Drain Code's procedure for review" and that "the Legislature has provided different review procedures for drains and dams."  *Id.* at 147-148.  This Court explained that:

> Petitioners maintain that the ILLA states that the Drain Code appeal procedures must be used. However, the ILLA imposes no such requirement. Instead, the ILLA provides for the use of Drain Code procedures to be followed as close as possible in the "proceedings for levying special assessments and issuing special assessment bonds...." MCL 324.30705(1). Rather than repeat the procedures for levying special assessments, the Legislature refers those who use the ILLA for lake levels to the Drain Code for details of how to issue a special assessment, regardless of the purpose. Similarly, the Legislature provided for a notice of hearing in the ILLA and then referred users to tax provisions to detail the exact process of providing notice. MCL 324.30714(2)(b). The ILLA makes no such reference to the Drain Code concerning the review process. We therefore agree with the circuit court that a harmonious reading of the ILLA and the Drain Code is that the ILLA refers to the Drain Code for the procedures to levy special assessments and issue special assessment bonds, but provides different appeal procedures for the establishment of dams and the establishment and maintenance of lake levels.

*Id.* at 149.  In short, this Court held that the circuit court appropriately followed the procedures outlined in the court rules for administrative appeals in contested cases.  *Id*. at 146.

Appellants respectfully submit that this case requires a more detailed process.  The notice and public hearings provided to Appellants under the IILA are not constitutionally sufficient as

RECEIVED by MCOA 7/11/2024 4:10:31 PM

applied here.  The intent of the required notices and public hearings under the IILA is to protect the interests of the public against arbitrary government action and to ensure that the governmental actor has considered the varying public interests.  *Id*. at 150.  The IILA imposes an additional procedural safeguard: it requires counties to approve costs and special assessment rolls by resolution *before construction begins*.  MCL 324.30714(3).  And under the IILA, a special assessment roll is final and conclusive unless appealed within 15 days of the approval of the roll by the county or counties.

Here, construction began before the time to appeal the special assessments was final. Indeed, Appellees have represented to the public that this appeal means that construction must halt and that the final phases of construction will be delayed.  These additional facts, not present in *Chappel Dam*, suggest that the public hearings held pursuant to the ILLA were mere formalities. The January 15 hearing afforded no meaningful opportunity to be heard; Appellees at that hearing did not consider the varying public interests.  In other words, the January 15 public hearing was held *after* construction had already begun, *after* Appellees had committed themselves to a specific funding plan, and *after* Appellees had received construction bids for the final phase of construction. There was no meaningful opportunity for Appellants to contest their assessments.

The ILLA's requirement that costs and special assessments rolls be approved before construction is begun is vital to the structure of the ILLA and the procedural due-process rights of would be appellants.  The IILA guarantees the right to an appeal from a special assessment.  MCL 324.30714(4).  The appeal must be claimed within 15 days of approval of the special assessment rolls.  *Id*.  For an appeal under the IILA to have any potential remedy, construction (especially construction reliant on the special assessment), cannot begin until the rolls are final.  Under Michigan law, governmental defendants successfully rely on laches as a defense to court actions that seek to claw back allegedly improper bond sales when the action is commenced.  See *Bigger*

21

*v Pontiac*, 390 Mich 1; 210 NW2d 1 (1973); see also *Sessa v Macomb Co*, 220 Mich App 279; 559 NW2d 70 (1996).  The logic of *Bigger* and *Sessa* rests on the premise that, once bonds are sold, courts cannot fashion a remedy to litigants challenging the governmental body's process leading up to the sale of the bonds because bondholders, once they purchase bonds without notice of court challenges, have vested interests that could be defeated by any subsequent litigation. *Sessa*, 220 Mich App at 287.  Along these lines, the ILLA seeks to prevent counties from giving third-parties any vested interests in an improvement before any necessary special assessment rolls are approved and the time period to appeal has run.

The process afforded to Appellants under Part 307 did not allow Appellants sufficient time to obtain further evidence of proportionality so that they could challenge their assessments.  The Notice of Public Hearing for the January 15, 2024 public hearing was posted in the physical offices of Midland County, Gladwin County, and FLTF on December 22, 2023.  It was posted on the websites of Midland County and FLTF on December 22, 2023, and on the website of Gladwin County on January 5, 2024.  (Tab #14, Stryker Affidavit of Posting, 2.)  This short period between the time of posting and the hearing, during the holiday season, was not enough time for Appellants to collect evidence and obtain appraisals of their property in order to protest the proportionality of their assessments.

The private interest at stake is Appellants' ability to remain in their homes or keep their businesses alive.  In *Chappel Dam*, the special assessment sought to raise only about $2 million. Here, the capital assessment seeks to raise approximately $217 million.  Individual assessments run into the tens of thousands, and even hundreds of thousands, of dollars for individual parcels. As *Dixon* explained, an assessment lacking a reasonable relationship to derived benefit is akin to a taking without due process of law.

RECEIVED by MCOA 7/11/2024 4:10:31 PM

Under Michigan law, "Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed be law."  Const 1963, art 10, §2.  "If private property consisting of an individual's principal residence is taken for public use, the amount of compensation made and determined for that taking shall be not less than 125% of that property's fair market value, in addition to any other reimbursement allowed by law."  *Id.* An "inverse condemnation" occurs when a governmental actor takes a property in fact, even though the governmental actor does not comply with the required statutory eminent-domain process.  "A plaintiff alleging a de facto taking or inverse condemnation must establish (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property."  *Id*. at 80.

Here, Appellees took action against Appellants' properties that are the substantial cause of a likely decline in property values when they approved the special assessment rolls.  Some assessments are nearly equal to or even more than the state equalized value of Appellants' properties.  Many Appellants live on fixed incomes.  They simply cannot afford such assessments. If they seek to sell, they will not recover the value of their homes from buyers.  And without an ability to pay, their homes will be subject to tax foreclosure, and absolute title will vest in foreclosing *governmental* units.  In other words, Appellees will have achieved the taking of private property without just compensation and without complying with the statutory eminent domain process.

Additional process during this appeal is only a financial and administrative burden on Appellees because of their own chosen timeline and own decisions.  Appellants' chose to receive construction bids for Edenville prior to the expiration of the timeline to appeal, and they chose to construct the other three dams before financing was secured.  No matter the scale of the emergency that might have been, Appellees cannot disregard Appellants' constitutional rights to their

23

RECEIVED by MCOA 7/11/2024 4:10:31 PM

properties because Appellees' chose specific timelines and courses of action.  Further still, Appellees also cannot reasonably argue that they did not plan for or anticipate an appeal of the special assessment—FLTF's own computation of cost included a $100,000 estimated cost to handle appeals (January 4, 2024 Memo, 4).  And the right to an appeal is embedded in Part 307 itself.

In other special assessment contexts, appellants are afforded the right to present evidence regarding proportionality and benefit derived.  Before the Tax Tribunal, property owners and governmental units are permitted to present evidence.  Mich Admin Code, R 792.10201 *et seq*. Under the Drain Code, a Board of Review is convened.  MCL 280.155-59.  Under *Chappel Dam*'s guidance that the process due in any given factual circumstance is flexible, the circuit court was required to weigh the interests involved and grant Appellants a fact-finding process.

*Dixon Road Group* and *Kadzban* instruct that fact-finding by an independent body remains an essential part of special assessment appeals.  Normally, fact-finding occurs at the Tax Tribunal. Under the Drain Code, fact-finding is performed by a board of review.  Here, Part 307 reserves that role for the circuit court.

The idea of a "presumption of validity" only holds water if would-be litigants have a meaningful opportunity to challenge such a presumption.  "To hold otherwise would be to make a nullity of the proportionality question by subjugating it to the presumption of validity."  *Kadzban*, 442 Mich at 509 (RILEY, J.).  These are not normal special assessments, and procedural due process is a flexible concept.  *Matthews*, 424 US at 335; *Chappel Dam*, 282 Mich App at 150.

In short, Appellees sought and received automatic ratification of their actions without any modicum of due process afforded to property owners in other special assessment contexts and without evidence that the special assessments imposed on Appellants' properties comport with

24

constitutional standards.  Accordingly, the circuit court clearly erred and applied incorrect legal principles.  This Court should grant leave to appeal.

## CONCLUSION

For the reasons stated above, Appellants request leave to appeal.

Respectfully Submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.

Dated: July 11, 2024

By: _____

Michael D. Homier (P60318)
Laura J. Genovich (P72278)
Keith T. Brown (P84193)
FOSTER, SWIFT, COLLINS & SMITH, PC
*Attorneys for Appellant*
1700 E. Beltline Ave. NE, Suite 200
Grand Rapids, MI 49525
(616) 726-2200
mhomier@fosterswift.com
lgenovich@fosterswift.com
kbrown@fosterswift.com

## WORD COUNT CERTIFICATION

This brief contains 6,926 words, in compliance with MCR 7.212 (B).

FOSTER, SWIFT, COLLINS & SMITH, PC
*Attorneys for Appellant, Tuscola*
*Area Airport Zoning Board of Appeals*

Dated: July 11, 2024

By: _____

Michael D. Homier (P60318)
Laura J. Genovich (P72278)
Keith T. Brown (P84193)
1700 E. Beltline Avenue NE, Suite 200
Grand Rapids, MI 49525
(616) 726-2230

25

RECEIVED by MCOA 7/11/2024 4:10:31 PM