# EXHIBIT G

# STATE OF MICHIGAN

# COURT OF APPEALS

NDC OF SYLVAN, LTD.,

    Plaintiff-Appellee/Cross-Appellant,

v

TOWNSHIP OF SYLVAN,

    Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
May 19, 2011

No. 301397
Washtenaw Circuit Court
LC No. 07-000826-CZ

MAGELLAN PROPERTIES, L.L.C.,

    Plaintiff-Appellee/Cross-Appellant,

v

TOWNSHIP OF SYLVAN,

    Defendant-Appellant/Cross-Appellee.

No. 301410
Washtenaw Circuit Court
LC No. 07-001260-CZ

Before: SHAPIRO, P.J., and HOEKSTRA and TALBOT, JJ.

PER CURIAM.

    Sylvan Township challenges the grant of summary disposition in favor of developers, Magellan Properties, L.L.C. (Magellan) and NDC of Sylvan, Ltd. (NDC) in this breach of contract action pertaining to the collection of special assessments for the provision of water and sewer services. In turn, the developers contest the trial court's failure to include late fees and penalty interest in its damage award. We affirm in part, vacate in part and reverse in part.

-1-

Sylvan entered into two separate agreements pertaining to the development of land within the Township with Magellan and Warren Hamill.[1]  The purpose of these agreements was for the "establishment of special assessment districts to pay for the costs of public sewer, water, and road improvements to service the residential and commercial projects proposed for development."  After the assessments were finalized and approved, Sylvan sold a bond to finance the cost of development.  Sylvan began assessing Magellan and Hamill in November 2002, asserting it had the ability to provide the required water and sewer services.  When Sylvan initially conducted the assessments it intended to construct its own sewer plant, but later decided to connect to an existing plant operated by another township through an Interceptor.  In 2003 and 2004, respectively, Sylvan contacted Hamill and Magellan contending they were in default of their agreements. NDC was not in default on Parcels C and D.  Ultimately, Sylvan rescinded the development agreements.  NDC and Magellan took issue with Sylvan's decision to seek a revised or new assessment based on the Township's decision to not construct an independent plant but rather to pursue the Interceptor project and initiated the underlying lawsuit.

The trial court concluded that the special assessment for the sewer system was invalid because it had been established for the purpose of constructing a treatment plant, but was collected and spent instead on the Interceptor.  The court additionally declared that Sylvan's rescissions of the development agreements were unlawful and that the agreements remained in force.[2]  The court further concluded that the sewer and water systems contracted for in the development agreements were never operational and that Sylvan breached those agreements when it demanded payments on the special assessments.  The court awarded Magellan and NDC damages corresponding to water and sewer assessments paid, permanently enjoined enforcement of the special assessments for the sewer project against NDC's property, and permanently enjoined Sylvan from demanding payment from NDC for the water system special assessment in favor of a revised payment plan.  The court offset the damage awards in connection with payments on the special assessments for water service to take into account payments that would have become due had Magellan and NDC been subject to proper assessments.

This Court reviews a trial court's decision on a motion for summary disposition de novo as a question of law.[3]  Contract interpretation likewise presents a question of law requiring our review de novo.[4]  "[E]quitable issues are reviewed de novo, although the findings of fact

---

[1] Hamill was the predecessor in interest of NDC of two parcels of property, referred to as Parcels A and B.  NDC also subsequently purchased two parcels, identified as Parcels C and D, from Magellan.

[2] This aspect of the trial court's ruling is not contested on appeal.

[3] *Vega v Lakeland Hosp*, 479 Mich 243, 245; 736 NW2d 561 (2007).

[4] *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002).

supporting the decision are reviewed for clear error. However, the granting of injunctive relief is within the sound discretion of the trial court. . . ."[5]

Sylvan contends that the trial court erred in failing to evaluate the claims of NDC and Magellan in accordance with the operative agreement, the Magellan Amended Development Agreement. We agree that the trial court erred by evaluating the claims pertaining to Parcels C through G in accordance with the original contract and not the amended agreement. Although the trial court repeatedly referenced the amended Magellan agreement, it mistakenly relied on the wording or terms of the original Magellan agreement in granting its relief.

The original Magellan agreement referred repeatedly to Sylvan's obligation to undertake improvements to provide sewer services in general terms, without specifying that a treatment plant was to be constructed. The only exception is contained in a provision calling on Magellan to acknowledge and agree that the costs related to the sewer system improvements include "the construction, acquisition and financing of the sanitary sewer treatment plant . . ."[6] That agreement also specified that special assessment payments for the sewer and water services were not due until those respective systems were operational. But the amended Magellan agreement does not specify that a sewer treatment plant is to be constructed. The amended agreement instead makes reference to "interceptor sewers" and specifies that payments for the two systems were to initiate on December 1, 2002.

The change in language indicates that the parties to the amended Magellan agreement understood that Sylvan would be providing sewer services by way of the Interceptor and not a sewer treatment plant. The replacement of language about payments coming due when the systems are operational with the identification of a specific date further indicates either an agreement to initiate payments on that date without regard to whether the systems were fully operational or an acceptance that the systems were operational on the referenced date. The trial court's failure to distinguish these key changes in the contract terms in awarding relief in connection with parcels C through G constituted error.

Sylvan next takes issue with the trial court's failure to recognize, as a material question of fact precluding the grant of summary disposition whether the sewer or water systems pertaining to parcels A and B were operational on the relevant date.

The Hamill agreement states that the first installment of special assessment payments on the sewer and water systems "shall not be due until" those systems are "operational." "Operational" is defined to mean "that all governmental requirements have been satisfied and the systems are ready to accept sewage and ready to provide water at a point at the outside boundary of the Subject Property." The trial court agreed with NDC and held that the sewage system was

---

[5] *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 9; 596 NW2d 620 (1999) (internal quotation marks and citations omitted).

[6] See ¶ 1E of the agreement.

not operational because of a moratorium imposed by the Department of Environmental Quality (DEQ), the poor water quality and the necessity of additional construction to remedy the quality problem. These findings constituted factual questions extending beyond the range of stipulated or undisputed facts. A court "may not make factual findings or weigh credibility" in deciding motions for summary disposition.[7]

The DEQ issued a construction permit to connect the Interceptor to Leoni Township's sewage plant as of November 27, 2002. Sylvan reports that Magellan received permission from the DEQ and successfully connected fifty-one units in its development to the Interceptor. In September 2005, the DEQ indicated that no new permits for that plant would be issued. Yet Sylvan cites to deposition testimony by the Jackson County Drain Commissioner that a moratorium was never officially imposed; but rather the DEQ simply increased its scrutiny of such permit requests. Evidence provided by Sylvan further suggests that the DEQ continued to issue permits, albeit on a limited basis. Based on these evidentiary conflicts, the record demonstrates the existence of a material question of fact concerning the extent to which Sylvan complied with its obligation to refrain from collecting special assessment taxes until the water system was operational.[8]

Magellan and NDC contend that the water system was not operational until November 2005, when the DEQ granted a permit to operate the water-softening system that was added after the DEQ first issued a permit for operation of the water treatment plant in 2002. Sylvan responds by emphasizing that the water-softening facility was not part of the original plans for the plant. Sylvan further asserts that it was delivering water and contends that it characterized its water system as being under construction only because the water-softening upgrade was in progress. Sylvan denies that this mere characterization constitutes an admission that the water system was not operational. In effect, Sylvan suggests that the treatment plant was completed and that the addition of a water-softening component constituted a mere upgrade. We find that material questions of fact existed regarding whether the plant construction was completed until a softening utility was added and whether the poor water quality constituted the constructive failure of the system to deliver water as promised precluding the grant of summary disposition. Because these questions of fact existed, the trial court erred in granting summary disposition.

Next, Sylvan takes issue with the trial court's determination that the special assessment for sewage service was invalid because the project on which the funds were expended was not the project for which the special assessment was established. Sylvan acknowledged that it "mis-stepped" by establishing special assessments to cover the costs of constructing a sewage treatment plant, but failing to take additional action to formalize the change of plans to use an Interceptor and to ensure that any assessment accurately reflected the modified purpose and method for water and sewer service delivery. Ultimately, Sylvan contends that any such

---

[7] *In re Handelsman*, 266 Mich App 433, 437; 702 NW2d 641 (2005).

[8] Sylvan emphasizes that NDC and Magellan never sought a sewer connection, nor did they assert any lost profits from an inability to connect a unit to the sewer or water system.

discrepancy is irrelevant as it was the effectuation of a water delivery system and not the manner of delivery that was the predominant purpose of the contract.

The trial court held that collecting special assessment taxes that were set up for a sewage treatment plant and using those funds instead on the Interceptor constituted an improper diversion of special assessment funds. Relevant statutory language provides:

> Upon receipt of a petition or upon determination of the township board if a petition is not required . . . the township board, if it desires to proceed on the improvement, shall cause to be prepared plans describing the improvement and the location of the improvement with an estimate of the cost of the improvement on a fixed or periodic basis, as appropriate. Upon receipt of the plans and estimate, the township board shall order the same to be filed with the township clerk. If the township board desires to proceed with the improvement, the township board shall tentatively declare by resolution its intention to make the improvement and tentatively designate the special assessment district against which the cost of the improvement or a designated part of the improvement is to be assessed.[9]

Further:

> If, after the hearing provided for in [MCL 41.724] the township board desires to proceed with the improvement, the township board shall approve or determine by resolution . . . [t]he plans and estimate of cost as originally presented or as revised, corrected, amended, or changed.[10]

Accordingly, "the spending of sums acquired through assessment must be rigidly defined and the money collected must be segregated from all other accounts."[11]

A municipality may not establish a special assessment to fund a specific project but then use the proceeds derived for an alternative project, even if that alternative serves the purpose envisioned by the original project. The trial court correctly determined that the special assessments intended to cover the construction of a sewage treatment plant were invalid because the proceeds were actually applied to an Interceptor connecting to a neighboring municipality's sewage facilities. While the propriety of the assessment is questionable, it must also be determined whether this use of the funds constituted a breach of contract.

---

[9] MCL 41.724(1).

[10] MCL 41.725(1)(b).

[11] *Dukesherer Farms, Inc v Dep't of Agriculture*, 405 Mich 1, 20; 273 NW2d 877 (1979).

Sylvan contends that the Hamill agreement required it to provide sewer service but did not specify how that service was to be delivered. Proceeding from this premise, the alteration in plans from constructing a sewage treatment plant to an Interceptor did not constitute a breach of contract. The cited agreement repeatedly mentions Sylvan's obligation to undertake improvements to provide sewer services in general terms without reference to the construction of a treatment plant. The only exception is contained in a provision calling on Hamill (now NDC) to acknowledge and agree that the costs pertaining to the sewer system improvements include "the construction, acquisition and financing of the sanitary sewer treatment plant . . . ." Sylvan contends that this latter specification of a sewage treatment plant authorizes, but does not require it to satisfy the obligation to provide sewer service by way of a new plant.

To determine the parties' intent, this Court will read the contract "as a whole and attempts to apply the plain language."[12] The various parts of a contract should thus be read together.[13] We are required to construe the contract as a whole, including both the general references to the provision of sewage treatment services and the specific provision indicating that Sylvan was to construct its own plant. From a practical standpoint, it was irrelevant to NDC and Magellan precisely how Sylvan accomplished its objective to provide sewer service. Although alteration in the method of delivery by use of an Interceptor rather than a free-standing plant constituted a breach of the agreement, it is de minimis.

Finally, NDC and Magellan contend the trial court erred when it declined to include in the award of damages any late fees or other penalties incurred in connection with the special assessment payments. In awarding damages, the trial court calculated special assessment taxes paid, less appropriate offsets, and included interest on the totals, but did not include any late fees or other penalties that resulted from the failure to make timely payments on the special assessments. Specifically, the trial court determined that such fees or penalties were "incurred . . . as a result for failing to timely pay taxes, not because of [Sylvan's] breach." "Where a trial court . . . has determined the issue of damages, we review the award for clear error."[14] "Clear error exists where, after a review of the record, the reviewing court is left with a firm and definite conviction that a mistake has been made."[15]

"[T]he damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made."[16] To the extent that Sylvan breached its agreements with Magellan and NDC and improperly

---

[12] *Old Kent Bank v Sobczak,* 243 Mich App 57, 63; 620 NW2d 663 (2000).

[13] See, e.g., *First Baptist Church v Solner*, 341 Mich 209, 215; 67 NW2d 252 (1954); *JAM Corp v AARO Disposal, Inc*, 461 Mich 161, 170; 600 NW2d 617 (1999).

[14] *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002).

[15] *Id.*

[16] *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 414; 295 NW2d 50 (1980).

collected against the special assessments, Sylvan caused damages in those amounts. But any late fees or penalty interest incurred based on the delinquency of payment by NDC and Magellan is not a byproduct of the breach of contract and, therefore, is not recoverable.

Interest is not a penalty, but rather part of the judgment, compensating the person owed for the lost time-value of the money during the course of the litigation.[17] Penalties and late fees a party has paid in connection with tax payments ultimately determined to be recoverable by that party are distinguishable. While reasonable interest may accrue in conjunction with a judgment owed, late fees and other attendant penalties are incurred because of the payer's lack of diligence in remitting payment. In other words, although Sylvan caused NDC and Magellan to make payments on special assessments, it did not cause their lack of diligence in timely remitting the payments. For these reasons, the trial court properly declined to include in the awards to NDC and Magellan any late fees or other penalties they incurred because of their failure to timely remit payment of the assessments.

In summary, we vacate the trial court's ruling regarding parcels C through G and remand with instruction to give effect to the Amended Magellan Development Agreement as applicable in addition to any remaining claims arising therefrom not previously addressed by the trial court. We affirm the trial court's ruling that Sylvan's establishment of special assessments to cover the cost of constructing a sewage treatment plant, the abandonment of that plan and use of the monies procured to instead fund an Interceptor was contrary to the law pertaining to special assessments. We reverse the trial court's grant of summary disposition because a material question of fact existed regarding whether the sewer or water systems were operational at the time of collection, necessitating remand to the trial court. We affirm the trial court's decision to not include in the award of damages to NDC and Magellan any late fees or other penalties they incurred from their failure to timely remit the special assessment payments.

Affirmed in part, vacated in part, reversed in part and remanded to the trial court for further proceedings consistent with this opinion. The trial court's permanent injunctions are dissolved to the extent they are in conflict with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Michael J. Talbot

---

[17] See *Xerox Corp v Oakland Co*, 191 Mich App 433, 441; 478 NW2d 702 (1991).