# **Exhibit B**

2010 WL 3021860
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

FARMERS INSURANCE EXCHANGE, Plaintiff–Appellee,
v.
Rufus YOUNG, Defendant–Appellant,
and
Nicole Williams and Linda Lee, Defendants.
Henry Ford Health System, Plaintiff–Appellee,
v.
Farmers Insurance Exchange, Defendant–Appellant.

Docket Nos. 275584, 283865.
|
Aug. 3, 2010.

West KeySummary

1   Insurance — Particular matters concluded

Collateral estoppel barred health system that provided medical services to an automobile driver from recovering payment from insurer when a previous case had decided that the driver of a vehicle had taken the vehicle unlawfully. The driver, who was unlicensed and was driving a car that belonged to another person, was injured when another car ran into him. In a previous case filed by the driver, the court decided that he did not have a reasonable belief that he was entitled to take and use the vehicle, and was consequently barred from personal injury benefits under Michigan law. As privity and mutuality were shared between the two cases, and the judgment of the court against the driver was final, the court's verdict was binding on the claim of health system against the insurer.

M.C.L.A. § 500.3113(a).

3 Cases that cite this headnote

Wayne Circuit Court; LC Nos. 06–601127–NF, 06–611910–NF.

Before: ZAHRA, P.J., and O'CONNELL and K.F. KELLY, JJ.

**Opinion**

PER CURIAM.

*1 In Docket No. 275584, defendant, Rufus Young, appeals as of right a declaratory judgment in favor of plaintiff, Farmers Insurance Exchange, which denied Young personal protection insurance benefits. In Docket No. 283865, defendant, Farmers Insurance Exchange, appeals as of right a subsequent judgment in favor of plaintiff, Henry Ford Health System ("Henry Ford"). It challenges the trial court's earlier order refusing to apply collateral estoppel to Henry Ford's claim and denying Farmers Insurance Exchange's motion for summary disposition.[1] We affirm in Docket No. 275584 and reverse in Docket No. 283865.

I. BASIC FACTS AND PROCEEDINGS

This case arises out of an automobile accident that occurred on June 6, 2005. Nicole Williams owned a 2001 Kia, one of the vehicles involved in the accident. Before the accident, she received a prepaid vacation to the Bahamas. She planned to stay in the Bahamas from Sunday, June 5, 2005, until Thursday, June 9, 2005, and needed a caretaker for seven-year-old Jalen. Williams learned that her cousin, Lee, was losing her home. Williams invited Lee to stay at her home and take care of Jalen. Lee accepted the offer and moved in on Saturday, June 4, 2005.

Williams testified that she spoke to Lee about the Kia before she left for her trip. Because Williams had been on

disability and could not drive, the vehicle was parked in Williams' fenced backyard. Williams had not insured it or used it for several months. Williams testified that she told Lee that "I didn't have any insurance," and Lee replied, "I'm not going anywhere." Williams believed that if she told Lee that the vehicle was uninsured, Lee would not drive it. Williams testified that Lee did not need to drive anywhere in order to care of Jalen. Williams provided Lee with food and money, and told Lee to walk Jalen around the corner to school. Lee had driven the Kia once previously, years earlier, in an "emergency." Cynthia Hughes, Williams' sister, told Lee that she would be available if Jalen or Lee needed transportation.

Hughes drove Williams to the airport. Williams testified that Hughes did not use the Kia for this trip. However, Lee testified that Hughes drove Williams to the airport in the Kia and that meanwhile she and Jalen stayed at Hughes' home. Lee claimed that Hughes did not own a vehicle. Lee testified that when Hughes returned, she gave Lee the keychain and instructed her to take Jalen and the vehicle back to Williams' home. Lee claimed that, in addition to caring for Jalen, she needed the Kia in order to move her belongings into Williams' home.

On the night of the accident, Lee was intoxicated. She drove Jalen, in the Kia, from Williams' home to a party store to buy beer. Then, she took Jalen to Young's workplace. Young worked in a two-family unit, repairing drywall, plumbing and electrical problems. He also lived on the premises. When Lee reached the unit, she drank beer on the porch while Jalen rode his bike. Lee stayed approximately 45 minutes. When Lee stood up to leave, between 7:00 and 8:00 p.m., both she and Young believed that she was no longer fit to drive.

*2 Lee testified that she was "ready to go home," but leaving was not an emergency. She hoped that Young would help her move into Williams' home. In contrast, Young testified that Lee was annoying him at work. He testified that even though Lee was intoxicated, he could not allow her and Jalen to stay there. Because he did not want Lee to drive in her condition, Young agreed to drive them to Williams' home. Young's driving privileges had been terminated since 1983. Young testified that Williams did not give him permission to drive the Kia before she left. He opined that, in light of his driving record, Williams would not have allowed him to use it. He did not know if Lee had permission to drive the Kia.

While Young was driving to Williams' home with Lee and Jalen, another driver hit the Kia. Lee and Young were injured. Jalen was killed. The other driver was criminally charged for the accident. Young did not receive a traffic citation.

Because none of the parties or vehicles were insured, Young subsequently applied for personal protection benefits for his injuries and medical expenses through the Assigned Claims Facility, MCL 500.3172. Farmers Insurance Exchange was Young's Assigned Claims Carrier. Farmers Insurance Exchange filed a complaint for declaratory relief on January 11, 2006. Farmers Insurance Exchange claimed that it could deny benefits to Young under MCL 500.3113 because he used Williams' vehicle without consent or a reasonable belief that he was entitled to use it.

Following the presentation of evidence at trial on December 6, 2006, the trial court stated that Young was not lawfully entitled to drive Lee and Jalen to Williams' home because he was unlicensed. The court also stated that no exigency existed because Lee had money to seek alternative transportation. Finally, the court stated that the Good Samaritan doctrine did not apply because it excuses a defendant from contributory negligence, not unlawful conduct. The trial court concluded that Farmers Insurance Exchange was entitled to relief. The trial court also dismissed Young's case against Farmers Insurance Exchange for first-party benefits, lower court no. 06–603757–NF, based on res judicata. Young filed a motion for reconsideration with the trial court on December 19, 2006. Consistent with its holding on December 6, 2006, on January 10, 2007, the trial court entered an order stating that Young unlawfully operated the Kia and had no reasonable belief that he was entitled to do so. The trial court also ordered that Young was not entitled to no-fault benefits arising out of the accident, which resulted from his use of the Kia. Young filed an appeal as of right.

In a separate case, Henry Ford filed a complaint against Farmers Insurance Exchange on April 25, 2006. It maintained that it provided services to Young for injuries arising from the June 6, 2005, accident. It claimed that Farmers Insurance Exchange was liable for the cost of these services pursuant to MCL 500.3112. In its answer, Farmers Insurance Exchange denied liability.

*3 On February 23, 2007, Farmers Insurance Exchange filed a motion for summary disposition. It claimed that the trial court's earlier declaratory judgment finding that Young was not entitled to personal protection insurance benefits arising out of the June 6, 2005, accident, barred Henry Ford's recovery for Young's medical expenses from that accident. In response, Henry Ford argued that the parties in the two cases differed, it was not provided notice of the declaratory judgment action, and it had not

yet had an opportunity to litigate the issue. It also argued that the declaratory judgment was not final because all appeals had not been exhausted. Relying on *Borgess Medical Ctr. v. Resto,* 273 Mich.App. 558, 730 N.W.2d 738 (2007),[2] vacated and aff 'd *Borgess Medical Ctr. v. Resto,* 482 Mich. 946, 754 N.W.2d 321 (2008), and stating that summary disposition would be inequitable, the court denied Farmer's Insurance Exchange's motion on April 17, 2007.

The trial court excluded from evidence the outcome of the declaratory judgment and the case proceeded to trial. Young testified for Henry Ford. He clarified or changed his testimony from that in the declaratory judgment action in several respects. First, he testified that he wanted Lee to leave his workplace because he expected his supervisor and did not want him to see Lee. Second, in contrast to his earlier testimony that he did not know if Lee had permission to drive the Kia, Young testified that he believed she had permission. Third, in contrast to his earlier testimony that Williams would not have permitted him to drive the Kia, Young testified that Williams may have allowed it if he had asked her. Because Williams and Lee were not available, Williams' earlier deposition and Lee's testimony from Young's trial were read into the record for the jury. The jury found in Henry Ford's favor, concluding that Henry Ford incurred $157,523.86 for services provided to Young and that Young did not take the vehicle unlawfully, without a reasonable belief that he was entitled to do so.[3] A judgment for Henry Ford was entered on January 30, 2008. Farmers Insurance Exchange filed its claim of appeal from this judgment on February 20, 2008.

Docket No. 275584 was submitted on case call on February 13, 2008. On February 22, 2008, Young filed a motion in Docket No. 275584, requesting that this Court consider the jury verdict for Henry Ford and the corresponding January 30, 2008, judgment. This Court granted Young's motion on March 20, 2008. *Farmers Ins Exchange v. Young,* unpublished order of the Court of Appeals, entered March 20, 2008 (Docket No. 275584). On August 26, 2008, Farmers Insurance Exchange moved to consolidate docket numbers 275584 and 283865. This Court granted the motion on September 10, 2008.[4]

II. DOCKET NO. 275584

On appeal, Young contends that the trial court erred when it concluded that, pursuant to an exclusion in MCL 500.3113, he was not entitled to personal protection insurance benefits.

A. STANDARD OF REVIEW

**\*4** This Court reviews de novo a trial court's ruling in a declaratory judgment action. *Toll Northville, Ltd v. Northville Twp.,* 480 Mich. 6, 10, 743 N.W.2d 902 (2008). The trial court's findings of fact are reviewed for clear error. *Christiansen v. Gerrish Twp.,* 239 Mich.App. 380, 387, 608 N.W.2d 83 (2000); MCR 2.613(C). A trial court's finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made. *Christiansen,* 239 Mich.App. at 387, 608 N.W.2d 83.

B. ANALYSIS

MCL 500.3113(a) provides, in pertinent part, that:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.

This Court recently addressed the above provisions in *Amerisure Ins. Co. v. Plumb,* 282 Mich.App. 417, 766 N.W.2d 878 (2009), lv. denied, 485 Mich. 909, 773 N.W.2d 18 (2009), under very similar circumstances.

In *Plumb,* the plaintiff was at a bar consuming alcohol. Another patron later arrived at the bar having driven himself there in an uninsured Jeep Cherokee. He left the keys in the vehicle and left the doors open. He did not know the plaintiff and did not give her permission to drive the vehicle. The plaintiff left the bar with two other men. One of the men allegedly handed her the keys to the Jeep and asked her to drive because he was on probation. The plaintiff was intoxicated, did not maintain automobile insurance, and did not reside with a relative who carried automobile insurance. Further, her driver's license had

been suspended. Later that morning, the plaintiff was found lying in a field near the bar, having sustained severe injuries. Police concluded that the plaintiff had been driving the Jeep and was its sole occupant. *Plumb,* 282 Mich.App. at 420–421, 766 N.W.2d 878.

The plaintiff sought PIP benefits and an insurer was assigned the claim. The insurer, however, filed a declaratory action alleging that the plaintiff was not entitled to PIP benefits pursuant to MCL 500.3113(a) when the Jeep was taken unlawfully and when the plaintiff did not have a reasonable belief that "she was entitled to take and use the vehicle." In a split decision, this Court held that the plaintiff "unlawfully took" the Jeep and that the plaintiff did not reasonably believe that she was entitled to use a vehicle.

Here, the trial court made sufficient findings to conclude Young took the Kia unlawfully for the purposes of MCL 500.3113(a). The trial court found that Lee did not have Williams' permission to drive the Kia. Williams testified that she told Lee that the Kia was uninsured and she believed Lee would not drive it because Lee said, "I'm not going anywhere." The trial court also found that "[t]hough [Young] allegedly was, according to one person, given the direction by a Linda Lee to operate the [Kia], [Young] had no reason to believe that she had the authority or permission to give him permission to operate the [Kia.]" The lower court record supports this finding. The record reflects that Young knew Lee, the mother of two of his daughters, and Williams, Lee's cousin, very well. Also, the record establishes that Young knew the Kia belonged to Williams and did not belong to Lee. Young even testified that Williams would not have consented to him driving the Kia. Further, a reasonable inference can be made that Lee would not have had Williams' permission to use Kia when she arrived at Young's place of employment intoxicated with Williams' son in tow. The argument that Young believed that Lee had Williams' permission to use the Kia under these circumstances is disingenuous and contrary to the record evidence. There is no evidence that Young had Williams' consent or implied consent to take the Jeep. Thus, consent could not be implied through a chain of entrustment from Lee to Young. *Bronson Methodist Hosp. v. Forshee,* 198 Mich.App. 617, 626, 499 N.W.2d 423 (1993).[5] Accordingly, under *Plumb,* Young took the Kia unlawfully for the purposes of MCL 500.3113(a).

**\*5** In addition, *Plumb* also held that the plaintiff could not have reasonably believed that he was entitled to legally use the Jeep at the time of the accident. This Court noted that the plaintiff was intoxicated and her driver's license had been suspended. As noted, Lee and Young did not have consent to drive the Kia. In addition, Young was not issued a valid operator's license and he knew it was unlawful for him to operate the Kia without a license. Further, Lee testified that an emergency did not exist to require Young to drive. Although Lee was intoxicated and unable to drive, she had money for a cab or bus. She also could have contacted Hughes for assistance. Alternatively, Lee could have remained where she was until she was sober. In light of these facts, Young could not have reasonably believed that he was entitled to use the Kia. The trial court properly determined that, pursuant to MCL 500.3113(a), Young was excluded from personal protection insurance benefits. *Id.*[6]

DOCKET NO. 283865

On appeal, Farmers Insurance Exchange maintains that Henry Ford's action should have been barred by collateral estoppel as a result of the ruling in the declaratory judgment action.[7]

A. STANDARD OF REVIEW

The application of legal doctrines, such as collateral estoppel, is reviewed de novo. *Estes v. Titus,* 481 Mich. 573, 578–579, 751 N.W.2d 493 (2008).

B. ANALYSIS

Farmers Insurance Exchange specifically argues that the trial court erred by denying its motion for summary disposition. It maintains that Henry Ford's claim for the repayment of Young's medical expenses should have been collaterally estopped by the trial court's declaratory judgment. We agree.

The application of collateral estoppel generally requires the satisfaction of three elements:

(1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid

and final judgment;" (2) "the same parties must have had a full [and fair] opportunity to litigate the issue;" 2 and (3) "there must be mutuality of estoppel." [*Monat v. State Farm Ins. Co.,* 469 Mich. 679, 682–684, 677 N.W.2d 843 (2004), quoting *Storey v. Meijer, Inc.,* 431 Mich. 368, 373 n. 3, 429 N.W.2d 169 (1988).]

Here, the issue actually litigated was whether MCL 500.3113(a) precluded Farmers Insurance Exchange's payment of personal protection insurance benefits to Young. Therefore, when Farmers Insurance Exchange argued MCL 500.3113(a) as a defense to Henry Ford's subsequent action, this issue had already been litigated. *Monat, supra,* 469 Mich. 682.

Further, for collateral estoppel to preclude relitigation of issues, the parties in the second action must be the same as or privy to the parties in the first action. *VanVorous v. Burmeister,* 262 Mich.App. 467, 480, 687 N.W.2d 132 (2004). "A party is one who is directly interested in the subject matter and has a right to defend or to control the proceedings and to appeal from the judgment." *Husted v. Auto–Owners Ins. Co.,* 213 Mich.App. 547, 556, 540 N.W.2d 743 (1995), aff'd 459 Mich. 500, 591 N.W.2d 642 (1999). Even though Henry Ford was not a named party in the declaratory action, it was privy to Young. "A person is in privy to a party if, after the judgment, the person has an interest in the matter affected by the judgment through one of the parties, such as by inheritance, succession, or purchase." *Husted, supra,* 213 Mich.App 556. In addition to a substantial identity of interests, Michigan courts require " 'a working or functional relationship ... in which the interests of the non-party are presented and protected by the party in the litigation.' " *Peterson Novelties, Inc. v. City of Berkley,* 259 Mich.App. 1, 13, 672 N.W.2d 351 (2003), quoting *Phinisee v. Rogers,* 229 Mich.App. 547, 553–554, 582 N.W.2d 852 (1998), lv den 459 Mich. 956, 590 N.W.2d 572 (1999).

**\*6** Here, Young and Henry Ford shared an interest in the declaratory judgment, namely, Young's right to recover personal insurance protection benefits, including medical costs arising from the accident. *Husted, supra,* 213 Mich.App 556. Although Henry Ford claimed that it was not provided notice of the declaratory judgment action, it acknowledged that it learned of the action from responses to interrogatories filed in its own action. With this knowledge, Henry Ford could have intervened in the declaratory judgment action to protect its rights. We conclude that Henry Ford was privy to Young in the declaratory action.

Contrary to this conclusion, Henry Ford relies on *Borgess Medical Ctr, supra,* 273 Mich.App 569, and maintains that it was not privy to Young because it had a cause of action for unpaid medical bills, which was independent from Young's application for personal protection benefits. We agree that Henry Ford had an independent cause of action. See *Borgess Medical Ctr., supra,* 273 Mich.App. 558, 730 N.W.2d 738 (the subsequently vacated opinion held that a medical provider has an independent cause of action against a no-fault carrier liable for benefits to the injured person); *Lakeland Neurocare Ctrs. v. State Farm Mut. Automobile Ins. Co.,* 250 Mich.App. 35, 42–44, 645 N.W.2d 59 (2002) (a party providing benefits to an injured person entitled to no-fault benefits may make a direct claim against a no-fault insurer). However, Henry Ford's standing to pursue such a cause of action merely highlights its ability and failure to intervene in the declaratory judgment action. Thus, standing does not obviate the relationship between Henry Ford and Young.

Mutuality is an additional requirement for collateral estoppel. *Monat, supra,* 469 Mich. 683–684.

> " 'Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, the estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him.' " [*Id.,* pp 684–685, quoting *Lichon v. American Universal Ins. Co.,* 435 Mich. 408, 427, 459 N.W.2d 288 (1990).]

Here, the party asserting collateral estoppel, Farmers Insurance Exchange, was a party to the declaratory judgment action and it would have been bound by the judgment, had it gone against it. Therefore, we conclude mutuality existed.

Last, the parties dispute whether the judgment was final. Henry Ford stresses that this Court has stated that a judgment is final "when all appeals have been exhausted or when the time available for an appeal has passed." *Leahy v. Orion Twp.,* 269 Mich.App. 527, 530, 711 N.W.2d 438 (2006); see also *Cantwell v. Southfield,* 105 Mich.App. 425, 429–430, 306 N.W.2d 538 (1981). We agree there is no question that, as in *Leahy,* a party cannot collaterally attack a judgment that has been finalized on appeal. However, we conclude that the above proposition does not necessarily permit a party to collaterally attack a judgment that has yet to be finalized on appeal. Indeed, this Court has previously held that "[t]he rule in Michigan is that a judgment pending on appeal is deemed *res judicata.*" *City of Troy Building Inspector v. Hershberger,* 27 Mich.App. 123, 127, 183 N.W.2d 430) (1970) (emphasis in original), citing 14 Michigan Law & Practice Judgment, § 176, p 620. Further, that "[o]nly in a

case where the second appeal itself prevents the prior judgment from being operative is the res judicata effect of the prior judgment inoperative." *Id.* (emphasis in original), citing McHugh v. Trinity Bldg. Co., 254 Mich. 202, 206, 236 N.W. 232 (1931). Several cases have since recognized the above principles. See Temple v. Kelel Distributing Co., Inc., 183 Mich.App. 326, 328, 454 N.W.2d 610 (1990) ("Although defendant has appealed an adverse ruling that plaintiff's decedent was not an employee at the time of the accident, the decision nevertheless has res judicata effect."); Roskam Baking Co. v. Lanham Machinery Co., 105 F Supp 2d 751, 755 (WD Mich.2000. ("Michigan and federal courts hold that appeal of a judgment does not alter the judgment's preclusive effect"); Robinson v. Fiedler, 91 F.3d 144 (C.A.6, 1996) (decision of lower court is res judicata, regardless of pending appeal); *Fognini v. Verellen,* unpublished per curiam opinion of the Court of Appeals, issued March 25, 2003 (Docket No. 235453); 47 Am Jur 2d, Judgments, § 528, p 314; Restatement Judgments, 2d, § 528, comment f (one policy supporting the refusal to apply collateral estoppel with a judgment pending on appeal is to prevent inconsistent judgments that could arise when a judgment pending on appeal serves as the basis for a subsequent judgment, but is later reversed). Thus, we conclude for purposes of collateral estoppel or res judicata that the January 10, 2007 declaratory judgment was a "final judgment." Accordingly, the court erred in denying Farmers Insurance Exchange's motion for summary disposition on Henry Ford's claim.

**\*7** We affirm in Docket No. 275584 and reverse in Docket No. 283865. We remand for entry of judgment consistent with this opinion. We do not retain jurisdiction.

O'CONNELL, J. (dissenting).

**\*7** I respectfully dissent. In *Henry Ford Health Sys. v. Farmers Ins. Exch.,* Docket No. 283865, a jury determined that the Kia was *not* taken unlawfully. Further, in *Farmers Ins. Exch. v. Young,* Docket No. 275584, the trial court never determined that the Kia was taken unlawfully. Since no determination was ever made that the vehicle was taken unlawfully, the exception set forth in MCL 500.3113(a) precluding receipt of PIP benefits by an individual using a vehicle "which he or she had taken unlawfully" does not apply to this case. Accordingly, defendant-appellant Rufus Young is entitled to no-fault personal protection insurance (PIP) benefits,[1] and Henry Ford Health System is entitled to reimbursement for services provided to Young. I would reverse the trial court in Docket No. 275584 and affirm the trial court in Docket No. 283865. I note that the majority opinion reaches the opposite result in each of these cases.

I. FACTS

Although there is conflicting testimony in these cases, it appears that the essential facts are as follows. Nicole Williams owned a 2001 Kia. Linda Lee, Williams' cousin, lived with Williams. Young is Lee's boyfriend. Williams was on vacation in the Bahamas when the accident in question occurred. According to Lee, Cynthia Hughes, Williams's sister, had driven Williams to the airport in the Kia. When Hughes returned from the airport after dropping off Williams, she handed the car keys to Lee and told Lee to drive Williams' son, Jalen, in the Kia back to Williams' house. If a jury accepts these facts as true, Lee had lawful possession of the Kia.

The facts also suggest that on the day of the accident, an intoxicated Lee permitted Young to drive her and Jalen home. Unfortunately, as Young was driving Lee and Jalen home, they were involved in the accident at issue in this case. Under this set of facts, which the jury in Docket No. 283865 apparently accepted as true, neither Lee nor Young unlawfully took the Kia.

I. ISSUES

A. NO UNLAWFUL TAKING HAS BEEN ESTABLISHED

These cases involve the interpretation of MCL 500.3113(a). The fundamental issue in this case is whether Young unlawfully took the motor vehicle in question. I conclude that there was no unlawful taking of this vehicle and, therefore, both Young and Henry Ford Health System are entitled to reimbursement for services

Farmers Ins. Exchange v. Young, Not Reported in N.W.2d (2010)

2010 WL 3021860

provided to Young.

The majority in *Amerisure Ins. Co. v. Plumb,* 282 Mich.App. 417, 766 N.W.2d 878 (2009), lv den 485 Mich. 909, 773 N.W.2d 18 (2009), set forth the circumstances under which MCL 500.3113 applies, stating:

> MCL 500.3113 precludes PIP benefits under certain circumstances, and it provides, in pertinent part:
>
>> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>>
>> **\*8** (a) The person was using a motor vehicle or motorcycle which he or she had *taken unlawfully,* unless the person *reasonably believed that he or she was entitled to take* **and** *use the vehicle.* [Emphasis added in *Amerisure Ins.*]
>
> Thus, PIP benefits will be denied if the taking of the vehicle was unlawful and the person who took the vehicle lacked "a reasonable basis for believing that he [or she] could take and use the vehicle." *Bronson Methodist Hosp. v. Forshee,* 198 Mich.App. 617, 626, 499 N.W.2d 423 (1993). When applying § 3113(a), the first level of inquiry will always be whether the taking of the vehicle was unlawful. If the taking was lawful, the inquiry ends because § 3113(a) does not apply. [*Amerisure Ins.,* 282 Mich.App. at 424–425, 766 N.W.2d 878 .]

Accordingly, *Amerisure Ins* makes clear that when determining whether MCL 500.3113(a) precludes PIP coverage, "the first level of inquiry" is "whether the taking of the vehicle was unlawful." *Id.* at 425, 766 N.W.2d 878. If the taking was lawful, MCL 500.3113(a) does not apply. *Id.*

The lower court record in Docket No. 283865 indicates that the jury determined that Young had not unlawfully taken the vehicle. The jury verdict form states:

> **Question No. 4:**
>
> Did Rufus Young use a motor vehicle at the time of the accident which he had taken unlawfully and without reasonable belief that he was entitled to take and use the vehicle?
>
> Answer: *N* (yes or no)

Accordingly, because the jury in Docket No. 283865 determined that Young did *not* "use a motor vehicle at the time of the accident which he had taken unlawfully," the inquiry ends at this point with respect to this case. MCL 500.3113(a) does not apply, and Young is entitled to PIP benefits. The judgment in the case properly reflected this outcome, as Farmers Insurance Exchange (Farmers), the assigned claims provider, was required to reimburse Henry Ford Health System $157,523.86 to cover the cost of Young's treatment for injuries arising from the accident.

In Docket No. 275584, the trial court never made sufficient findings of fact to conclude that Young took the Kia unlawfully for purposes of MCL 500.3113(a). In the final order entered in this case, the trial court stated in its entirety:

> The Trial of this matter having been heard before the Honorable John O'Hara on December 6, 2006 and the Court returning a verdict in favor of Farmers Insurance Exchange,
>
> IT IS HEREBY ORDERED that Rufus Young was operating a vehicle in violation of MCLA 500.3113(a) as he was unlawfully operating said vehicle and had no reasonable belief that he was entitled to use same.
>
> IT IS FURTHER ORDERED that Rufus Young is therefore not entitled to the receipt of No–Fault Benefits arising out of the June 6, 2005 motor vehicle accident.
>
> IT IS SO ORDERED.

This order indicates that the trial court based its decision to deny Young PIP benefits on its conclusion that Young was "unlawfully operating" this vehicle at the time of the accident. However, I maintain that the unlawful operation of a vehicle is not a legal basis for denying PIP benefits. *Amerisure Ins.,* 282 Mich.App. at 433, 766 N.W.2d 878 (O'Connell, J., dissenting). Further, although the order indicates that the trial court determined that Young "had no reasonable belief that he was entitled to use" the vehicle, the trial court never determined whether Young unlawfully *took* the vehicle.[2] In my opinion, the trial court's failure to even determine whether an unlawful taking occurred constitutes error. In the absence of a finding by the trial court in Docket No. 275584 that an "unlawful taking" occurred, Young is entitled to PIP benefits.

**\*9** The majority opinion compounds the error by assuming that the trial court concluded that Young unlawfully took this vehicle. Armed with this faulty conclusion, the majority then concludes that the doctrine of collateral estoppel applies in Docket No. 283865. I would note that neither the doctrine of collateral estoppel nor MCL 500.3113(a) applies if the trial court does not

first determine that Young unlawfully took the vehicle.[3]

B. LAWFUL OPERATION IS NOT REQUIRED TO RECEIVE PIP BENEFITS

For the reasons stated in my dissent in *Amerisure Ins., 282 Mich.App. 417, 766 N.W.2d 878,* I respectfully dissent from the majority's conclusion that in order to obtain PIP benefits, defendant must reasonably believe that he was entitled to take and lawfully use the motor vehicle at the time of the accident. First, I note that this case is distinguishable from *Amerisure Ins.* In *Amerisure Ins,* the majority determined, and I concurred, that "there is no genuine issue of material fact that Plumb unlawfully took the Jeep, and § 3113(a) applies." *Id.* at 427, 766 N.W.2d 878. Conversely, the facts of this case suggest that no lawful taking occurred in this case.[4] However, I also maintain, as I did in *Amerisure Ins,* that MCL 500.3113(a) does not require "lawful" operation of a motor vehicle in order to obtain PIP benefits.

Our Court has stated on numerous occasions, "[I]t is the unlawful nature of the taking, not the unlawful nature of the use, that is the basis of the exclusion under [MCL 500.3113(a) ]." *Butterworth Hosp. v. Farm Bureau Ins. Co.,* 225 Mich.App. 244, 250, 570 N.W.2d 304 (1997). The majority simply assumes that the vehicle was "unlawfully taken," and claims that defendant must have a reasonable belief that he could "legally use" and "lawfully operate" the motor vehicle in order to receive PIP benefits.[5] I disagree. The statute does not, nor was it intended to, address whether the *use* of the motor vehicle was legal or the *operation* of a motor vehicle was lawful.[6] This statute is only concerned with whether the vehicle was *taken* in a lawful manner.[7]

In *Bronson Methodist Hosp.,* 198 Mich.App. 617, 499 N.W.2d 423, Stanley Pefley permitted his son, Thomas, to use his vehicle, while prohibiting Thomas's friends, especially Mark Forshee, from using the vehicle. *Id.* at 626, 499 N.W.2d 423. Thomas was driving Forshee and another friend, William Morrow, in the vehicle when he was pulled over and arrested for having beer and a billy club in the vehicle, in violation of his probation. *Id.* at 620, 499 N.W.2d 423. Thomas entrusted the vehicle to Morrow to drive home, but at Morrow's request, Forshee later drove the vehicle, although he did not have a valid operator's license. *Id.* at 620–621, 499 N.W.2d 423. Forshee began speeding in the vehicle and entered a high-speed chase with police, which ended when he crashed the car and was injured. *Id.* at 621, 499 N.W.2d 423.

The *Bronson* Court noted that the question whether an individual has a reasonable basis for believing that he can take and use the vehicle does not lend itself to a hard and fast rule, but depends largely on the circumstances of a particular case. The Court explained:

*10 [U]nder [MCL 500.3113(a) ], it is necessary not only that the taking of the vehicle be unlawful, but also that the person who took the automobile not have a reasonable basis for believing that he could take and use the vehicle. In the case at bar, the trial court focused on the restrictions imposed by Stanley Pefley on his son not to allow others to use the vehicle and specifically the restriction barring Mark Forshee's use of the vehicle. While these facts are certainly relevant and would perhaps even be dispositive had Forshee borrowed the vehicle without anyone's knowledge or consent, it is nevertheless necessary to look at the specific, unique facts that led up to Forshee's driving of the vehicle on the night in question.

Forshee's use of the automobile did not arise in a context where he had merely "borrowed" his friend's automobile for his personal use without the friend's knowledge or permission or even in a context where he took possession of the vehicle contrary to the friend's wishes while on an outing with his friend. Rather, Thomas Pefley had entrusted the vehicle to Morrow to drive home, with Pefley's only other option presumably being to have the car impounded and towed and his friends stranded in need of transportation. Thereafter, Morrow turned the vehicle over to Forshee to drive, apparently because he was uncomfortable driving a vehicle with a manual transmission.

We cannot say that it is unreasonable for a person to believe that he cannot take and use a vehicle where he was a passenger in the vehicle and the driver/owner (or owner's son) is in police custody and wishes the vehicle taken home and the only other available driver is unwilling to drive because he is uncomfortable with the manual transmission. A person in such a position, while understanding that there is a general preclusion to his use of the vehicle, might nonetheless reasonably believe it permissible under those unique circumstances to take and use the vehicle. The fact that the subsequent use of the vehicle was beyond the scope of the entrustment is irrelevant, because the focus is on the taking of the vehicle, not the use. See *State Farm [Mut Auto. Ins. Co. v. HawkeyeSecurity Ins. Co.,* 115 Mich.App. 675, 321 N.W.2d 769 (1982) ]. [*Bronson*

> *Methodist Hosp.,* 198 Mich.App. at 626–627, 499 N.W.2d 423.]

The *Bronson* Court also clarified that MCL 500.3113 does *not* exclude individuals who operate a motor vehicle without a valid operator's license from receiving PIP benefits:

> Similarly, the fact that Forshee did not possess a driver's license also does not control resolution of the insurance issue because it is the unlawful nature of the taking, not the unlawful nature of the use, that forms the basis of the exclusion under the statute. In MCL 500.3113; MSA 24.13113, the Legislature excluded from personal protection insurance benefits individuals who unlawfully take motor vehicles and those who have not procured the automobile insurance required under the no-fault act. If the Legislature had desired to also exclude from coverage those individuals who operate a motor vehicle without a valid operator's permit, it could have included that class of individuals within the purview of the statute. It did not. [*Id.* at 627–628, 499 N.W.2d 423.]

**\*11** In *Butterworth Hosp.,* 225 Mich.App. at 246, 570 N.W.2d 304, the injured party, Floyd Wright, was driving his mother's vehicle without her permission when he was involved in an accident. In his majority opinion in the case, Judge Bandstra stated:

> Farm Bureau asserts that Wright took the vehicle unlawfully because he took it knowing that he was physically incapable of operating the vehicle safely and was not entitled to be a licensed driver. Farm Bureau argues that Wright was therefore driving recklessly in violation of MCL 257.626; MSA 9.2326 or driving feloniously under MCL 752.191; MSA 28.661. Further, Farm Bureau argues that Wright's taking of his mother's vehicle was unlawful because he knew that it was uninsured. Farm Bureau argues that Wright violated MCL 500.3102(2); MSA 24.13102(2), which makes it a misdemeanor to operate a motor vehicle on a public highway knowing that it is uninsured. Each of these arguments raises questions regarding the use of the vehicle by Wright, not the taking. However, it is the unlawful nature of the taking, not the unlawful nature of the use, that is the basis of the exclusion under [MCL 500 .3113(a) ]. *Bronson Methodist Hosp* [, 198 Mich.App. at 627]; *State Farm Mut. Automobile Ins. Co* [, 115 Mich.App. at 682]. [*Id* . at 250, 321 N.W.2d 769.]

In fact, to insert a "lawful use" requirement into MCL 500.3113(a) partially defeats the purpose of the no-fault act, which is to provide benefits to those who are involved in automobile accidents regardless of fault.[8] Furthermore, it creates two classes of drivers under MCL 500.3113(a): those who have a reasonable belief that they are entitled to take and use a vehicle, and those who have a reasonable belief they can take and *lawfully* use a motor vehicle. Under the majority's interpretation of MCL 500.3113(a), the first class would be denied benefits under the no-fault act, while the second class would be entitled to collect PIP benefits.[9]

I concur with the implication in the majority opinion that defendant could not lawfully operate this vehicle because his license was suspended. However, I disagree with the majority's conclusion that MCL 500.3113(a) imposes a requirement on defendant that he reasonably believe he or she was entitled to take and *legally* use the motor vehicle. The savings clause does not contain the words "legally use" or "lawfully operate." Instead, I would follow the Court's statement in *Bronson,* which specifically interpreted MCL 500.3113(a) so as *not* to exclude from coverage those individuals who operate a motor vehicle without a valid operator's permit.[10]

In my opinion, the exclusion of PIP benefits should apply only if the injured party had the intent to steal the vehicle or, under some circumstances, the intent to joyride in the vehicle.[11] As Judge Hoekstra stated in his concurrence in *Butterworth Hosp,* "[MCL 500.3113(a) ] precludes coverage only where the person taking the vehicle unlawfully does so with the intent to steal and [ ] the provision was not intended to exclude coverage for a person injured while joyriding in an automobile." *Butterworth Hosp.,* 225 Mich.App. at 253, 570 N.W.2d 304 (Hoekstra, J., concurring).

**\*12** Under MCL 500.3113(a) and its savings clause, an individual who steals a motor vehicle is not entitled to coverage from the insurance company insuring the stolen vehicle. Again, MCL 500.3113(a) provides, in pertinent part:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.

The purpose of MCL 500.3113(a) is to preclude PIP coverage on the stolen vehicle if, at the time of the accident, "[t]he person was using a motor vehicle ... which he or she had taken unlawfully." That means that if an individual takes a vehicle with the intent to steal that vehicle, the company insuring the vehicle does not have

to provide PIP benefits to the thief. Nothing in this part of the statute addresses the unlawful operation of a motor vehicle. From a public policy standpoint, this makes sense. An insurance company does not assume the risk of paying PIP benefits to an individual who unlawfully takes (i.e., steals) and uses a motor vehicle insured by the company. Whether the vehicle was being lawfully or unlawfully operated at the time of the accident is of little consequence; because the *taking* was unlawful, the insurance company is not required to provide PIP benefits.

The savings clause attached to MCL 500.3113(a), which reads "unless the person reasonably believed that he or she was entitled to take and use the vehicle," only applies to the "intent to steal" element. If a person reasonably believes he is *entitled* to take and use the motor vehicle, the savings clause negates the "intent to steal" clause in the first part of the sentence. The savings clause was not intended to add a "lawful operation" clause to the equation. As the *Bronson* Court aptly noted, if that were the case, the Legislature would have added the words "lawfully operate" to the savings clause. See *Bronson Methodist Hosp.,* 198 Mich.App. at 627–628, 499 N.W.2d 423.

Stated another way, the savings clause was not intended to void insurance coverage based on the unlawful *operation* of a motor vehicle. Individuals purchase insurance to protect themselves from the financial consequences of involvement in an automobile accident, so that if such an accident does occur (often, arising from some type of unlawful operation), coverage is available for damages. The task of punishing those individuals who unlawfully operate a motor vehicle is best left to the police and prosecutor; the Legislature did not intend to preclude these individuals from receiving PIP benefits as an additional punishment. Under MCL 500.3113(a), the unlawful nature of the taking of the vehicle, not the unlawful use of the vehicle, determines if an individual is entitled to PIP benefits.

**\*13** I also note that MCL 500.3113(a) requires that the defendant "had taken unlawfully" the motor vehicle in order to forgo his entitlement to PIP benefits. I agree with the majority opinion that if defendant had unlawfully taken (i.e., stolen) this vehicle, then he would not be entitled to no-fault benefits. However, the facts of this case are clear: defendant is *not* the person who unlawfully took this vehicle. Defendant simply drove an intoxicated acquaintance back to her cousin's home where she was staying at the time, taking her there in the car in which she arrived. In so doing, defendant was not using a motor vehicle that he had taken unlawfully; at most, he was using a motor vehicle that *another person* might have taken unlawfully.[12] This is a far different act than stealing or even joyriding in a motor vehicle. Defendant neither had the intent to steal this vehicle nor to joyride. Since the intent element is not present, I would find that defendant is entitled to PIP benefits.

I would reverse the decision of the trial court in Docket No. 275584 and affirm the decision of the trial court in Docket No. 283386.

**All Citations**

Not Reported in N.W.2d, 2010 WL 3021860

## Footnotes

| | |
|---|---|
| 1 | This Court consolidated the appeals in docket numbers 275584 and 283865. *Farmers Ins Exchange v. Young,* unpublished order of the Court of Appeals, entered September 10, 2008 (Docket Nos. 275584 and 283865). |
| 2 | The Supreme Court vacated this Court's majority opinion in *Borgess,* but affirmed its judgment for the reasons stated in the concurring opinion. *Borgess Medical Ctr., supra,* 482 Mich. 946, 754 N.W.2d 321. |
| 3 | We note that the trial court did not instruct the jury regarding the definition of "taken unlawfully" in MCL 500.3113(a). |
| 4 | *Farmers Ins Exchange v. Young,* unpublished order of the Court of Appeals, entered September 10, 2008 (Docket Nos. 275584 and 283865). |

**Farmers Ins. Exchange v. Young, Not Reported in N.W.2d (2010)**
2010 WL 3021860

| | |
|---|---|
| 5 | Our dissenting colleague claims to be following his dissent in *Plumb,* 282 Mich.App. 417, 766 N.W.2d 878, in which he expressly, "concur [red] with the majority's holdings that no genuine issue of material fact exists regarding whether defendant Rae Louise Plumb *unlawfully took* the Jeep." *Id.,* at 433, 766 N.W.2d 878 (O'Connell, J., dissenting) (emphasis added). However, under the same legally operative facts, the dissent now concludes that Young lawfully took the Kia. In doing so, the dissent claims to "follow the Court's statement in *Bronson, supra,* which specifically interpreted MCL 500.3113(a) so as *not* to exclude from coverage those individuals who operate a motor vehicle without a valid operator's permit." (Emphasis in original). The dissenting opinion in *Plumb* did not even mention *Bronson.* In any event, *Bronson* is distinguishable. In *Bronson,* the alleged insured presented evidence of an "unbroken chain of permissive use" to establish consent. *Id.,* at 625, 499 N.W.2d 423. In the instant case, there is no evidence that Williams consented to Young driving the Kia. Indeed, the trial court's findings support a conclusion that Young engaged in joyriding. *Mester v. State Farm Mut. Ins. Co.,* 235 Mich.App. 84, 88, 596 N.W.2d 205 (1999). Because Young and Williams are not family members, the exception to joyriding is not available. *Id.; Allen v. State Farm Mut. Automobile Ins. Co.,* 268 Mich.App. 342, 346, 708 N.W.2d 131 (2005) (BANDSTRA, J.). Moreover, the majority of the Supreme Court does not appear to have been persuaded by the arguments now advanced by the dissent. *Plumb,* 485 Mich. at 909–911, 773 N.W.2d 18. |
| 6 | Rather than respond to the many contrivances within the dissent, i.e., nn 5, 12, we merely recognize the dissenting opinion would essentially sanction extending no-fault benefits to those operating automobiles who are unlicensed, uninsured and lack the owner's permission, so long as they were allegedly doing good deeds. |
| 7 | The dissenting opinion argues that the trial court in Docket No. 275584 did not conclude that "Young unlawfully took this vehicle." The dissent is forced to take this position because otherwise Henry Ford's action would be barred by collateral estoppel. There is no legal merit to the dissent's argument. The trial court entered an order finding that Young was not entitled to no-fault benefits. In this order, the trial court expressly concluded that Young did not have a reasonable belief that he was entitled to use the Kia. Implicit in the trial court's finding is the conclusion that Young unlawfully took the Kia.<br><br>The dissent further erroneously relies on evidence that in Docket No. 275865 that "a jury determined that the Kia was not unlawfully taken." (Emphasis removed). As discussed below, the trial court in Docket No. 275865 erred in not granting Farmers Insurance Exchange *summary disposition* based on collateral estoppel. Before the second case was presented to the jury, there existed an order in Docket No. 275584 concluding that Young was not entitled to no-fault benefits. Accordingly, the jury verdict in Docket No. 275865 is legally irrelevant and should not even be considered for any purpose. |
| 1 | The statutory phrase is "personal protection insurance benefits," but they are also known as "first party" or "PIP" benefits. *McKelvie v. Auto Owners Ins. Ass'n,* 459 Mich. 42, 44 n. 1, 586 N.W.2d 395 (1998). |
| 2 | "A court speaks through its orders, and the jurisdiction of this Court is confined to judgments and orders." *Lown v. JJ Eaton Place,* 235 Mich.App. 721, 726, 598 N.W.2d 633 (1999), quoting *Law Offices of Lawrence J Stockler, PC v. Rose,* 174 Mich.App. 14, 54, 436 N.W.2d 70 (1989); see also MCR 7.203(A). Accordingly, we need not look beyond this order to conclude that the trial court failed to address whether an unlawful taking occurred. Nevertheless, the trial court's statements at the conclusion of the bench trial indicate that the trial court never explicitly determined that an unlawful taking occurred. |
| 3 | Interestingly, the question whether Young had unlawfully taken the vehicle was decided for the first time in Docket No. 283865, the action that the majority concludes is barred by collateral estoppel. |
| 4 | In particular, the facts indicate that Williams, the owner of the Kia, gave the car keys to Hughes, who in turn gave them to Lee. Under these facts, Lee continued to have lawful possession of the Kia when she drove, intoxicated, to Young's workplace and let |

**Farmers Ins. Exchange v. Young, Not Reported in N.W.2d (2010)**
2010 WL 3021860

him drive her back to Williams' house.

5      It is axiomatic that a vast number of accidents are caused by the unlawful operation of a motor vehicle; a requirement that one must "legally use" or "lawfully operate" a motor vehicle before one can collect no-fault benefits would defeat the purpose of purchasing insurance. I suspect that many motorists would be surprised to learn that they would not be entitled to PIP benefits if they caused an accident by, for example, running a red light or speeding, or if they had a suspended or expired license at the time of an accident.

6      As in *Amerisure Ins,* the majority in this case adds the word "legally" before the word "use" in the savings clause. My response to this grafting of additional words onto the statute is the same as it was in that case:

> Although I note that it is not the role of this Court to add or subtract words from the statute, the ordinary reader of MCL 500.3113 may wonder how one can unlawfully take a motor vehicle and still have a reasonable belief that he or she is entitled to use the vehicle. As a reader of this statute, I share this concern. However, this Court's job is merely to interpret the statute as it is written. The Legislature may wish to revise the statute to provide for a "reasonable belief" that one is entitled "to take the vehicle and legally use the vehicle." [*Amerisure Ins.,* 282 Mich.App. at 434 n. 2, 766 N.W.2d 878 (O'Connell, J., dissenting).]

7      The term "unlawfully taken" indicates that the vehicle must have been taken in violation of a Michigan statute. The majority points to no Michigan statute that Young violated when he took this vehicle. Although Young unlawfully operated the vehicle, the statute does not disqualify an individual from receiving PIP benefits if he operated the vehicle unlawfully.

8      I note that instead of treating the word "use" as a legal term of art, as the majority advocates, this Court should presume that since the word is not defined by the no-fault act, it is subject to ordinary comprehension. See *People v. Martin,* 271 Mich.App. 280, 352, 721 N.W.2d 815 (2006), affirmed 482 Mich. 851, 752 N.W.2d 457 (2008). *Random House Webster's College Dictionary* (1997) has 22 separate definitions for the word "use," including "to employ for some purpose; put into service," "to avail oneself of; apply to one's own purposes," and "to take unfair advantage of; exploit." Nowhere in these 22 definitions does the dictionary define "use" as the equivalent of "lawful operation."

9      I note that under the majority's interpretation of this statute, both *Bronson* and *Butterworth Hosp* would have been wrongly decided. In both cases, the drivers of the motor vehicles lacked express permission to operate the vehicles, and the driver in *Bronson* did not have a valid driver's license. *Bronson Methodist Hosp.,* 198 Mich.App. at 625, 627, 499 N.W.2d 423; *Butterworth Hosp.,* 225 Mich.App. at 246, 570 N.W.2d 304. Further, Young's belief that he could take and use this vehicle is clearly more reasonable than that of the drivers in the aforementioned cases. In this case, Young had permission to take and use the vehicle from the person who had possession of both the motor vehicle and the motor vehicle's keys. In the real world, one does not ask an intoxicated person if "she has permission to driver her cousin's vehicle," nor does one ask, "do you think your cousin would allow me to drive you home," when deciding that she is not fit to drive. It is important to remember: "Friends don't let friends drive drunk." In his deposition, Young testified that in his opinion, Williams would allow him to operate her vehicle if she knew that Lee was intoxicated.

10      Because *Bronson* was published after November 1, 1990, it is binding on this Court. MCR 7.215(J)(1). Under the principle of stare decisis, this Court is obligated to follow *Bronson,* not *Amerisure Ins,* to the extent that these rulings conflict. MCR 7 .215(C)(2).

11      Although in *Butterworth Hosp.,* 225 Mich.App. at 249–250, 570 N.W.2d 304, this Court touched on the circumstances in which

**Farmers Ins. Exchange v. Young, Not Reported in N.W.2d (2010)**
2010 WL 3021860

joyriding would not necessarily preclude the recovery of PIP benefits, the question of joyriding is not at issue in this case and, in my opinion, is best left for another day.

| | |
|---|---|
| 12 | I note that anyone who takes the keys of the vehicle that an intoxicated person had been driving from that person by subterfuge or force and drives the intoxicated person home in that vehicle may fall under the umbrella of the majority opinion. The majority's decision could make a sober individual less inclined to drive an intoxicated person home, especially if he must use some type of subterfuge to obtain the intoxicated person's car keys. |

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.